# EXHIBIT A (PART 1)

**IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

SHELBY COUNTY
CHANCERY COURT
JUN 29 2018
DONNA L. RUSSELL, C & M
TIME: 13:18   BY: ＳＤ

| | |
|---|---|
| JOHNATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) Case No. CH-18-0976-3 ) ) ) |
| PLAINTIFFS, | ) **CLASS ACTION COMPLAINT FOR** ) **VIOLATIONS OF TENNESSEE CODE** |
| v. | ) **ANNOTATED § 56-7-1201(c), TENNESSEE** ) **CODE ANNOTATED § 56-7-105,** ) **TENNESSEE COMMON LAW, and** ) **DECLATORY JUDGMENT PURSUANT** ) **TO TENNESSEE CODE ANNOTATED § 29-14-** ) **103 and 104** |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) **JURY TRIAL DEMANDED** ) **PURSUANT TO TENN. R. CIV. PRO. 38.01** ) **& 38.02** ) ) ) ) |
| DEFENDANTS. | ) |

TO THE HONORABLE CHANCELLORS:

Plaintiff Johnathan H. Weimiar, on behalf of himself and all other similarly situated persons and entities, by and through his designated attorneys, and for his Class Action Complaint allege as follows: All allegations in this Complaint are based upon the investigation of counsel, except the specific allegations pertaining to the named Plaintiff, which are based upon personal knowledge. As of the date of this Complaint, no discovery has been conducted. As a result, it is

likely that once the discovery process is underway, the named Plaintiff will seek leave to amend their Complaint to add new factual allegations, new claims and/or new parties.

## I.

## NATURE OF THE ACTION

1.      This is a statewide class action brought under: (i) TENNESSEE CODE ANNOTATED § 56-7-1201(c), (ii) TENNESSEE CODE ANNOTATED § 56-7-105, (iii) Tennessee common law and (iv) Declaratory Judgment pursuant to TENNESSEE CODE ANNOTATED § 29-14-103 and 104 in order to remedy Defendant's unlawful actions in causing thousands of Tennessee insured persons and entities to pay or incur an unlawful deductible in connection with Defendant's payment of uninsured motorist benefits. The named Plaintiff and the Class Members seek classwide award of compensatory damages against Defendant as well as declaratory relief.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over this Action pursuant TENNESSEE CODE ANNOTATED § 16-11-101 and 102.

3.      Venue is proper is proper in this judicial district pursuant to TENNESSEE CODE ANNOTATED § 20-4-101(a) on the grounds that the cause of action arose in Shelby County, Tennessee.  Venue is also proper pursuant to TENNESSEE CODE ANNOTATED § 20-4-101(a) and § 16-11-115(1) on the grounds that Defendant is found and maintains its principal place of business in Shelby County, Tennessee.  Venue is also proper in this judicial district pursuant TENNESSEE CODE ANNOTATED § 16-11-115(3) and (4) on the grounds that this county is location where the goods were to be provided and/or services rendered.

## III.

2

## THE PARTIES AND PERSONAL JURISCTION

4.      Plaintiff Jonathan H. Weimar (hereinafter referred to as "Plaintiff") is an individual residing in Germantown, Tennessee. Plaintiff is a member and proposed representative of a Class of Tennessee persons and entities who were subjected to the unlawful imposition of deductibles by the Defendant as more fully described herein.

5.      Defendant GEICO Advantage Insurance Company (hereinafter referred to as "Defendant" or "GEICO") is corporation organized under the laws of the State of Nebraska, with its principle place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3799.  Incorporated on or about June 13, 2011, Defendant provides private passenger automobile insurance to individuals in Tennessee.  Service of process may be accomplished on Defendant through its registered agent for service of process, CT Corporation, 5601 South 59th Street, Lincoln, Nebraska 68516.

6.      This Court has both general and specific personal jurisdiction over Defendant based upon the fact that it maintains an office in the State of Tennessee and has had substantial and continuous contact with Tennessee as to the fees charged to the Class Members as well as with respect to the legal cases involving the Class Members.  As a result, this Court has personal jurisdiction over Defendant GEICO pursuant to TENNESSEE CODE ANNOTATED §§ 20-2-214(1) and (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against it arise from its transaction of business within Tennessee and on the grounds that it has committed a tortious act within Tennessee.  Furthermore, Defendant GEICO's contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENNESSEE CODE ANNOTATED § 20-2-225(2).

**IV.**

3

## FACTUAL ALLEGATIONS

### A.   Summary of Class Allegations

7.     Defendant GEICO is a major insurance player in the automobile insurance industry in Tennessee.  As a licensed Tennessee automobile insurer, with each Tennessee auto liability policy that it sells, Defendant GEICO is legally obligated to also offer for purchase uninsured motorist coverage for property damage and bodily injury damage. Unless its insureds reject the offered uninsured motorist coverage in writing, Defendant GEICO is legally obligated to provide uninsured motorist coverage to its insureds.

8.     As Defendant GEICO is well aware, Tennessee currently ranks as the fifth state in the U.S. for the highest rate of uninsured drivers. (In prior years, Tennessee ranked number four in the U.S.).  As a product of the large number of Tennessee uninsured drivers and the large number of Tennessee policies sold by GEICO containing uninsured motorist coverage, Defendant GEICO processes thousands of uninsured motorist claims each year, for which it incurs millions of dollars per year.  Given the high cost that it incurs in being required to offer uninsured motorist coverage in Tennessee, Defendant GEICO has determined to wrongfully defray its uninsured motorist costs by adopting the unlawful policy of charging a statutorily prohibited deductible to its policyholders when they make valid an insured motorist claims.

9.     Specifically, when a GEICO policyholder with uninsured motorist coverage submits an uninsured motorist claim to Defendant GEICO (*i.e.* a claim that the GEICO policyholder has sustained property, bodily injury damage and/or medical bills as the result of a collision caused by an identified driver who is uninsured), Defendant GEICO conducts an investigation in order to verify the uninsured motorist claim. This investigation includes obtaining the accident report, any applicable statements from witnesses, identification of the other driver involved in the collision and verification of his status as an uninsured driver. When

4

Defendant GEICO completes its investigation and determines that an identifiable, uninsured driver caused its policyholder damage (such that the policyholder's uninsured motorist claim is valid and must be paid), Defendant GEICO imposes a $200 deductible on its insured when paying out its uninsured motorist benefits. This practice is in direct violation of violation of TENNESSEE CODE ANNOTATED § 56-7-1201(c).

10.     Defendant GEICO then informs each policyholder making a valid uninsured motorist claim that it will pursue collection against the uninsured driver for the $200 deductible that the policyholder has incurred (as well as the amount of the uninsured motorist benefits paid out by GEICO) and that if GEICO ever collects these funds from the uninsured motorist, GEICO will reimburse the $200 deductible to its policyholder at that time.

11.     Although Defendant GEICO seeks collection from these uninsured motorists (generally by sending collection letters and filing lawsuits in Tennessee General Sessions Court, from which they frequently obtain judgments against uninsured motorists), GEICO rarely collects any funds from the vast majority of these uninsured motorists, and, thus, never reimburses the $200 deductible to GEICO's policyholders. For those few policyholders who are lucky enough to be reimbursed at some point through GEICO's collection efforts, Defendant GEICO never compensates these policyholders for their lost interest for wrongfully applying the deductible.

**B.     Defendant wrongfully imposes an unlawful $200 deductible upon its policyholders who make valid uninsured motorists claims.**

12.     Tennessee's insurance statute governing uninsured motorist coverage prevents an insurer from applying any deductible to an uninsured motorist claim where GEICO is in insurer of the insured's vehicle for both collision and uninsured motorist property damage coverage and where the uninsured motorist has been positively identified and is solely at fault. Specifically,

5

TENNESSEE CODE ANNOTATED § 56-7-1201(c) provides:

> (1) Every insured purchasing uninsured motorist bodily
> injury coverage shall be provided an opportunity to include
> uninsured motorist property damage coverage, subject to
> provisions filed with and approved by the commissioner,
> applicable to losses in excess of two hundred dollars ($200).
> However, the deductible of two hundred dollars ($200) shall not
> apply if:
>
>> (A) The vehicle involved in the accident is insured
>> by the same insurer for both collision and uninsured
>> motorist property damage coverage; and
>>
>> (B) The operator of the other vehicle has been
>> positively identified and is solely at fault.

13.    With respect to each auto accident claim that it receives from its Tennessee auto policyholders, Defendants GEICO has adopted a detailed policy and procedure for investigating and validating or rejecting each claim.

14.    First, Defendant GEICO obtains the accident report of the collision and examines it. From the accident report, GEICO determines the identity of the driver of the other automobile who is not insured by GEICO and denotes whether this driver received a traffic citation in connection with the accident. GEICO also determines whether this driver is uninsured. GEICO also interviews the driver of the insured's automobile and takes a recorded statement from its insured; it also seeks out and interviews other witnesses when deemed necessary by GEICO.

15.    Defendant GEICO also examines (or has an agent examine) the insured's vehicle and quantifies the repair cost if the automobile is not a total loss and where the car is a total loss, GEICO quantifies fair market value of the insured's vehicle.

16.    From this extensive investigation process, Defendant GEICO makes an internal determination as to whether the operator of the other vehicle has been positively

6

identified, uninsured and solely at fault.  Defendant GEICO makes this determination at the time that it decides to pay uninsured motorist benefits (*i.e.* to pay for property damages, bodily injury damage and/or medical bills) to insured or on behalf of its insured.

17.     Unfortunately at the time that it makes the determination and pays out uninsured motorist benefits, Defendant GEICO has engaged in the unlawful practice of applying a $200 deductible at the outset of the uninsured motorist coverage payment.  This practice violates TENNESSEE CODE ANNOTATED § 56-7-1201(c), which expressly prohibits the charge or application of any deductible in those circumstances where the vehicle's driver has been positively identified, uninsured and solely at fault.

18.     Defendant GEICO cannot contest the fact that, with respect to thousands of insured motorists claims submitted by Tennessee policy holders, it has determined the vehicle's driver has been positively identified, uninsured and solely at fault.

19.     For example, in addition to making this internal decision (and thus paying out uninsured motorist benefits as a result of this decision), Defendant GEICO has a pattern and practice of sending collection letters (as the subrogee of its uninsured motorist claimants), informing the uninsured motorists that they are at fault for the full amount of the damages paid out by GEICO (including the deductible imposed upon the GEICO policyholders) and demanding payment for same.

20.     Furthermore, acting as the subrogee to its policyholders, Defendant GEICO engages in the policy and practice of filing suits (primarily in the General Sessions Civil Courts of Tennessee) against the at-fault uninsured motorists, seeking to collect the full amount of the damages paid out by GEICO (including the deductible imposed upon the GEICO policyholders) and demanding payment for same.

21.     As authorized by TENN. CODE ANN. § 24-5-115, Defendant GEICO consistently files in each General Session lawsuit an Affidavit (sometimes denominated as an "Affidavit for Purposes of Subrogation") which is duly executed by an agent of GEICO.  Each Affidavit recites that GEICO has paid certain amounts out in connection with an uninsured motorist claim of GEICO's policyholder and that the defendant uninsured motorist is obligated for the full amount paid by GEICO (including the deductible incurred by GEICO's insured). These Affidavits constitute a judicial admission that, as GEICO has previously determined in its investigation, the uninsured motorist is solely at fault. (True and correct copies of GEICO's lawsuits against uninsured motorists and its Affidavits comprising the judicial admission that the uninsured motorists are solely at fault are attached as **Collective Exhibit "A"**).

22.     Despite its massive collection efforts and prosecution of collection lawsuits against uninsured motorists who have damaged GEICO's insureds, Defendant GEICO rarely collects any funds from these uninsured motorists because they are often collection proof, file bankruptcies and/or have no steady wages that can be garnished.

23.     As a result, a vast majority of the time GEICO's policyholders who have made valid uninsured motorist claims have never been reimbursed the deductible imposed by GEICO (nor any pre-judgment interest owed on this deductible).

24.     For the few policyholders who have finally received a portion or all of their deductible back, Defendant GEICO has failed to reimburse them pre-judgment interest as required by law.

**C.**    **Defendant GEICO investigates and approves Plaintiff's uninsured motorist claim but unlawfully imposes a $200 deductible.**

25.    On January 12, 2018, Plaintiff was driving his 2012 Toyota Scion in Memphis when a car driven by Marcus Parker lost control and swerved into Plaintiff's lane and collided with the passenger side of Plaintiff's vehicle. At that time, Plaintiff's vehicle was insured by Defendant GEICO for, among other things, uninsured property damage and bodily injury damage.

26.    A true and correct copy of GEICO's Tennessee Insurance Identification Card and Declarations Page applicable to Plaintiff's vehicle are attached hereto as **Exhibit "B."** A true and correct copy of GEICO's Tennessee Family Automobile Policy (hereinafter referred to as the "Policy") issued to Plaintiff is attached hereto as **Exhibit "C."**

27.    Plaintiff timely reported the accident to GEICO, indicating that Mr. Parker caused the accident. Thereafter, GEICO obtained the accident report and began its investigation of Plaintiff's claim.

28.    Mr. Parker received a traffic citation for failing to maintain control of his vehicle, violation of the financial responsibility law for failing to present proof of insurance and driving without a valid driver's licensed.

29.    As a result of the accident caused by Mr. Parker, Plaintiff took his car to an auto repair shop recommended by GEICO. Thereafter, GEICO determined that Plaintiff's car was a total loss.

30.    After completing its investigation of Plaintiff's claim, Defendant GEICO determined that Mr. Parker was uninsured and solely at fault. Nevertheless, Defendant

GEICO imposed a $200 deductible on Plaintiff when paying what it determined to be as the total loss value (i.e. fair market value) of the vehicle to the lienholder on Plaintiff's vehicle.

31.     Like so many Tennessee GEICO policyholders who have made claims for uninsured motorist benefits, Defendant GEICO informed Plaintiff that Mr. Parker was uninsured, that GEICO would tender its subrogation amount and Plaintiff's deductible to a collection agency and/or an attorney for collection of these amounts from Mr. Parker and only if sufficient funds were ever collected from Mr. Park would Plaintiff be reimbursed for this deductible.

32.     Defendant GEICO further informed Plaintiff that it would not contact him again about his claim unless funds were collected from Mr. Parker. Plaintiff has been damaged by Defendant GEICO's unlawful imposition of the $200 deductible and its failure to pay him legal interest on this amount.

33.     Plaintiff's case is not isolated or unique. Defendant GEICO has entered into thousands of uninsured motorist coverage contracts containing the identical terms as those contained in the Policy and unlawfully imposed a $200 deductible.

34.     Specifically, GEICO's uninsured motorist insurance contracts all provide that "[u]nder the Uninsured Motorists Coverage we [GEICO] will pay compensatory damages for bodily injury and property (if carried) caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle ... arising out of the ownership, maintenance or use of that auto... the deductible of $200 shall not apply if we also provide Collision Coverage, for the insured auto and the operator of the other vehicle has been positively identified and is solely at fault." (*See* **Exhibit C**, Policy at page 18 & 19 of 32).

35.     Because Defendant GEICO is only contractually obligated to tender that amount which its insured its legally entitled to recover from the uninsured motorist, Defendant GEICO's payment of uninsured motorist benefits where the uninsured motorist has been identified constitutes an acknowledgment by GEICO that, consistent with its internal investigation, the uninsured motorist is solely fault.

36.     Thousands of Tennessee policyholders have made timely and valid uninsured motorist claims to GEICO just like Plaintiff, and GEICO has unlawfully imposed the deductible unlawful $200 deductible.

**D.     The Class Period and Damages to the Class.**

37.     A claim against an insurance carrier for failure to properly pay uninsured motorist benefits is governed by Tennessee's six (6) year statute of limitations under TENNESSEE CODE ANNOTATED § 28-3-109(a)(3). *See, Bates v. Greene*, 544 S.W.3d 345, 349 (Tenn. Ct. App. 2017).   As a result, the class period extends from June 29, 2013 to the present (hereinafter referred to as the "Class Period").

38.     The damages to each Class Member (as defined below) are the $200 deductible, the statutory penalty provided for under TENNESSEE CODE ANNOTATED § 56-7-105 and plus pre-judgment interest under TENNESSEE CODE ANNOTATED § 47-14-123.

39.     With respect to those few Class Members who ultimately received the deductible back from GEICO as a result of GEICO's collection efforts against uninsured motorists, the damages to these Class Members are the statutory penalty provided for under TENNESSEE CODE ANNOTATED § 56-7-105 and pre-judgment interest under TENNESSEE CODE ANNOTATED § 47-14-123 .

40.     While Plaintiff's counsel would be glad to proceed in U.S. federal district court under the Class Action Fairness Act of 2005 ("CAFA"), Plaintiff herein alleges that the damages

11

to the Class Members mathematically cannot exceed the $5 million amount in controversy that is required under 28 U.S. C § 1332(d)(2) for federal subject matter jurisdiction. Specifically, Defendant GEICO has 3.10% market share of the Tennessee insurance market. Tennessee currently has approximately 5,197,904 duly licensed drivers. Assuming that 80% of these licensed drivers have some form of liability insurance, then the number of insured drivers in Tennessee are 4,158,323.

41.      Applying GEICO's market share of 3.1% to these drivers yields 128,908 drivers that have at least liability insurance with GEICO. Upon information and belief, Plaintiff estimates that approximately 40% of these insured drivers are in the same household and thus under the same insurance policy. Thus, GEICO has at most 77,344 active auto insurance policies each year of the Class Period.

42.      Plaintiff further estimates and alleges that approximately 30% of these polices had no uninsured motorist coverage, leaving approximately 54,000 policies containing uninsured coverage. Plaintiff further estimates and alleges that Defendant GEICO experiences an average of 3% per year in uninsured motorist claims.

43.      As a result, Plaintiff alleges that GEICO has, each year, received approximately 1,620 in uninsured motorist claims for a total of 9,720 uninsured motorist claims during the Class Period.

44.      Even assuming that GEICO honored all 9,720 uninsured claims (and all involved an uninsured driver who had been positively identified), Defendant GEICO has unlawfully imposed $1,944,000 in $200 deductibles. When this number is increased by the 25% penalty afforded under TENNESSEE CODE ANNOTATED § 56-7-105, the damages to the Class Members does not exceed $2,430,000.

45.     To the extent that Defendant GEICO seeks to remove this matter under CAFA, it

will be incumbent on Defendant GEICO to affirmatively prove to legal certainty that the

damages alleged herein are incorrect that they in fact exceed the requisite $ 5 million amount.

Given that lack of subject matter jurisdiction can be raised at anytime by any party and/or by the

court (including after judgment), Plaintiff will seek jurisdictional discovery in the event of any

removal under CAFA in order to assure that subject matter jurisdiction is proper.

## V.

## CLASS ACTION ALLEGATIONS

46.     The named Plaintiff brings this action as a Class Action pursuant to Rule 23.01

and pursuant Rule 23.02(3) of the Tennessee Rules of Civil Procedure as defined follows:

> From June 29, 2013 to the present, Plaintiff and all similarly
> situated persons and entities who were insured by GEICO under an
> insurance policy issued in Tennessee for motor collision and uninsured
> motorist coverage and submitted an uninsured motorist claim to GEICO
> where GEICO determined the other driver was known, uninsured and solely
> at fault and to whom GEICO applied a $200 deductible.

> Excluded from the Class are the Judge assigned to this matter and any
> member of the Judge's staff and immediate family.

47.     **Numerosity.** The requirements of Rule 23.01(1) are satisfied in that there are too

many Class Members for joinder of all of them to be practicable. Upon information and belief,

these Class Members exceed 1,000 in number. This Class, as defined above, meets the

numerosity requirement.

48.     **Commonality.** The claims of the Class Members raise numerous common issues

of fact and/or law, thereby satisfying the requirements of Rule 23.01(2). These common legal

and factual questions, which may be determined without the necessity of resolving

individualized factual disputes concerning any Class Member, include, but are not limited to, the

13

following questions:

### Questions of Fact

(i)     How many insured motorist claims were made to GEICO during the class period?

(ii)    How many times during the class period did GEICO impose a $200 deductible (or any other deductible) on its insureds where GEICO determined the uninsured driver was positively identifiable and solely at fault and, thus, paid out uninsured motorist benefits?

(iii)   What is the total amount of deductibles charged or imposed by GEICO on the Class Members?

(iv)    What is the pre-judgment interest amount on the total amount found in the above question (iii)?

### Questions of Law

(i)     Whether GEICO violated TENNESSEE CODE ANNOTATED § 56-7-1201(c).

(ii)    Whether Defendant GEICO breached its uninsured motorist insurance contracts with the Class Members by imposing a $200 deductible (or any other deductible) when paying out uninsured motorists benefits.

(iii)   Whether Defendant GEICO breached the implied duty of good faith and fair dealing contained in its uninsured motorist insurance contracts with the Class Members by imposing a $200 deductible (or any other deductible) when paying out uninsured motorists benefits

(iv)    Whether a constructive trust should be imposed upon the assets of Defendant GEICO.

(vi)    Whether Defendant converted the Class Members' property.

14

49.     **Typicality**. The claim of the named Plaintiff is typical of the unnamed Class

Members because they have a common source and rest upon the same legal and remedial

theories, thereby satisfying the requirements of Rule 23.01(3). For example, the named

Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members

were injured or damaged by the same wrongful practices in which Defendant engaged, namely

requiring Plaintiff and Class Members to pay or incur an unlawful $200 deductible in connection

with Defendant's payment of uninsured motorist benefits.

50.     **Adequacy of Representation.** The requirements of Rule 23.01(4) are satisfied in

that the named Plaintiff has a sufficient stake in the litigation to vigorously prosecute his claims

on behalf of the Class Members and the named Plaintiff's interests are aligned with those of the

proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiff

individually, as distinguished from the other members of the Class, and the relief sought is

common to the Class. Plaintiff does not have any interest that is in conflict with or is

antagonistic to the interests of the members of the Class, and has no conflict with any other

member of the Class. Plaintiff has retained competent counsel experienced in class action

litigation, including consumer and financial services class actions, to represent him and the Class

Members in this litigation.

51.     To wit, Plaintiff's chosen counsel – Watson Burns, PLLC – has successfully

prosecuted class actions in several matters. *See, e.g., Babb, et. al. v. Wilsonart International,

Inc.* Civil Action No. 01818-04, Div. 4 (Cir. Ct. Shelby County, Tennessee filed Mar. 30,

2004)(appointed Co-Lead Class Counsel to consumer class action involving defective kitchen

countertops owned by over 10,000 consumers; case was certified as a nationwide class action

15

and ultimately settled for a compensatory damages of $23.5 million to the class); *Howard et al v. Wilkes & McHugh, P.A.*, Case No. 2:06-cv-02833-JMP-cgc (W.D. Tenn. 2006)(appointing Watson Burns, PLLC as Class Counsel and ultimately approving $ 4 million settlement in connection with overcharged legal fee); *Stephenson et al v. Fearnley & Califf, PPLC*, Civ. Action No. 06-67 (Dyersburg Circuit Ct. 2006)(Watson Burns, PLLC appointed Class Counsel in connection with settlement regarding unlawful title insurance fees charged by law firm); *Squires v. The ServiceMaster Co. and Clayton Dubilier & Rice, Inc.*, CH-08-0471-Part II (Chancery Ct. Shelby Co., Tennessee filed Mar. 11, 2008)( appointed Co-Lead Class Counsel to employees who held options on ServiceMaster stock that had been wrongfully canceled; case settled on a class basis for $1 million); *Ham et al. v. Swift Transportation Co.. Inc.* Case No. 2:09-cv-02145-JTF (W.D. Tenn. filed Mar. 11, 2009)(appointed Co-Lead Class Counsel to class of approximately 8,700 student truck drivers who lost their commercial drivers licenses based on the alleged wrongful actions of Swift's trucking driving school; case settled for compensatory damages and debt write off valued in excess of $17 million); *Youngblood v. Linebarger, Goggan, Blair & Sampson, LLP*, Case No. 10-cv-2304 SHM-tmp (W.D. Tenn. filed 2010) (appointed Co-Lead Class Counsel in class action against law firm for its collection of an unlawful attorney fee from delinquent real property taxpayers) and *Youngblood v. Linebarger, Goggan, Blair & Sampson, LLP*, CH-13-0899-Part III (Chancery Ct. Shelby County, Tennessee filed June 18, 2013)(subsequent case settlement in state court for $7.4 million).

52.     Additionally, Malcolm B. Futhey III of the Futhey Law Firm PLC has represented parties in several complex lawsuits and class actions, including, but not limited to, *Miller v. Illinois Central Railroad Company*, No. 93636 T.D. 6 (Circuit Ct. Shelby County, Tennessee 1998); *Clemans v. New Werner Co.*, 3:12-cv-05186-RBL (W.D. Wash. 2012); *Carroll v. TDS*

16

*Telecommunications Corporation*, 1:17-CV-1127-STA-cgb (W.D. Tenn. 2017).

53. **Predominance and Superiority.** All of the requirements for Rule 23.02(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation. In particular, the Plaintiff and the Class Members have suffered a common cause of injury, requiring Plaintiff and Class Members to pay or incur an unlawful $200 deductible in connection with Defendant's payment of uninsured motorist benefits. The Class Members' legal claims arise exclusively under Tennessee law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. As a result, the desirability to concentrate litigation in this forum is significantly present. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.

# VI.

## CAUSES OF ACTION

### COUNT 1 – VIOLATION OF TENNESSEE CODE ANNOTATED § 56-7-1201(c)

54.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

55.     In enacting Tennessee's Uninsured Motor Vehicle Act, § 56-7-1201 *et seq.*, the General Assembly intended to provide "protection" to the insured under the insured's own policy of insurance. *See*, *Estate of Kirk v. Lowe*, 70 S.W.3d 77 (Tenn. Ct. App. 2001)(" The purpose of uninsured motorist insurance is to protect individuals who sustain injuries caused by uninsured motorists who cannot respond in damages"); *Clark v. Shoaf*, 302 S.W.3d 849, 855 (Tenn. Ct. App. 2008), citing *Brewer v. Richardson*, 893 S.W.2d 935, 937 (Tenn. 1995).

56.     TENN. CODE ANN. § 56-7-1201(c ) prohibits an insurer from applying any deductible to an uninsured motorist claim where the insurer has issued an automobile policy for both collision and uninsured motorist property damage coverage and where the uninsured motorist has been positively identified and is solely at fault. This provision was enacted for the express protection of Plaintiff and the Class Members.

57.     As alleged in detailed above, Defendant GEICO validated and paid the uninsured motorist claims of Plaintiff and the Class Members in which GEICO positively identified the uninsured motorist and determined that the uninsured motorists were solely at fault.

58.     Not only will GEICO's internal records reflect this determination, but the very fact that GEICO paid in full the uninsured motorists benefits to Plaintiff and the Class Members (less the deductible) prevents GEICO from otherwise claiming the uninsured motorists were somehow not solely at fault.

59.     Furthermore, TENNESSEE CODE ANNOTATED § 56-7-1201(c ) does not permit an insurer to apply a $200 deductible to an policyholder's uninsured motorist claim and then wait to see if it indeed can collect from the insured motorist in order to reimburse the policyholder, just as Defendant GEICO has done for years. TENNESSEE CODE ANNOTATED § 56-7-1201(c ) expressly prohibits GEICO from applying any deductible to its payment of uninsured motorist benefits unless until it makes the determination that the uninsured motorist is not solely at fault. If this were not the case, then every insurance carrier could impose the $200 deductible on every uninsured motorist claim (where the uninsured motorist has been positively identified) based on the contention that the insurance company could not determine (and may never determine) whether the uninsured motorist was solely at fault.

60.     As a direct and proximate result thereof Defendant GEICO's violation of TENNESSEE CODE ANNOTATED § 56-7-1201(c), Plaintiff and the Class Members suffered damage in the form of the unlawful deductible.

## COUNT 2 – VIOLATION OF TENNESSEE CODE ANNOTATED § 56-7-105, BAD-FAITH FAILURE TO PAY PROMPTLY

61.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

62.     TENNESSEE CODE ANNOTATED § 56-7-105 provides: "The insurance companies of this state, ... in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or

19

injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed."

63. Plaintiff and the Class Members gave formal notice to Defendant GEICO that it paid the full amount of the damages they incurred as the result of accidents caused by uninsured motorists. Defendant has failed to honor these claims as required by law.

64. More than sixty (60) days has elapsed from the times that Plaintiff and the Class Members each made demand on GEICO to fully pay their claims and GEICO has refused to pay them and, as alleged in detail above, such refusal was not in good faith.

65. All of these failures and omissions constitute unfair claims practices under TENNESSEE CODE ANNOTATED § 56-8-105 as well as the bad-faith to pay promptly under TENNESSEE CODE ANNOTATED § 56-8-105 and Tennessee common law construing same.

## COUNT 3 – BREACH OF INSURANCE AGREEMENT

66. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count. TENNESSEE CODE ANNOTATED § 56-7-1201(c ) prohibits an insurer from applying any deductible to an uninsured motorist claim where the insurer has issued an automobile policy for both collision and uninsured motorist property damage coverage and where the uninsured motorist has been positively identified and is solely at fault. This provision was enacted for the express protection of Plaintiff and the Class Members.

67. As alleged in detailed above, Defendant GEICO validated and paid the uninsured motorist claims of Plaintiff and the Class Members in which GEICO positively identified the uninsured motorist and determined that they were solely at fault.

68. Not only will GEICO's internal records reflect this determination, but the very

20

fact that GEICO paid in full the uninsured motorists benefits to Plaintiff and the Class Members (less the deductible) prevents GEICO from otherwise claiming the uninsured motorist were somehow not solely at fault.

69.     Furthermore, TENNESSEE CODE ANNOTATED § 56-7-1201(c ) does not permit an insurer to apply a $200 deductible to an policyholder's uninsured motorist claim and the wait to see if it indeed can collect from the insured motorist in order to reimburse the policyholder, just as Defendant GEICO has done for years. TENNESSEE CODE ANNOTATED § 56-7-1201(c ) expressly prohibits GEICO from applying any deductible to its payment of uninsured motorist benefits unless until it makes the determination that the uninsured motorist is not solely at fault. If this were not the case, then every insurance carrier could impose the $200 deductible on every uninsured motorist claim (where the uninsured motorist has been positively identified) based on the contention that the insurance company could not determine (and may never determine) whether the uninsured motorist was solely at fault.

70.     To the extent that Defendant GEICO contends in this litigation that it first applies a $200 deductible to uninsured motorist claims (where the insured driver has been positively identified) because the issue of whether the uninsured motorist was solely at fault was indeterminate, Defendant GEICO has breached its implied duty of good and fair dealing by assuming that the uninsured motorist is not solely at fault (or that his percentage of fault is unknown), thus taking advantage of Plaintiff and the Class Members to their financial detriment.

71.     As a direct and proximate result thereof Defendant GEICO's violation of TENNESSEE CODE ANNOTATED § 56-7-1201(c), Defendant GEICO has breached its the Policies issued to Plaintiff and the Class Members and proximately caused them to suffer damage in the form of the unlawful deductible and lost pre-judgment interest.

21

## COUNT 4 – BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING UNDER THE INSURANCE AGREEMENT

72.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

73.     Under Tennessee law, every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement.

74.     TENNESSEE CODE ANNOTATED § 56-7-1201(c ) prohibits an insurer from applying any deductible to an uninsured motorist claim where the insurer has issued an automobile policy for both collision and uninsured motorist property damage coverage and where the uninsured motorist has been positively identified and is solely at fault. This provision was enacted for the express protection of Plaintiff and the Class Members.

75.     As alleged in detailed above, Defendant GEICO validated and paid the uninsured motorist claims of Plaintiff and the Class Members in which GEICO positively identified the uninsured motorist and determined that they were solely at fault.

76.     Not only will GEICO's internal records reflect this determination, but the very fact that GEICO paid in full the uninsured motorists benefits to Plaintiff and the Class Members (less the deductible) prevents GEICO from otherwise claiming the uninsured motorist were somehow not solely at fault.

77.     Furthermore, TENNESSEE CODE ANNOTATED § 56-7-1201(c ) does not permit an insurer to apply a $200 deductible to an policyholder's uninsured motorist claim and the wait to see if it indeed can collect from the insured motorist in order to reimburse the policyholder, just as Defendant GEICO has done for years. TENNESSEE CODE ANNOTATED § 56-7-1201(c ) expressly prohibits GEICO from applying any deductible to its payment of uninsured motorist benefits unless until it makes the determination that the uninsured motorist is not solely at fault.

22

If this were not the case, then every insurance carrier could impose the $200 deductible on every uninsured motorist claim (where the uninsured motorist has been positively identified) based on the contention that the insurance company could not determine (and may never determine) whether the uninsured motorist was solely at fault.

78.    To the extent that Defendant GEICO contends in this litigation that it first applies a $200 deductible to uninsured motorist claims (where the insured driver has been positively identified) because the issue of whether the uninsured motorist was solely at fault was indeterminate, Defendant GEICO has breached its implied duty of good and fair dealing by assuming that the uninsured motorist is not solely at fault (or that his percentage of fault is unknown), thus has taken advantage of Plaintiff and the Class Members to their financial detriment.

79.    As a direct and proximate result of Defendant GEICO's violation of TENNESSEE CODE ANNOTATED § 56-7-1201(c), Defendant GEICO has breached its implied duty of good faith and fair dealing under the Policies issued to Plaintiff and the Class Members and proximately caused them to suffer damage in the form of the unlawful deductible and lost pre-judgment interest.

## COUNT 5 – CONVERSION

80.    Plaintiff incorporates all allegations of fact in all preceding paragraphs as if set forth fully herein.

81.    By seeking to collect and/or impose an unlawful deductible, Defendant GEICO exercised improper dominion over the property of Plaintiff and the Class Members. Furthermore, Defendant has withheld the money rightfully belonging to Plaintiff and the Class Members and acted inconsistent with their claim of ownership and title. As a result, Defendant GEICO has converted the property of Plaintiff and the absent Class Members, thus proximately causing them

23

damages. The specific dollar amount of said conversion is capable calculation following adequate discovery.

## COUNT 6 – DECLARATORY JUDGMENT PURSUANT TO TENNESSEE CODE ANNOTATED § 29-14-103 and 104

82.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

83.     The Policies issued to Plaintiff and the Class are governed, *inter alia*, by the prohibition contained in TENNESSEE CODE ANNOTATED § 56-7-1201(c). Plaintiff and the Class Members contend that Defendant GEICO unlawfully applies a $200 deductible to valid uninsured motorist claims that it decides to honor where the uninsured motorist has been positively identified and has been determined to be solely at fault. Plaintiff and the Class Members seek declaratory judgment pursuant to TENNESSEE CODE ANNOTATED § 29-14-103 and 104 that this practice is unlawful under TENNESSEE CODE ANNOTATED § 56-7-1201(c) and/or under the terms of the Policies.

84.     Furthermore, to the extent that Defendant GEICO contends in this litigation that it first applies a $200 deductible to uninsured motorist claims (where the insured driver has been positively identified) because the issue of whether the uninsured motorist was solely at fault was indeterminate, Plaintiff and the Class Members seek judicial declaration that this policy and practice violates TENN. CODE ANN. § 56-7-1201(c) and/or under the terms of the Policies.

24

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendant GEICO Advantage Insurance Company, on each Count of the Complaint and pray for the following relief:

1. Issue service of process and serve the Defendant;

2. Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiff and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendant to all Class Members;

3. Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

4. Empanel a jury to try this matter;

5. Award each plaintiff Class Member compensatory damages who has suffered same, the total amount of which is $2,430,000;

6. Award costs and expenses incurred in this action pursuant to Rule 54 of the Tennessee Rules of Civil Procedure;

7. Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENNESSEE CODE ANNOTATED § 47-14-123 in amount according to the proof at trial; and

8. Grant the Plaintiff and Class Members such further relief as the Court may deem just and proper.

Respectfully submitted,

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Aveneue
Memphis, TN 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Malcom B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com

*Counsel for Plaintiff Johnathan H. Weimar, and the absent Class Members*

26

2016062605.001

RECEIVED
2016 JUL 27 AM 9:16
GCCD CIVIL

73 W

GENERAL SESSIONS
COURT CLERK'S OFFICE
2016 JUL 22 A 10:24

General Sessions of Tennessee, County of Shelby

CIVIL WARRANT NO. 1813933

SHERIFF OLDHAM
16 JUL 26 A 8:51

**To Any Lawful Officer to Execute and Return:**
Summon to appear before the Court of General Sessions of Shelby County, Tennessee, Room 106
Shelby County Courthouse, 140 Adams Ave., Memphis, Tennessee
Sabrina Ward

4252 Eastwind Dr.,
Memphis TN 38116

| Address | Address | Defendant Address |
|---|---|---|

on DAY 10/10/2016 _____ TIME 01:30 pm

to answer in a civil action brought by the Plaintiff (s) _____
GEICO Advantage a/s/o Shivella and Rickey Douglas

for  damages due to an auto accident on  8/2/15 in Shelby Co. TN due to the  negligence of the defendant causing  property
    damages and/or bodily injury  in the amount of $8762.96 plus court costs and post-judgement interest.

under25,000.00   Dollars

Issued this 25 day of July 2016

EDWARD L. STANTON, JR., Clerk
of General Sessions Court  Code No.

By Beau Garcia
                        Deputy Clerk

| Atty. For Plft. | Zachary T. Glaser |
|---|---|
| Address | 129 S. Water Ave, Gallatin, TN 37066 |
| Phone | 615-452-2121 |
| B.P.R. No. | #030482 |

**JUDGMENT**

_____ Judgment for _____

_____ and cost
of suit and litigation taxes, for which Execution may issue.

This _____ day _____ 20 _____

_____ Judge of Division _____

**SERVICE**

Came to hand same day issued and executed as commanded on As to Sabrina Ward
4252 Eastwind is large apt. Bldg. Need
Apt #. Sabrina Ward is not to be found

this 2nd day of August 20 16 0766

Sheriff/Process Server

Came to hand same day issued and executed as commanded on _____

This _____ day of _____ 20 _____

Sheriff/Process Server

***SEE OTHER SIDE FOR ADDITIONAL SERVICE****

**EXHIBIT**
COLLECTIVE
A

JM Dunn 9081

# AFFIDAVIT

State of _Southern Carolina_

County of _Charleston_

The undersigned, being first duly sworn, deposes and says that:

1. S/he is authorized as an employee or officer of GEICO Advantage to make oath to the following facts of which s/he has personal knowledge.

2. S/he is familiar with the accounting records relating to the uninsured/underinsured motorist claims of Shivella and Rickey Douglas for damages sustained as a result of the negligence of Sabrina Ward

3. Company GEICO Advantage has paid the sum of $8762.96, to its insured, Shivella and Rickey Douglas, for property damages and/or personal injuries for an accident occurring on 08/02/2015, in Shelby County, Tennessee.

4. Sabrina Ward   is/are indebted to GEICO Advantage through its subrogation interest in Shivella and Rickey Douglas for claims totaling $8762.96.

5. No portion of the amounts now due have been paid or otherwise satisfied, except as indicated above.

6. Further Affiant sayeth naught.

GEICO Advantage

By: _____

Its: _Authorized Agent_

Subscribed and sworn to me on this,

the _12_ day of _July_ , _2016_ .

Notary Public: _Bonnie J Hill_

My Commission Expires: _May 18, 2021_

BONNIE J HILL
Notary Public
State of South Carolina
My Comm. Exp. 5-18-21

Creditor or Forwarder Account No. TN2938
The Glaser Firm Account No. 2016062605.001

7435

## Court of General Sessions
### State of Tennessee, County of Shelby

GENERAL SESSIONS                    GENERAL SESSIONS                    **17-1925**
COURT CLERK'S OFFICE        COURT CLERK'S OFFICE
                        **CIVIL WARRANT NO.** 1847876
2017 DEC -4  A 9 10          2017 DEC 27  P 2:07            **TO BE SERVED BY**
**To Any Lawful Officer to Execute and Return:**              **Professional process Servers**

Summon the Defendants:         Lonzy Pink
                              3315 W. Monticello Circle
                              Memphis, TN 38115 _____ to appear before the Court of General
Sessions of Shelby County, Tennessee, to be held at the Courtrooms of said Court in said County and there to
answer in a civil action brought by the Plaintiff, **GEICO Advantage Insurance Company ASO Iquanna Jones
and Nyirah Williams,** for property damage and medical bills in the amount of **$20,447.47** and all other damages
sustained by the Plaintiff(s) as a direct and proximate result of the Defendant(s)' negligence that occurred on or
**January 28, 2017, in Memphis, Shelby County, Tennessee.**

Issued this 8 day of DEC , 20 17.          | Atty. for Pltf. | Kathleen Solares |
                                           | | Attorney at Law |
**Edward Stanton, Jr.** Clerk               | Address | 4515 Poplar Avenue, Suite 329 |
Court of General Sessions                   | | Memphis, TN  38117 |
By _____                            | Phone | (901) 766-8120 |
         Deputy Clerk                       | Code No. | B08550 |
                                            | B.P.R. No. | 34795 |

## JUDGMENT

Judgment for Plaintiff _____
_____ $ 20,447.47 and Cost of suit, for
which Execution may issue.

This 26th day of January , 20 18.

                              Speer Judge of Division 4

### COURT HEARING

**DAY**   THURSDAY        **DATE**  January 18, 2018    **TIME**  10:00  o'clock a.m.
            Shelby County Courthouse, 140 Adams Avenue, Memphis, Tennessee

Came to hand same day issued and              Came to hand same day issued and
executed as commanded on                      executed as commanded on
                                              Lonzy Pink
_____ N.T.B.F. _____                      3315 W. Monticello Cir
                                              8:29 cm
This 14 day of Dec , 20 17          This 20 day of Dec , 20 17
         BILL OLDHAM, Sheriff                         BILL OLDHAM, Sheriff
         Deputy Sheriff                               Deputy Sheriff
**\*\*\*\*\* SEE OTHER SIDE FOR ADDITIONAL SERVICE \*\*\*\*\***

For assistance in accessing the courthouse:
Tom Stone (901) 379-7890 E-mail: stone-t@co.shelby.tn.us

Came to hand same day issued and              Came to hand same day issued and

17-0341

## IN THE GENERAL SESSIONS COURT OF SHELBY COUNTY, TENNESSEE

GEICO ADVANTAGE INSURANCE
COMPANY ASO IQUANNA JONES and
NYIRAH WILLIAMS,

              **Plaintiff (s),**

vs.                           **Docket No.**

LONZY PINK,

              **Defendant (s).**

### AFFIDAVIT FOR PURPOSES OF SUBROGATION

STATE OF GEORGIA
COUNTY OF BIBB

      Comes the undersigned agent of GEICO Advantage Insurance Company ("GEICO"),

pursuant to Tenn. Code Ann. § 24-5-115, and having been duly sworn, deposes and states based

on his knowledge, information and belief:

      1.  That GEICO has made payments to or on behalf of its insured, pursuant to a

collision, comprehensive, medical payments, or uninsured motorist coverage insurance

policy;

      2.  This is a subrogation case and GEICO Advantage Insurance Company paid out

the sum of $20,447.47 total damages incurred, including the Plaintiff's deductible, and is

seeking to recover this amount only and court costs from the Defendant.

      3.  That this Affidavit has been certified by a notary public with seal annexed;

**AND FURTHER THE AFFIANT SAYETH NOT.**

17-0341

_Jennifer Waits_
Jennifer Waits

## OATH

I do hereby make Oath that the foregoing Affidavit is true and correct to the best of my knowledge, information and belief.

_Jennifer Waits_
Jennifer Waits

SWORN TO AND SUBSCRIBED before me this the ___/H___ day of

_November_ , 20_7_.

_Carliss Johnson_
**NOTARY PUBLIC**

1173

**Court of General Sessions**
**State of Tennessee, County of Shelby**

S-17-2251

CIVIL WARRANT NO. _190 8675_

TO BE SERVED BY
Professional process Servers

To Any Lawful Officer to Execute and Return:

SESSIONS
CLERK'S OFFICE

MARCH 22 A 8:39

RECEIVED

Summon the Defendant:   John D. Young  (901) 463-8611
6297 Kristen Drive
Olive Branch, MS 38654 to appear before the Court of General Sessions
of Shelby County, Tennessee, to be held at the Courtrooms of said Court in said County and there to answer in a
civil action brought by the Plaintiffs, **GEICO Advantage Insurance Company  a/s/o Elisa Benford**  for property
damage and medical bills in the amount of **$24,968.12** and all other damages sustained by the Plaintiffs as a
direct and proximate result of the Defendant's negligence that occurred on or about **April 16, 2016, in Memphis,
Shelby County, Tennessee.** Medical bills attached pursuant to 24-5-113.

Issued this _13th_ day of _Feb_, 20 _18_

**Edward Stanton, Jr.** Clerk
Court of General Sessions
By _____
Deputy Clerk

| | |
|---|---|
| Atty. for Pltf. | Kathleen Solares |
| | Attorney at Law |
| Address | 4515 Poplar Avenue, Suite 329 |
| | Memphis, TN  38117 |
| Phone | (901) 766-8120 |
| Code No. | B08550 |
| B.P.R. No. | 34795 |

---

**JUDGMENT**

_____ Judgment for _____

_____   $_____ and Cost of suit, for

which Execution may issue.

This _____ day of _____, 20___.

_____
Judge of Division _____

---

**COURT HEARING**

**DAY**   THURSDAY          **DATE** ~~February 22, 2018~~          **TIME** _10:00_ o'clock a.m.
Shelby County Courthouse, 140 Adams Avenue, Memphis, Tennessee

---

Came to hand same day issued and
executed as commanded on _____

6297 Kristen Drive
@ 10:09 AM

This 26 day of _February_, 20 18

BILL OLDHAM, Sheriff

_____
Deputy Sheriff

Came to hand same day issued and
executed as commanded on _____

_____

_____

This ___ day of _____, 20___.

BILL OLDHAM, Sheriff

_____
Deputy Sheriff

***** SEE OTHER SIDE FOR ADDITIONAL SERVICE *****

For assistance in accessing the courthouse:
Tom Stone (901) 379-7890 E-mail: stone-t@co.shelby.tn.us

Came to hand same day issued and                    Came to hand same day issued and

17-2251

## IN THE GENERAL SESSIONS COURT OF SHELBY COUNTY, TENNESSEE

GEICO ADVANTAGE INSURANCE
COMPANY ASO ELISA BENFORD ,

        Plaintiff (s),

vs.                            Docket No.

JOHN YOUNG,

        Defendant (s).

### AFFIDAVIT FOR PURPOSES OF SUBROGATION

**STATE OF GEORGIA**
**COUNTY OF BIBB**

Comes the undersigned agent of GEICO Advantage Insurance Company ("GEICO"), pursuant to Tenn. Code Ann. § 24-5-115, and having been duly sworn, deposes and states based on her knowledge, information and belief:

    1. That GEICO has made payments to or on behalf of its insured, pursuant to a collision, comprehensive, medical payments, or uninsured motorist coverage insurance policy;

    2. This is a subrogation case and GEICO Advantage Insurance Company paid out the sum of $24,968.12 total damages incurred, including the Plaintiff's deductible, and is seeking to recover this amount only and court costs from the Defendant.

    3. That this Affidavit has been certified by a notary public with seal annexed;

**AND FURTHER THE AFFIANT SAYETH NOT.**

1

17-2251

_Crystal Mitchell_
Crystal Mitchell


## <u>OATH</u>


I do hereby make Oath that the foregoing Affidavit is true and correct to the best of my knowledge, information and belief.

_Crystal Mitchell_
Crystal Mitchell


SWORN TO AND SUBSCRIBED before me this the ____ _30_ ____ day of _January_ , 20 _18_.

_Carliss Johnson_
**NOTARY PUBLIC**

2

6620

## Court of General Sessions
## State of Tennessee, County of Shelby

S-17-1844

GENERAL SESSIONS
COURT CLERK'S OFFICE CIVIL WARRANT NO. 189197

TO BE SERVED BY
**Professional process Servers**

To Any Lawful Officer to Execute and Return:

2017 NOV 15  A 8:53

Summon the Defendant:     Michael Robinson
1114 Marlin Rd
RETURNED     Memphis, TN 38116 to appear before the Court of General Sessions of
Shelby County, Tennessee, to be held at the Courtrooms of said Court in said County and there to answer in a civil
action brought by the Plaintiffs, **GEICO Advantage Insurance Company  a/s/o Tauris C. Turner** for property
damage and medical bills in the amount of **$22,541.23** and all other damages sustained by the Plaintiffs as a
direct and proximate result of the Defendant's negligence that occurred on or about **March 22, 2017, in Memphis,
Shelby County, Tennessee**. Medical bills attached pursuant to 24-5-113.

Issued this ____ day of _____, 20___.

**Edward Stanton, Jr.** Clerk
Court of General Sessions
By _____
Deputy Clerk

SET

| Atty. for Pltf. | Kathleen Solares |
|---|---|
| | Attorney at Law |
| Address | 4515 Poplar Avenue, Suite 329 |
| | Memphis, TN  38117 |
| Phone | (901) 766-8120 |
| Code No. | B08550 |
| B.P.R. No. | 34795 |

### JUDGMENT

Default
_____ Judgment for ____22,541.23____
_____ $22,541.23 and Cost of suit, for
which Execution may issue.

This 14 day of December, 20 17.
Reeves Cook
Judge of Division ____

---

### COURT HEARING

DAY   THURSDAY          DATE  December 14, 2017    TIME  10:00  o'clock a.m.
Shelby County Courthouse, 140 Adams Avenue, Memphis, Tennessee

---

Came to hand same day issued and
executed as commanded on
Michael Robinson
1114 Marlin Rd
8:01am
This 9 day of Nov, 20 17.
Demarian Houston
BILL OLDHAM, Sheriff
Deputy Sheriff     SET

Came to hand same day issued and
executed as commanded on
_____
_____
_____
This ____ day of _____, 20 __.
BILL OLDHAM, Sheriff
_____
Deputy Sheriff

***** SEE OTHER SIDE FOR ADDITIONAL SERVICE *****

2017 NOV 1 - A II:19

For assistance in accessing the courthouse:
Tom Stone (901) 379-7890 E-mail: stone-t@co.shelby.tn.us

COURT CLERK'S OFFICE
GENERAL SESSIONS

Came to hand same day issued and          Came to hand same day issued and

17-1844

## IN THE GENERAL SESSIONS COURT OF SHELBY COUNTY, TENNESSEE

GEICO ADVANTAGE INSURANCE
COMPANY ASO TAURIS C. TURNER,

        **Plaintiff (s),**

vs.                    **Docket No.**

MICHAEL ROBINSON,

        **Defendant (s).**

## AFFIDAVIT FOR PURPOSES OF SUBROGATION

STATE OF GEORGIA
COUNTY OF BIBB

    Comes the undersigned agent of GEICO Advantage Insurance Company ("GEICO"), pursuant to Tenn. Code Ann. § 24-5-115, and having been duly sworn, deposes and states based on her knowledge, information and belief:

    1.  That GEICO has made payments to or on behalf of its insured, pursuant to a collision, comprehensive, medical payments, or uninsured motorist coverage insurance policy;

    2.  This is a subrogation case and GEICO Advantage Insurance Company paid out the sum of $22,541.23 total damages incurred, including the Plaintiff's deductible, and is seeking to recover this amount only and court costs from the Defendant.

    3.  That this Affidavit has been certified by a notary public with seal annexed;

**AND FURTHER THE AFFIANT SAYETH NOT.**

17-0341

_Kristie Sinclair_
Kristie Sinclair

## OATH

I do hereby make Oath that the foregoing Affidavit is true and correct to the best of my knowledge, information and belief.

_Kristie Sinclair_
Kristie Sinclair

SWORN TO AND SUBSCRIBED before me this the __26__ day of
__October__ , 20__17__.

_Carliss Johnson_

**NOTARY PUBLIC**

 **GEICO**®  Tel: 1-800-841-3000
geico.com

**Policy Number:** 4492-94-17-96
GEICO Use: 41 A30TN

**GEICO ADVANTAGE INSURANCE COMPANY**

One GEICO Center
Macon, GA 31295-0001



October 16, 2017

JONATHAN H WEIMAR AND DIXIE C
WEIMAR
2325 STRATFIELD DR
GERMANTOWN TN  38139-6615

Dear Jonathan H and Dixie C Weimar,

Thank you for continuing to be part of the GEICO family and trusting us to meet your insurance needs.  We appreciate the opportunity to provide you this valuable coverage.  We're here for you 24/7, 365 days a year.

Enclosed in your packet you will find the following important insurance documents:

**Identification (ID) Cards** (Pages 3 - 4) - Please review and retain your Identification (ID) Cards.  On the back are the phone numbers for Customer Service, Claims and Emergency Roadside Service.

**Declarations Page**  (Pages 5 - 6) - Here you will find your coverages, drivers, vehicles, discounts and other policy information.  Please retain for your records.

**Additional Insurance Documents** (Pages 7 - 32) - Includes additional policy documents.

We value you as our policyholder and look forward to serving your insurance needs for many years to come.  For additional insurance services, please review the "Insuring what's important to you" section.  If you have any questions, please contact GEICO at **geico.com** or **1-800-841-3000**. We'll be happy to help you!
Sincerely,

O. M. Nicely
Chairman


EXHIBIT

B

COVER_LTR

*(over, please)*

## Insuring what's important to you

 Sure GEICO insures cars ...but did you know we can help you insure your home?  It's true! Whether you rent or own, the GEICO Insurance Agency has something for you, so get a free quote today on geico.com.

 Got a motorcycle?  We've got insurance to protect your ride.  Get a free quote today to see how much you could be saving (to spend on gear, of course).

 Think of a Personal Umbrella Policy like a safety net for your everyday life.  It protects your assets in the event of a significant incident.  It's surprisingly affordable, so call for a free quote today.

 Own a boat?  If so, we hope you know we can help with personal watercraft coverage for folks that love time on the water.  Get a quote on geico.com and set sail for some savings.

 Expand your horizons with an RV insurance quote.  Our coverage fits your needs whether you're a weekender or a year-round traveler.  Visit geico.com/getaquote/rv for a free RV quote today.

## Putting you in control and saving you time

 With our paperless bill, paperless policy and automatic billing options like electronic funds transfer (EFT) or recurring card payments (RCP), you can help save a tree or two while having 24/7 access to your account and peace of mind knowing your policy is paid for.

Please visit **geico.com** or call **1-800-841-3000** to get a quote, make a policy change or to file a claim.

Homeowners, Renters and Boat are written through non-affiliated insurance companies and are secured through the GEICO Insurance Agency, Inc.  GEICO Motorcycle insurance is written by GEICO Indemnity Company.



**GEICO.** Tennessee Insurance Identification Card
geico.com   **1-800-841-3000**

GEICO ADVANTAGE INSURANCE COMPANY
One GEICO Center • Macon, GA 31295-0001
This policy meets the requirements of the Tennessee Financial
Responsibility Law of 1977.

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 4492-94-17-96 | 11-19-17 | 05-19-18 |

| Year | Make | Model | Vehicle ID No. |
|---|---|---|---|
| 2012 | HONDA | ODYSSEY EX | 5FNRL5H6XCB114341 |

**Insured:**
Jonathan H Weimar
Dixie C Weimar

---

**GEICO.** Tennessee Insurance Identification Card
geico.com   **1-800-841-3000**

GEICO ADVANTAGE INSURANCE COMPANY
One GEICO Center • Macon, GA 31295-0001
This policy meets the requirements of the Tennessee Financial
Responsibility Law of 1977.

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 4492-94-17-96 | 11-19-17 | 05-19-18 |

| Year | Make | Model | Vehicle ID No. |
|---|---|---|---|
| 2012 | HONDA | ODYSSEY EX | 5FNRL5H6XCB114341 |

**Insured:**
Jonathan H Weimar
Dixie C Weimar

Here are your Policy Identification Cards. Two cards have been provided for each vehicle insured. Please destroy your old cards when the new cards become effective.

Due to space limitations on the ID card, only the Named Insured and the Co-insured are listed. For a full list of drivers covered under this policy, please reference the Drivers section of your Declarations Page (page 5).

Please notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to service you better.

Your policy is recorded under the name and policy number shown on the card.

If you would like additional ID cards, you can go online to **geico.com** or call us at **1-800-841-3000**.

JONATHAN H WEIMAR AND DIXIE C
WEIMAR
2325 STRATFIELD DR
GERMANTOWN TN  38139-6615



VOID

**GEICO.** Tennessee Insurance Identification Card
geico.com   **1-800-841-3000**

GEICO ADVANTAGE INSURANCE COMPANY
One GEICO Center • Macon, GA 31295-0001
This policy meets the requirements of the Tennessee Financial
Responsibility Law of 1977.

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 4492-94-17-96 | 11-19-17 | 05-19-18 |

| Year | Make | Model | Vehicle ID No. |
|---|---|---|---|
| 2012 | SCION | XB | JTLZE4FE8CJ006876 |

**Insured:**
Jonathan H Weimar
Dixie C Weimar

VOID

**GEICO.** Tennessee Insurance Identification Card
geico.com   **1-800-841-3000**

GEICO ADVANTAGE INSURANCE COMPANY
One GEICO Center • Macon, GA 31295-0001
This policy meets the requirements of the Tennessee Financial
Responsibility Law of 1977.

| Policy Number | Effective Date | Expiration Date |
|---|---|---|
| 4492-94-17-96 | 11-19-17 | 05-19-18 |

| Year | Make | Model | Vehicle ID No. |
|---|---|---|---|
| 2012 | SCION | XB | JTLZE4FE8CJ006876 |

**Insured:**
Jonathan H Weimar
Dixie C Weimar

**What to do at the time of an accident.**
- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

> **Need a tow or roadside assistance?**
> Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U4TN (02-13)

---

**What to do at the time of an accident.**
- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

> **Need a tow or roadside assistance?**
> Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U4TN (02-13)

---

**What to do at the time of an accident.**
- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

> **Need a tow or roadside assistance?**
> Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U4TN (02-13)

---

**What to do at the time of an accident.**
- Do not admit fault.
- Do not reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved. Also, identify witnesses and collect contact information.
- Contact the police or 911 if applicable.
- Contact GEICO by calling **1-800-841-3000** or visit **geico.com** to report the accident.

> **Need a tow or roadside assistance?**
> Call **1-800-424-3426** to reach GEICO's Emergency Road Service (ERS).

U4TN (02-13)



**GEICO.**
**geico.com**

Tel: 1-800-841-3000

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**GEICO ADVANTAGE INSURANCE COMPANY**
**One GEICO Center**
**Macon, GA 31295-0001**

## Policy Number: 4492-94-17-96
## Coverage Period:
*11-19-17 through 05-19-18*
12:01 a.m. local time at the address of the named insured.

Date Issued: October 16, 2017

JONATHAN H WEIMAR AND DIXIE C
WEIMAR
2325 STRATFIELD DR
GERMANTOWN TN 38139-6615

Email Address: jhweimar@me.com

| **Named Insured** | **Additional Drivers** |
|---|---|
| Jonathan H Weimar | None |
| Dixie C Weimar | |

| **Vehicles** | | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|---|
| 1 2012 Honda | Odyssey EX | 5FNRL5H6XCB114341 | Germantown TN 38139 | Capital One Auto Finance |
| 2 2012 Scion | xB | JTLZE4FE8CJ006876 | Germantown TN 38139 | Capital One Auto Finance |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $250,000/$500,000 | $114.59 | $122.38 |
| Property Damage Liability | $100,000 | $133.36 | $121.48 |
| Medical Payments | $5,000 | $20.98 | $21.06 |
| Uninsured Motorists Bodily Injury | | | |
| Each Person/Each Occurrence | $250,000/$500,000 | $43.88 | $43.88 |
| Property Damage | $100,000 | $12.46 | $12.46 |
| Comprehensive | $200 Ded | $56.38 | $64.15 |
| Collision | $200 Ded | $222.14 | $241.56 |
| Emergency Road Service | Full | $4.64 | $4.64 |
| Rental Reimbursement | $30 Per Day | $10.56 | $10.56 |
| | $900 Max | - | - |

| | | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| **Six Month Premium Per Vehicle** | | **$618.99** | **$642.17** |
| **Total Six Month Premium** | | | **$1,261.16** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee
amount will be shown on your billing statements and is subject to change.

*A00001449294179641072024066*

Discounts

| The total value of your discounts is | $486.17 |
|---|---|
| Restraint | $18.02 |
| Seat Belt | $2.21 |
| Anti-Theft | $6.04 |
| Good Driver | $73.57 |
| Persistency | $93.00 |
| Anti-Lock Brake | $24.40 |
| Multi-Vehicle Discount | $268.93 |

The following discounts have also been applied

| Driving Experience | Included |
|---|---|
| Financial Responsibility | Included |

Contract Type: A30TN
Contract Amendments: ALL VEHICLES - A30TN A54ED1 A54TN

Unit Endorsements:     A115 (VEH 1,2); A431 (VEH 1,2); UE316TN (VEH 1,2)

---

### Important Policy Information

-We welcome you to our GEICO family in the Auto Voluntary B10 rate program.

-Please review the front and/or back of this page for your coverage and discount information.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-Now is a good time to review your coverage limits on this Declarations Page to determine if you would like to make changes to your policy. You may have the right to increase, decrease, or reject certain coverage. You may visit geico.com to review your current policy coverage and review all of your coverage options. You can make your changes online at any time or email us through our Policyholder Service Center.  Thank you for choosing GEICO.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.



**GEICO**
ONE GEICO PLAZA
Washington, D.C. 20076-0001
Telephone: 1-800-841-3000

# Tennessee Family Automobile Insurance Policy

**GEICO ADVANTAGE INSURANCE COMPANY**

**EXHIBIT**

_C_

## POLICY INDEX

Page                                                                                                                  Page

**SECTION I**

**Liability Coverages**
**Your Protection Against Claims From Others**
Definitions ................................................................. 3
Losses We Will Pay For You .................................... 3
Additional Payments We Will Make Under The
    Liability Coverages ............................................ 3
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply ........... 4
Persons Insured:Who Is Covered ............................ 5
Financial Responsibility Laws .................................. 5
Out Of State Insurance ............................................ 5
Limits Of Liability .................................................... 5
Other Insurance ...................................................... 5
Conditions ............................................................... 5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II**

**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For Medical**
**Expenses**
Definitions ............................................................... 6
Payments We Will Make .......................................... 6
Exclusions: When Section II Does Not Apply ......... 7
Limit Of Liability ...................................................... 7
Other Insurance ...................................................... 7
Conditions ............................................................... 7
    Notice
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**

**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**
Definitions............................................................... 8
Losses We Will Pay ................................................ 9
    Comprehensive Coverage .................................. 9
    Collision Coverage ............................................. 9
Additional Payments We Will Make Under The Physical
    Damage Coverages ........................................... 9
    Car Rental If Your Car Is Stolen
Exclusions:  When The Physical Damage
    Coverages Do Not Apply ................................... 9
Limit Of Liability ...................................................... 10
Other Insurance ...................................................... 10

Conditions ................................................................ 10
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured Action
    Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment
**SECTION IV**
**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured**
**And Hit And Run Motorists**
Definitions ............................................................... 12
Losses We Pay ....................................................... 12
Exclusions:  When Section IV Does Not Apply ........ 13
Limits Of Liability .................................................... 13
Other Insurance ...................................................... 14
Arbitration............................................................... 14
Trust Agreement ..................................................... 15
Conditions............................................................... 15
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss
**SECTION V**
**General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory.................................................................. 16
Premium.................................................................. 16
Changes.................................................................. 16
Assignment.............................................................. 16
Policy Period............................................................ 16
Cancellation By The Insured.................................... 17
Cancellation By Us .................................................. 17
Cancellation By Us Is Limited.................................. 17
Renewal................................................................... 18
Other Insurance ...................................................... 18
Dividend Provision................................................... 18
Declarations ............................................................ 18
Fraud And Misrepresentation .................................. 18
Examination Under Oath.......................................... 18
Terms Of Policy Conformed To Statutes ................. 18
Disposal of Vehicle ................................................. 18
Choice of Law ......................................................... 18
**Amendments And Endorsements**
Special Endorsement
    United States Government Employees .............. 19

Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

**AGREEMENT**

We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:

## SECTION I-LIABILITY COVERAGES

**Bodily Injury Liability And Property Damage Liability Your Protection Against Claims from Others**

### DEFINITIONS

The words bold and italicized in Section I of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *Bodily injury* means bodily injury to a person, including resulting sickness, disease or death.

3. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4. *Insured* means a person or organization described under PERSONS INSURED.

5. *Non-owned auto* means a *private passenger*, *farm*, or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relatives* must be using the *non-owned auto* or *trailer* within the scope of permission given by its owner. A *non-owned auto* rented or leased for more than 30 days will be considered as furnished for regular use.

6. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A *trailer* owned by *you*;
   (c) A *private passenger*, *farm* or *utility auto* ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if:
      (i) It replaces an *owned auto* as defined in (a) above; or
      (ii) We insure all *private passenger*, *farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) *Temporary substitute auto*.

7. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.

8. *Relative* means a person who continuously lives in *your* household, and is related to *you* by blood, marriage, or adoption (including a ward or foster child) and also includes a foreign exchange student residing in *your* household if *you* provide us with the student's name, date of birth and driver license number within a reasonable time.

9. *Temporary substitute auto* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto*.

11. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *You* and *your* mean the policyholder named in the declarations or his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, and;

2. Damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered lawsuit.

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

*4000014492941796410720240068*

(b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto* or *non-owned auto*, not to exceed $250 per bail bond.

6. We will upon request by an *insured,* provide reimbursement for the following items:
   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto.*
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1. Bodily injury to any insured or any family member of an insured residing in the insured's household is not covered.

2. Section I does not apply to *bodily injury* or property damage arising out of the ownership, maintenance, or use of an *owned* or *non-owned auto* while being used to carry persons or property for compensation or fee, including but not limited to the delivery of food or any other products. However, this exclusion will not apply to shared-expense car pools.

3. *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

4. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

5. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

6. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

7. We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you.*

8. We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business.*

9. A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business, (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

10. We do not cover damage to:
    (a) Property owned, operated or transported by an *insured*; or
    (b) Property rented to or in charge of an *insured* other than a residence or private garage.

11. We do not cover an auto acquired by you during the policy term, if you have purchased other liability insurance for it.

12. We do not cover:
    (a) The United States of America or any of its agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

13. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation, or contamination is not covered.

14. *Bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

15. We do not cover bodily injury or property damage caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

16. We do not cover any liability assumed under any contract or agreement.

17. Regardless of any other provision in this policy, there is no coverage for punitive or exemplary damages.

18. Any liability arising out of the use of an owned or non-owned auto in connection with the commission of or the attempt to commit a felony by an *insured.*

## PERSONS INSURED
### Who Is Covered
Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You* and *your relatives*;
2. Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an insured under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *You*;
   (b) *Your relatives* when using a *private passenger*, *farm* or *utility auto* or *trailer*.
   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.
   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS
When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE
When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY
Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE
If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over other valid and collectible insurance.

## CONDITIONS
The following conditions apply to Section I:

1. NOTICE
   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.
   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.
2. TWO OR MORE AUTOS
   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. **ASSISTANCE AND COOPERATION OF THE INSURED**

The *insured* will cooperate and assist us, if requested:

(a) In the investigation of the occurrence;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. **ACTION AGAINST US**

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:
   (i) By a final judgment against the *insured* after actual trial; or
   (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5. **SUBROGATION**

When we make a payment under this coverage we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

**SECTION II - AUTO MEDICAL PAYMENTS**
**Protection For You And Your Passengers For Medical Expenses**

---

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses are incurred for the specific medical service.

Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

This Coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:

   (a) While *occupying* the *owned auto*; or
   (b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
   (c) When struck as a pedestrian by an auto or *trailer*.

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

## EXCLUSIONS
### When Section II Does Not Apply

1. There is no coverage for *bodily injury* arising out of the ownership, maintenance, or use of an *owned* or *non-owned auto* while being used to carry persons or property for compensation for a fee, including but not limited to the delivery of food or any other products. However, this exclusion will not apply to shared-expense car pools.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:
   (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
   (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

7. There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

8. There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents.

9. We do not cover *bodily injury* caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

10. There is no coverage for *bodily injury* sustained while *occupying* any motorized vehicle which is not defined as an *owned* or *non-owned auto* under this policy.

11. There is no coverage for *bodily injury* occurring during the course of employment if worker's compensation benefits are required or available.

12. There is no coverage for *bodily injury* sustained while *occupying* an *owned* or *non-owned auto* being used in connection with the commission or the attempt to commit a felony by an *insured*.

### NON-DUPLICATION
No person for whom medical expenses are payable under the Medical Payments Coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

### LIMIT OF LIABILITY
The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

No person for whom medical expenses are payable under the medical payments coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

An auto and an attached *trailer* are considered to be one auto.

### OTHER INSURANCE
If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS
The following conditions apply to this Coverage:

1. NOTICE
   As soon as possible after an accident, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The names and addresses of the injured, and of any witnesses.

2. ACTION AGAINST US
   Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

3. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS
   As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

4. SUBROGATION

If we make a payment under Section II-Auto Medical Payments of this policy, and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right.  That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss or *bodily injury* to prejudice them.

If we make payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment, costs, and fees.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

**DEFINITIONS**

The definitions of the terms *auto business, farm auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also.  Under this Section, the following special definitions apply:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.

2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

3. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   (a) Are permanently installed or attached; or
   (b) Alter the appearance or performance of a vehicle.

   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

6. *Insured* means:
   (a) Regarding the *owned auto*:
      (i) *You* and *your relatives;*
      (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.
   (b) Regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. *Loss* means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.

8. *Non-owned auto* means a *private passenger, farm* or *utility* auto or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*.  *You* or *your relative* must be using the auto *trailer* within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for regular use.

9. *Owned auto* means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if
      (i) It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
   (c) A *temporary substitute auto*.

**10.** *Trailer* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

## LOSSES WE WILL PAY FOR YOU
### Comprehensive (Excluding *Collision*)

**1.** We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or *non-owned auto*. This includes breakage of glass and *loss* caused by:

(a) Missiles;
(b) Falling objects;
(c) Fire;
(d) Lightning;
(e) Theft;
(f) Larceny;
(g) Explosion;
(h) Earthquake;
(i) Colliding with a bird or animal;
(j) Windstorm;
(k) Hail;
(l) Water;
(m) Flood
(n) Malicious mischief;
(o) Vandalism;
(p) Riot; or
(q) Civil commotion.

No deductible will apply to *loss* caused by:

(a) Fire, lightning, smoke, smudge; or
(b) Damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

**2.** We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) Fire;
(b) Lightning;
(c) Flood;
(d) Theft of the entire automobile;
(e) Falling objects;
(f) Earthquake; or
(g) Explosion.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

No deductible will apply due to *loss* by fire or lightning.

**3.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

**1.** We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

**2.** We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**3.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

**1.** We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $25 per day nor $750 per *loss*.

**2.** We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS
### When The Physical Damage Coverages Do Not Apply

**1.** An auto used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** *Loss* due to *war* is not covered.

**3.** We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

**4.** There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

**5.** Tires, when they alone are damaged by *collision*, are not covered.

**6.** *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger, farm* or *utility autos*.

10. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation, or contamination.

11. There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents.

12. We do not cover any physical damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

13. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

14. There is no coverage for any liability assumed under any contract or agreement.

15. There is no coverage for *loss* or damage resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.

16. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you,* a *relative* or a permissive user of the vehicle in illegal activity.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.
   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE
   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:
   (a) The identity of the *insured;*
   (b) A description of the auto or *trailer;*
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.
   In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS
   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. **ASSISTANCE AND COOPERATION OF THE *INSURED***

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the *loss*;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

4. **ACTION AGAINST US**

   Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

5. **INSURED'S DUTIES IN EVENT OF *LOSS***

   In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property.

6. **APPRAISAL**

   If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

   We will not waive our rights by any of our acts relating to appraisal.

7. **PAYMENT OF *LOSS***

   We may at our option:

   (a) Pay for the *loss*; or
   (b) Repair or replace the damaged or stolen property.

   At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. **NO BENEFIT TO BAILEE**

   This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. **SUBROGATION**

   If we make a payment under Section III-Physical Damage Coverages of this policy, and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after *loss* or *bodily injury* to prejudice them.

   If we make payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment, costs, and fees.

10. **ASSIGNMENT**

    With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire to rights under this contract and we shall not recognize any such assignee.

## SECTION IV - UNINSURED MOTORIST COVERAGE
**Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists**

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. ***Hit-and-run auto*** is a motor vehicle causing *bodily injury* to an *insured* or *property damage* to the *insured auto* through physical contact with him or the *insured auto* or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:
   - (a) Reports the accident to a police, peace or judicial officer or to the Commissioner of Motor Vehicles within a reasonable time;
   - (b) Files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for compensatory damages against an unidentified person;
   - (c) Shows that the *insured* was not negligent in failing to determine the identity of the other vehicle and its owner or operator at the time of the accident; and
   - (d) Makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

   If there is no physical contact with the *hit-and-run auto* the facts of the accident must be established by clear and convincing evidence other than any evidence from occupants of the *insured auto*.

2. ***Insured*** means:
   - (a) The individual named in the declarations and his or her spouse if a resident of the same household;
   - (b) *Relatives* of (a) above if residents of his household;
   - (c) Any other person while *occupying* an *owned auto* with *your* consent or operating an *owned auto* with a reasonable belief that person has *your* permission to do so.
   - (d) Any person who is entitled to recover compensatory damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

   If there is more than one *insured*, our limit of liability will not be increased.

3. ***Insured auto*** is an auto:
   - (a) Described in the declarations and covered by the bodily injury liability coverage of this policy;
   - (b) Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
   - (c) Operated by *you* or *your* spouse if a resident of the same household.

   But the term *insured auto* does not include:

   - (i) An auto used to carry passengers or goods for hire, except in a carpool;
   - (ii) An auto being used without the owner's permission; or
   - (iii) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4. ***Occupying*** means in, upon, entering into or alighting from.

5. ***Property damage*** means injury or destruction of an auto owned by *you* and covered by the Bodily Injury and Property Damage Coverage of this policy and property in the auto owned by the *insured*.

6. ***State*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7. ***Uninsured motor vehicle*** means a motor vehicle whose ownership, maintenance, or use has resulted in the *bodily injury*, death or damage to property of an *insured*, and for which the sum of the limits of liability available to the *insured* under all valid and collectible insurance policies, bonds and securities, applicable to the *bodily injury*, death or damage to property is less, than the applicable limits of uninsured motorist coverage provided to the *insured* under the policy against which the claim is made.

   The term *uninsured motor vehicle* does not include:

   - (a) An *insured auto*;
   - (b) A motor vehicle owned by or furnished for the regular use of the *insured* or *relative.*
   - (c) Self-insured within the meaning of the Tennessee Financial Responsibility Law or any similar state or Federal law;
   - (d) A motor vehicle or *trailer* located for use as a residence or premises; or
   - (e) A motor vehicle, farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

### LOSSES WE PAY

Under the Uninsured Motorists Coverage we will pay compensatory damages for *bodily injury* and *property damage* (if carried) caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* or *hit-and-run auto* arising out of the ownership, maintenance or use of that auto.

The amount of the *insured's* recovery for these compensatory damages will be determined by agreement between the *insured* or his representative and us. The dispute may be arbitrated if an agreement cannot be reached.

## EXCLUSIONS
### When Section IV Does Not Apply

1.  This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.
2.  We do not cover *bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle:
    (a) Owned by an *insured* or *relative;* and either
        (i) Not described in the declarations; or
        (ii) Not covered under the terms of this policy as an *owned auto* or *non-owned auto*.
3.  The Uninsured Motorists Coverage will not benefit any workers' compensation insurer, self insurer, or disability benefits insurer.
4.  We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.
5.  We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.
6.  There is no coverage for the first $200 of *property damage* to the property of each *insured* as the result of any one accident. However, the deductible of $200 shall not apply if we also provide Collision Coverage, for the *insured auto* and the operator of the other vehicle has been positively identified and is solely at fault.
7.  Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the Uninsured Motorists Coverage of this policy.
8.  *Bodily injury* or *property damage* that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
9.  *Bodily injury* or *property damage* that results from bio-chemical attack or exposure to bio-chemical agents is not covered.
10. This coverage does not apply to any liability assumed under any contract or agreement.
11. This coverage does not apply to damage caused by an *insured's* participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
12. This coverage does not apply to *bodily injury* to an *insured* while *occupying* a motorcycle owned by an *insured* or *relative.*
13. There is no coverage for *bodily injury* arising out of the ownership, maintenance, or use of an *owned* or *non-owned auto* while being used to carry persons for compensation or a fee, including but not limit to the delivery food or any other products. However, a vehicle used in an ordinary carpool on a ride sharing or cost sharing basis is covered.
14. There is no coverage for *bodily injury* to any other person while *occupying* an *owned auto* without *your* consent or operating an *owned auto* without a reasonable belief that person has *your* permission to do so.
15. There is no coverage for *bodily injury* for losses involving a *non-owned auto* furnished for the regular use of *you* or a *relative*. Furnished for regular use does not include a motor vehicle rented from a rental company for 30 days or less.

## LIMITS OF LIABILITY
Regardless of the number of autos or *trailers* to which this policy applies:

1.  The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages, including but not limited to, damages for care or loss of services, loss of consortium, bystander claims, and claims for mental anguish, because of *bodily injury* sustained by one person as the result of one occurrence.
2.  The limit of such liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including but not limited to, damages for care and loss of services, loss of consortium, bystander claims, and claims for mental anguish, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3.  The limit of property damage liability shown in the declarations of this policy is our total limit of liability for all damages, including loss of use, to all property of one or more *insureds* damaged as the result of any one accident.
4.  When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.
    If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.
    The amount payable under this Coverage will be reduced by all amounts:
    (a) Payable to all *insureds* under this policy. The maximum amount is the difference between the "each accident" limit of liability of this coverage and the amount paid all *insureds* by or for any person or organization who is or may be held legally liable for the *bodily injury*;

(b) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

(c) Paid or payable under any workers' compensation law, disability benefits law or any similar law or health insurance policy.

**OTHER INSURANCE**

1. When an *insured* suffers *bodily injury* while not *occupying* any motor vehicle, this policy only applies if it provides the highest limits of Uninsured Motorists Coverage to which the *insured* is eligible.

2. When an *insured* suffers *bodily injury* while *occupying* a motor vehicle owned by the *insured*, only the limits of Uninsured Motorists Coverage on that vehicle shall apply.

3. When an *insured* suffers *bodily injury* while *occupying* a motor vehicle not owned by the *insured*:

   (a) The Uninsured Motorists Coverage on the vehicle the *insured* was *occupying* is primary.

   (b) If the Uninsured Motorists Coverage limits on that vehicle are exhausted due to the extent of the *insured's* compensatory damages, and the *insured* is named on this policy, this policy will provide excess coverage. However, if the *insured* is covered as a named insured under more than one policy, then only the policy with the highest limits of Uninsured Motorists Coverage will apply.

   (c) If the Uninsured Motorists Coverage limits on the motor vehicle *occupied* by the *insured* and any other policy where the *insured* is named are exhausted due to the extent of the *insured's* compensatory damages, and if the *insured* is not named on this policy, this policy will provide excess coverage. However, if the *insured* is covered other than as a named insured on more than one policy, then only the policy with the highest limits of Uninsured Motorists Coverage will apply.

4. In no event is the *insured* entitled to receive benefits from all applicable policies listed in 3.a., 3.b. and 3.c. above, in an amount greater than the limits of the policy providing the highest limits of Uninsured Motorists Coverage.

5. Regarding *property damage* to an *owned auto* or a *non-owned auto*, the policy providing Uninsured Motorists Property Damage Coverage on that vehicle is primary and any other coverage is excess. If more than one policy otherwise applies, we will not owe more than our pro-rata share of the total coverage available.

**ARBITRATION**

**Optional Arbitration**

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

   (a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or

   (b) The amount of damages sustained by the *insured*

may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this Coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this Coverage as defined in this policy. Unless otherwise required by state law, the method, manner, and format of any arbitration process will be subject to agreement by *you* and us. Attorney fees and expenses will be paid by the party incurring them.

**Binding Arbitration**

If the *insured* or the *insured's* personal representative agrees to a settlement offer with the party or parties alleged to be liable for the *bodily injury* or death of the *insured*, the *insured* may seek additional compensation under this coverage upon agreement of the *insured* and us to submit the claim to binding arbitration of all issues of liability and damages, provided:

   (i) We receive written notice from the liability insurance company providing coverage for the parties to be released by certified mail, return receipt requested, of the offer to the *insured* and the company provides verification of coverage, upon request by us, and confirms to us that the party or parties to be released will agree in writing to cooperate with us in connection with the arbitration of the claim; and

   (ii) The *insured* gives us written notice by certified mail, return receipt requested, of the *insured's* intent to accept the offer and agree to submit the claim to binding arbitration; and

   (iii) After receipt of both notices referred to in paragraphs (i) and (ii), we shall give notice within thirty days by certified mail, return receipt requested, to the *insured* and the liability insurance carrier(s) if we consent to the settlement; that we will agree to binding arbitration of the *insured's* uninsured motorist claim and will waive our subrogation rights against the party or parties to be released in exchange for their written agreement to cooperate in connection with the arbitration. Upon receipt of the notice, the *insured* may proceed to execute a release of the party or parties on whose behalf the offer was made and upon execution of the release, receive payment of the settlement proceeds;

(iv) If we do not agree to waive subrogation rights, we will pay the *insured* the underlying policy limits, and binding arbitration will not be applicable; however, the *insured* must still file a lawsuit against the responsible party within the statute of limitations.

The arbitration shall be provided for by Tennessee law and by the Uniform Arbitration Act.

The arbitrator shall be selected by agreement of three parties. If the parties are unable to agree, either party may request a judge of a court of record in the county in which the arbitration is pending to designate three potential arbitrators. The parties shall then agree upon one of the three arbitrators so designated.

Unless the parties agree otherwise, the arbitration will take place in the county in which the *insured* resides and the rules of evidence applicable to the state courts where the arbitration is conducted shall apply.

The arbitrator shall not be informed as to the amount or amounts collected by the *insured* by way of settlement or judgment prior to the conclusion of the arbitration. Disclosure of such information prior to the conclusion of the arbitration will result in disqualification of the arbitrator.

*Coverage issues shall be decided by a court of competent jurisdiction; the arbitrator shall decide issues of tort liability and damages only.* The arbitrator shall first decide issues of liability and the apportionment of fault and, if fault is found, the amount of damages sustained by the *insured*.

If the arbitrator's award to the *insured* is less than or equal to the total amount collected by the *insured* by way of settlements or judgments plus the amount of any settlement offer made by us at least fifteen days prior to the arbitration, the *insured* will pay the arbitrator's fee. In the event the arbitrator's award to the *insured* exceeds the total amount collected by the *insured* by way of settlements or judgments plus the amount of any settlement offer made by us at least fifteen days prior to the arbitration, we will pay the arbitrator's fee.

We shall be entitled to credit for the total amount of damages collected by the *insured* from all parties alleged to be liable for the *bodily injury* or death of the *insured* whether obtained by settlement or judgment and whether characterized as compensatory or punitive damages.

Nothing contained herein shall prohibit or preclude us and the *insured* or the *insured's* personal representative from settling the *insured's* uninsured motorist claim at any time and upon such terms and conditions as are acceptable to the parties.

After receipt of both of the notices referred to in paragraphs (i) and (ii), we, at our option, may elect to decline binding arbitration and preserve our subrogation rights, provided that within thirty days after receipt of both of the notices, we pay the *insured* the full amount of the settlement offer.

**TRUST AGREEMENT**

When we make a payment under this Coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2.  The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3.  At our written request, the *insured*, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4.  The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists Coverage:

1.  NOTICE

    As soon as possible after an accident, notice must be given us or our authorized agent stating:

    (a) The identity of the *insured*;
    (b) The time, place and details of the accident; and
    (c) The names and addresses of the injured, and of any witnesses.

    if the *insured* or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

    If the owner or operator of any motor vehicle causing *bodily injury* or *property damage* to an *insured* under this Coverage is unknown, the *insured* satisfies all of the requirements of Section 56-7-1201(e) of the Tennessee Code Annotated; and should a suit be instituted, the *insured* shall issue a John Doe warrant against the unknown owner or operator in order to come within this Coverage.

2. ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;
(b) If the *insured* is a minor, to his parent or guardian; or
(c) If the *insured* is deceased, to his surviving spouse; otherwise
(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS

These conditions apply to all Coverages in this policy.

1. TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) That *you* will cooperate with us in determining if this information is correct and complete.
(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death, and until the expiration of the policy term:

(a) The executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of his duties;
(b) Any person having proper temporary custody of and using the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

6. **CANCELLATION BY THE *INSURED***

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

7. **CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 10 days in advance if the policy has been in effect less than 60 days at the time notice of cancellation is mailed and the policy is not a renewal;

(c) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

8. **CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately we will not cancel except for any of the reasons below.

(a) *You* do not pay the initial premium on other than a renewal or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.

(b) *You* obtained the policy through material misrepresentation.

(c) *You* did not fully disclose *your* auto accidents and moving traffic violations for the prior 36 months if called for in the application.

(d) *You* failed to disclose information needed for acceptance or proper rating of the risk.

(e) Any *insured* violated a policy term or condition.

(f) Any *insured* made a false or fraudulent claim or helped or encouraged another in presenting such a claim.

(g) *You* request coverage for a person not listed on the original application, and we find, within 60 days of *your* written request, that the person is unacceptable.

(h) *You*, any operator resident in *your* household, or any customary operator of an *insured auto* has had his driver's license or motor vehicle registration suspended or revoked within the 36 months prior to notice of cancellation.

(i) *You* (or any operator resident in *your* household, or any customary operator of an *insured auto*) are or become subject to epilepsy or heart attacks and cannot produce a physician's certificate attesting to his unqualified ability to operate a motor vehicle.

(j) *You*, (or any operator resident in *your* household, or any customary operator of an *insured auto*) are convicted of or forfeit bail for any felony during the policy period or the 36 months prior to the effective date.

(k) *You*, (or any operator resident in *your* household, or any customary operator of an *insured auto*) are convicted of or forfeit bail for criminal negligence resulting in death, homicide or assault arising out of the operation of a motor vehicle during the policy period or the 36 months prior to the effective date.

(l) *You*, (or any operator resident in *your* household or any customary operator of an *insured auto*) are convicted of or forfeit bail for operating a motor vehicle while intoxicated or under the influence of drugs during the policy period or the 36 months prior to the effective date.

(m) *You*, (or any operator resident in *your* household or any customary operator of an *insured auto*) are convicted of or forfeit bail for leaving the scene of an accident without stopping to report during the policy period or the 36 months prior to the effective date.

(n) *You*, (or any operator resident in *your* household or any customary operator of an *insured auto*) are convicted of or forfeit bail for theft of a motor vehicle during the policy period or the 36 months prior to the effective date.

(o) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for making false statements in a driver's license application during the policy period or the 36 months prior to the effective date.

(p) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for a third violation committed within 36 months, or any ordinance, law or regulation limiting the speed of motor vehicles.

(q) **You**, (or any operator resident in **your** household or any customary operator of an **insured auto**) are convicted of or forfeit bail for a third violation committed within 36 months, of any state motor vehicle law violations which are considered misdemeanors, whether or not the violations were repetitions of the same offense.

(r) The insured auto is altered in a way that increases the risk substantially.

(s) The insured auto is used as an authorized emergency vehicle.

(t) The insured auto is subject to an inspection law and has not been inspected or, if inspected, has failed to qualify.

Failure to cancel for any of the reasons above shall not obligate us to renew the policy.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible of not more than $100.

9. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) **You** do not pay any premium as we require to renew this policy.

(b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.

(c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

10. OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

11. DIVIDEND PROVISION

**You** are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

12. DECLARATIONS

By accepting this policy, **you** agree that:

(a) The statements in **your** application and in the declarations are **your** agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

13. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time of application; or

(b) At any time during the policy period; or

(c) In connection with the presentation or settlement of a claim.

14. EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

15. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Tennessee are amended to conform to those statutes.

16. DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date **you** do so.

17. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Tennessee.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

   1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

   2. Rented motor vehicles used for United States Government business,

   when such use is with the permission of the United States Government.  Subject to the limits described in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this Coverage:

   1. A $100 deductible applies to each occurrence.

   2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

      (a) The *actual cash value* of the property at the time of the occurrence; or
      (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
      (c) Two months basic pay of the *insured*; or
      (d) The limit of Property Damage liability coverage stated in the declarations.

   3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

      (a) The *actual cash value* of the property at the time of the occurrence; or
      (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
      (c) The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President



**GEICO ADVANTAGE INSURANCE COMPANY**
Policy Number: 4492-94-17-96

# Automobile Policy Amendment
## Emergency Road Service Coverage

*Your* policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

*You* may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the *insured* calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor.  The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

# GEICO

GEICO ADVANTAGE INSURANCE COMPANY

Policy Number: 4492-94-17-96

**Automobile Policy Endorsement**

**Rental Reimbursement Endorsement**

We agree with *you* that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*; or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
   (a) Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
   (b) Seventy-two (72) hours after our initial settlement offer;
   whichever comes first.

However, when there is a total theft of an *owned auto*, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to *you* or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the *actual cash value* of the *owned auto*.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle.  The *insured* must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the *loss*.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

O. M. Nicely
President

# GEICO.

GEICO ADVANTAGE INSURANCE COMPANY

# Automobile Policy Amendment

Policy Number: 4492-94-17-96

*Your* policy is amended as follows:

### SECTION V - GENERAL CONDITIONS

The condition for POLICY PERIOD is revised as follows:

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

# GEICO.

**Automobile Policy Amendment**
**TENNESSEE**

GEICO ADVANTAGE INSURANCE COMPANY

Policy Number: 4492-94-17-96

*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES

### DEFINITIONS

Definition **13.** *You* and *your* is revised as follows:

13. *You* and *your* mean the named insured shown in the declarations or his or her spouse if a resident of the same household.

The following definitions are added:

14. *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

15. *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

16. *Transportation network company* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

### EXCLUSIONS

The following exclusion is revised:

2. Section I does not apply to *bodily injury* or property damage arising out of the ownership, maintenance, or use of an *owned auto* or *non-owned auto*:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) while being used for *ride-sharing*.

   However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

19. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

## SECTION II - AUTO MEDICAL PAYMENTS

### EXCLUSIONS

The following exclusion is revised:

1. There is no coverage for *bodily injury* arising out of the ownership, maintenance, or use of an *owned auto* or *non-owned auto*:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

   (b) while being used for *ride-sharing*.

   However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

13. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The definitions of *personal vehicle sharing program, ride-sharing* and *transportation network company* under Section I apply to Section III also.

Definition **10.** *Trailer* is revised as follows:

10. *Trailer* means a trailer designed to be towed by a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

**LOSSES WE WILL PAY FOR YOU**

**Comprehensive (Excluding *Collision*)** Item 1 and 2 are revised as follows:

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned auto* or *non-owned auto*. This includes breakage of glass and *loss* caused by:

   (a) Missiles;
   (b) Falling objects;
   (c) Fire;
   (d) Lightning;
   (e) Theft;
   (f) Larceny;
   (g) Explosion;
   (h) Earthquake;
   (i) Colliding with a bird or animal;
   (j) Windstorm;
   (k) Hail;
   (l) Water;
   (m) Flood;
   (n) Malicious mischief;
   (o) Vandalism;
   (p) Riot; or
   (q) Civil commotion.

   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Theft of the entire automobile;
   (e) Falling objects;
   (f) Earthquake; or
   (g) Explosion.

   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

**EXCLUSIONS**

The following exclusion is revised:

1. Section III does not apply to any vehicle:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) while being used for *ride-sharing*.

   However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

15. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**SECTION IV – UNINSURED MOTORISTS COVERAGE**

**DEFINITIONS**

Definition **2.(a) *Insured*** is revised as follows:

   (a) The named insured shown in the declarations or his or her spouse if a resident of the same household;

**EXCLUSIONS**

The following exclusion is revised:

13. There is no coverage for *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of an *owned auto* or *non-owned auto*:

   (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) while being used for *ride-sharing*.

   However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

16. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**SECTION V – GENERAL CONDITIONS**

The last paragraph of **8. Cancellation By Us is Limited** is deleted.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

ELECTRONICALLY FILED
2018 Jul 18 4:23 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JOHNATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) ) ) | **Case No. CH-18-0976 Part III**<br><br>**(Hon. Chancellor JoeDae Jenkins)** |
| PLAINTIFFS,<br><br>v. | ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF TENNESSEE CODE ANNOTATED § 56-7-1201(c), TENNESSEE CODE ANNOTATED § 56-7-105, TENNESSEE COMMON LAW, and DECLATORY JUDGMENT PURSUANT TO TENNESSEE CODE ANNOTATED § 29-14-103 and 104** |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED PURSUANT TO TENN. R. CIV. PRO. 38.01 & 38.02** |
| DEFENDANTS. | ) | |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES PROPOUNDED TO DEFENDANT GEICO ADVANTAGE INSURANCE COMPANY

Comes now Plaintiff Johnathan H. Weimar, on behalf of himself and all similarly situated persons and entities, by and through their undersigned counsel of record, pursuant to Rules 26.01, 33.01 and 34.01 of the Tennessee Rules of Civil Procedure and submits his **First Requests for Production of Documents and Interrogatories to Defendant GEICO Advantage Insurance Company** (hereinafter referred to as the "Requests")

Responses to these Requests should be produced according to the Tennessee Rules of Civil Procedure at the offices of WATSON BURNS PLLC, 253 Adams, Memphis, Tennessee 38103 for inspection and photocopying. Documents produced should include everything in the possession, custody or control of Defendant and all those in privity with it, relating to the following Requests.

These Requests shall be deemed continuing so as to require supplemental responses pursuant to Tennessee Rule of Civil Procedure 26.05 if the Defendant, or anyone in privity with it, obtains further or different information between the time the responses are served and the time of trial. The Requests shall be produced in accordance with the Definitions and Instructions set forth below.

## I.      DEFINITIONS AND INSTRUCTIONS

1.      The term "**Claim Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at

https://www.geico.com/information/insurance-terms/#ClaimExaminer.

2.      The term "**Class Member(s)**" shall have the same meaning as contained in paragraph 28 of Plaintiff's Class Action Complaint filed in this proceeding.

3.      The term "**CLUE Report**" " shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at

https://www.geico.com/information/insurance-terms/#CLUEReport.

4.      As used herein, the terms "**concerning**," "**referring**," "**relating**," "**in connection with**" and/or "**incident to**" in reference to a given subject matter means any information, document or communication which constitutes, contains, embodies, comprises, reflects, identifies, states or refers to, deals with, comments on, responds to, describes, analyzes, or is in

any way pertinent to the subject matter including, without limitation, any documents which mention said person or subject by name or any variant thereof.

5.     The terms "**Defendant"** and "**GEICO**" shall mean the entity GEICO Advantage Insurance Company, and its officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

6.     The term "**Deductible**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Deductible.

7.     The term "**document(s)**" means, without limitation, the following items, whether printed or recorded or maintained in any electronic format, or written or produced by hand: e-mails, portable document format files, tagged image file format files, electronically stored data and information, agreements, communications, reports, correspondence, telegrams, telexes, memoranda, summaries of records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants or experts, drafts, letters, any marginal comments appearing on any documents, and all other writings.

8.     The term "**First Party Claims**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#FirstPartyClaims.

9.      The term "**Insured**" shall mean any person or entity to whom GEICO provided **Uninsured Motorist Coverage** (as defined below in No. 20), the policy of which was issued and/or delivered in the State of Tennessee.

10.     The term "**Liability Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#LiabilityAdjuster.

11.     The term "**Liability Investigation**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#LiabilityInvestigation.

13.     The term "**Payment Recovery**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#PaymentRecovery.

14.     The term "**Payment Recovery Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#PaymentRecoveryExaminer.

15.     The term "**Plaintiff**" shall refer to Johnathan H. Weimar.

16.     The term "**person(s)**" means any human being, firm, association, partnership, corporation, joint venture, government entity or other form of legal or business entity, public or private.

17.     Unless otherwise indicated, the term "**relevant time period**" used throughout these Requests shall mean and refer to the period of time from June 29, 2012 to the present.  All

–4–

information and documents which refer to this period should include all information whether prepared or collected before, during or afterward the period if responsive to any given question.

18.     The term "**representative**" shall mean any and all agents, owners, members, employees, servants, officers, directors, associates or other persons acting or purporting to act on your behalf.

19.     The term "**Subrogation**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Subrogation.

20.     The term "**Uninsured Motorist Coverage**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Uninsured.

21.     The term "**Uninsured Person**" means any human being, firm, association, partnership, corporation, joint venture, government entity or other form of legal or business entity, public or private whom GEICO has determined to have no automobile insurance coverage.

21.     The terms "**you**," and "**your**" shall each refer to GEICO Advantage Insurance Company, and its officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

22.     These Document Requests are intended to cover all documents and electronically stored information in the possession, custody or control of GEICO and any of its agents or representatives, or to which any of them may have the right of possession, custody or control.

23.     If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not answering any question, or any part thereof, please provide each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim of privilege is valid, shall be set forth in complete detail.  With respect to a document to which a privilege is being claimed, the following information at the very minimum should be provided:

        (a)     date;

        (b)     author;

        (c)     names and addresses of any persons who received copies, if any;

        (d)     title;

        (e)     type of tangible thing, letter, memorandum, telegram, report, etc.; and

        (f)     general description of the subject matter (without revealing privileged information).

24.     These Document Requests shall be deemed to continuing and any information or documents relating in any way to these Interrogatories which you acquire, which become known to you up to and including the time of trial, shall be furnished by you to Plaintiff within a reasonable time after such information is acquired or becomes known.

25.      If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details of the circumstances leading to the loss or destruction of the document.

## II.    **REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**  Please produce all **documents** (including emails, audio and/or visual recordings and statements) **concerning, referring or relating** to the **Plaintiff**.


**RESPONSE:**


**REQUEST NO. 2:**  For the **relevant time period**, please produce any and all **Claim Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** which set forth the steps that **GEICO Claim Examiners** must follow when investigating and/or adjusting **First Party Claims** that fall or may fall within **Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 3:**  For the relevant time period, please produce any and all **Liability Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** which set forth the steps that **GEICO Liability Examiners** must follow when investigating and/or adjusting **First Party Claims** that fall or may fall within **Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 4:**   For the **relevant time period**, please produce any and all **Payment Recovery Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** that set forth the steps that **GEICO Payment Recovery Examiners** must follow

when seeking recovery of payments (and **Deductibles**) made under **Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 5:**   For the **relevant time period**, please produce any and all guidelines, policy manuals, training manuals and bulletins **concerning, referring or relating** to "How GEICO Investigates Your Insurance Claim" as found on **GEICO**'s website at https://www.geico.claims/claimsprocess/claim-investigation/.

**RESPONSE:**

**REQUEST NO. 6:**   For the **relevant time period**, please produce any and all guidelines, policy manuals, training manuals and bulletins **concerning, referring or relating** to "Find Out About Payment Recovery for Car Accidents" as found on **GEICO**'s website at https://www.geico.claims/claimsprocess/payment-recovery/.

**RESPONSE:**

**REQUEST NO. 7:**   For the **relevant time period**, please produce any and all collection letters and other **documents** sent or furnished to any **Uninsured Person in connection with GEICO's Payment Recovery** efforts for payments made and/or **Deductibles** incurred under an **Insured's Uninsured Motorist Coverage**.

8

**RESPONSE:**

 **REQUEST NO. 8:**   For the **relevant time period**, please produce any and all **Subrogation** lawsuits filed by **you in connection with GEICO's Payment Recovery** efforts for payments made, and/or **Deductibles,** incurred under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 9:**   For the **relevant time period**, please produce any and all affidavits, declarations and/or sworn statements given or signed by **you in connection with GEICO's Payment Recovery** efforts for payments made, and/or **Deductibles** incurred, under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 10:**   For the **relevant time period**, please produce any and all non-privileged documents **concerning, referring or relating** to TENNESSEE CODE ANNOTATED § 56-7-1201(c).

**RESPONSE:**

9

**REQUEST NO. 11:**   For the **relevant time period**, please produce any and all **documents related to First Party Claims** made under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 12:**   For the **relevant time period**, please produce any and all **documents related to** the application of any **Deductible** by **you** to any **First Party Claims** made under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 14:**   For the **relevant time period**, please produce the **CLUE Report** for each **Insured** to whom any **Deductible** was applied by **you** with respect to **First Party Claims** made under the **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

10

### III.   <u>INTERROGATORIES</u>

**<u>INTERROGATORY NO. 1</u>:  Identify** the name, address, position and/or title of each and every person that searched for, gathered and/or assisted in searching for and/or gathering any and all information provided in response to these Interrogatories and documents produced in response to Plaintiff's First Requests for Production of Documents.

**RESPONSE:**

**<u>INTERROGATORY NO. 2</u>:  Identify** each and every person whom **GEIC**O contends has any knowledge of any facts relative to any aspect of the claims made in this litigation and/or any potential defense(s) asserted thereto, specifically describing the potential knowledge each person(s) possesses.

**Please note that this Interrogatory does not seek the disclosure of attorney work-product or mental impressions pertaining to those individuals that <u>will be</u> called to testify at the trial of this matter.  This interrogatory only seeks the identity of those individuals having knowledge of relevant information in any way pertaining to any allegation of the Class Action Complaint or to any potential defense thereto.  Please note that the Plaintiff will object to the introduction of any trial testimony from any individual and/or entity not identified in your response to this Interrogatory.**

**RESPONSE:**

**INTERROGATORY NO. 3:** **Identify** and describe (by year) the total number of **Uninsured Motorist Coverage** insurance policies issued or delivered by **GEICO** in the State of Tennessee during the **relevant time period**.

    **RESPONSE:**

**INTERROGATORY NO. 4:** **Identify** and describe (by year) the total number of claims that were made by GEICO **Insured(s)** that involved accidents with **Uninsured Persons** in the State of Tennessee during the **relevant time period.**

    **RESPONSE:**

**INTERROGATORY NO. 5:** Of the claims indentified in response to Interrogatory No. 4 above,. **identify** and describe (by year) how many and which of these accidents were determined by **GEICO's Liability Investigation** to be the fault of the **Uninsured Person** and not the **Insured**.

    **RESPONSE:**

**INTERROGATORY NO. 6:** Of the claims identified in response to Interrogatory No. 4 above, **identify** and describe all **Uninsured Persons** that **GEICO** sought to collect money (whether by letter, telephone call, collection agency or litigation) from during the **relevant time period**.

**RESPONSE:**

**INTERROGATORY NO. 7: Identify** and describe all those **Uninsured Persons** from whom **GEICO** sought to collect money (whether by letter, telephone call, collection agency, or litigation) during **the relevant time period** regardless of how **GEICO** internally classified the claim (meaning, regardless of whether GEICO classified the claim as one failing within collision coverage, comprehensive coverage or **Uninsured Motorist Coverage**).

**RESPONSE:**

**INTERROGATORY NO. 8: Identify** by case style, docket number and the judicial district all lawsuits filed in the State of Tennessee during the relevant time period against **Uninsured Persons** seeking to collect or recovery any money paid out and/or a Deductible incurred) related to any claim falling under **Uninsured Motorist Coverage**).

**RESPONSE:**

13

**INTERROGATORY NO. 9:**  **Identify** each and every **Insured** to whom a **Deductible** was applied by **GEICO related to** a claim with an **Uninsured Person**, and please state the amount, if any, of any **Deductible** applied by **you** and the date you applied said **Deductible**.

**RESPONSE:**

**INTERROGATORY NO. 10:**  For each **Insured** identified in Interrogatory No. 9 above, please **identify** and state whether you ever reimbursed any **Deductible** back to each **Insured(s)** and the date that you did so.

**RESPONSE:**

**INTERROGATORY NO. 11:**  For the **relevant time period**, **identify** each and every **Uninsured Person** from whom **GEICO** sought **Subrogation** in connection with any payments made and/or **Deductibles** incurred under an **Insured's Uninsured Motorist Coverage.**

**RESPONSE:**

**INTERROGATORY NO. 12:**  For the each **Uninsured Person** identified in Interrogatory No. 11 above, please state the total amount, if any, that **GEICO** collected from each **Uninsured Person** and the date or dates each amount was collected.

**RESPONSE:**

**INTERROGATORY NO. 13**:  **Identify** each and every **Claim Examiner**, **Liability Examiner** and **Payment Recovery Examiner** that in any way dealt with or were related to Plaintiff's claims made under his **Uninsured Motorist Coverage.**

      **RESPONSE:**

      **INTERROGATORY NO. 14**:  **Identify** all **Claim Examiners**, **Liability Examiners** who dealt with or were related to any claims made under an **Insured's Uninsured Motorist Coverage** in the State of Tennessee during **the relevant time period**.

      **RESPONSE:**

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwatson@watsonburns.com
Email: bburns@watsonburns.com

Malcom B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com

*Counsel for Plaintiff Johnathan H. Weimar, and the absent Class Members*

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email and U.S. Mail, postage prepaid, this 18th day of July 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage
Insurance Company*

Frank L. Watson, III

16

ELECTRONICALLY FILED
2018 Jul 27 4:15 PM
CLERK OF COURT

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS\*\*** | DOCKET NUMBER<br>CH-18-0976-3 |
|---|---|---|

| Plaintiff<br><br>Johnathan H. Weimar | Defendant<br><br>Geico Advantage Insurance Co. |
|---|---|

**TO:    (NAME AND ADDRESS OF DEFENDANT)**

Geico Advantage Insurance Co.

c/o CT Corporation

5601 South 52th Street

Lincoln, Nebraska  68516

**Method of Service:**

☐ Shelby County Sheriff
☑ Private Process Server
☐ Out of County Sheriff*
☐ Secretary of State*
☐ Comm. Of Insurance*
☐ Certified Mail
☐ Other
  *Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the Complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br><br>Frank L. Watson, III<br><br>WatsonBurns, PLLC<br><br>253 Adams Ave, Memphis, TN  38103<br><br>901.529.7996 | ISSUED  29  of  June  , 20 18<br><br>Donna L. Russell, Clerk and Master<br><br>By: _____<br>Deputy Clerk & Master<br>140  Adams, Room 308    Memphis, TN  38103 |
|---|---|

| TO THE SHERIFF: | Came to hand<br><br>_____ day of _____, 20 _____<br><br>Sheriff |
|---|---|

**CERTIFICATION (IF APPLICABLE)**

| I, Donna L. Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Donna L. Russell, Clerk & Master<br><br>By: _____<br>D. C. & M. |
|---|---|

\*\*Submit one original and one copy for each defendant to be served.

♿ If you need assistance or accommodations because of a disability, please call the ADA Coordinator at (901)222-2341.

**Notice of Personal Property Exemption:**
  TO THE DEFENDANT(S):
      Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the _____day of _____, 20_____at _____am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _____

at _____

_____                By: _____
Signature of person accepting service                                              Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant _____because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____.

This _____day of _____, 20 _____
                                                          By: _____
                                                               Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to the

defendant _____. On the _____ day of _____, 20_____, I

received the return receipt, which had been signed by _____ on the _____ day of _____,

20 _____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| **Sworn to and subscribed before me on this _____day of** _____, 20_____. | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of _____Notary Public or _____Deputy Court Clerk: _____ | _____ |
| My Commission Expires: | |
| ATTACH RETURN<br><br>RECEIPT HERE<br><br>(IF APPLICABLE) | |

R E T U R N

Received this SUMMONS on <u>July 2, 2018</u> at <u>11:15 AM.</u>  I hereby certify that on **July 3, 2018**, I executed the within SUMMONS on  **GEICO ADVANTAGE INSURANCE CO** by **Personal service with Tiffani Walvoord (Staff Member) for CT Corporation, Registered Agent for Geico Advantage Insurance Company at 5601 S. 59th St.**  at **10:30 AM**   a true and certified copy thereof with all the endorsements thereon,  in the county aforesaid.

DATE:  July 5, 2018          Authorized Person: _____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been properly served on this the 27th day of July, 2018, via U. S. Mail, postage pre-paid, and/or electronic mail upon the following parties:

George T. Lewis, Esq.
BAKER DONELSON, P.C.
First Tennessee Building
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
Email: blewis@bakerdonelson.com

*Counsel for GEICO Advantage Insurance Company*

William E. Routt

4

ELECTRONICALLY FILED
2018 Aug 02 3:37 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | | |
|---|---|---|
| JONATHAN M. WEIMAR, on behalf of himself and all similarly situated persons and entities | ) ) ) ) | |
| PLAINTIFFS, | ) ) | No. CH-18-0976 Part III |
| v. | ) ) | JURY DEMANDED |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) ) ) | |
| DEFENDANT. | ) ) ) | |

## NOTICE OF APPEARANCE AS COUNSEL ON BEHALF OF DEFENDANT GEICO ADVANTAGE INSURANCE COMPANY

COME NOW George T. Lewis, III, Mitchell S. Ashkenaz, and the Law Firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC and hereby file a Notice of Appearance as Counsel on behalf of Geico Advantage Insurance Company in this action.

Respectfully submitted,

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Thursday, August 02, 2018 to the following:

Frank L. Watson (TN # 15073)            Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                      Futhey Law Firm, PLC
253 Adams Ave.                          1440 Poplar Ave.
Memphis, TN 38104                       Memphis, TN 38104
Phone: (901) 529-7996                   Phone: (901) 725-7585
*Attorney for Plaintiff*                *Attorney for Plaintiff*

Mitchell S. Ashkenaz

ELECTRONICALLY FILED
2018 Aug 02 4:21 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN M. WEIMAR, on behalf of himself and all similarly situated persons and entities<br><br>   PLAINTIFFS,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation<br><br><br>   DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)   No. CH-18-0976 Part III<br>)<br>)   JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

COMES NOW Defendant Geico Advantage Insurance Company ("Geico" or "Defendant"), by and through its undersigned counsel, and files this Answer to Plaintiff's Class Action Complaint ("Complaint"). In response to the separately-numbered paragraphs in the Complaint, Geico responds as follows:

## I.

## NATURE OF THE ACTION

1.    The statements contained in Paragraph 1 of the Complaint do not state any factual allegations and, thus, no response is required from Geico. To the extent a response is required, Geico denies that this action is suitable for class action litigation and, further, denies that Plaintiff Jonathan Weimar ("Plaintiff") is a suitable class representative. Geico further denies that Plaintiff or any other purported class member is entitled to any relief under Tennessee Code

1

Annotated §§ 56-7-1201(c); 56-7-105; 29-14-103; and/or 29-14-104. Geico denies any remaining allegations in Paragraph 1.

## II.

### SUBJECT MATTER JURISDICTION

2.      Admitted.

3.      Paragraph 3 sets forth Plaintiff's legal contentions and does not state a factual allegation to which any response is required.

## III.

### THE PARTIES AND PERSONAL JURISDICTION

4.      Geico lacks sufficient knowledge and/or information to respond to the allegations in Paragraph 4 related to Plaintiff's residence and, therefore, denies the same and demands strict proof thereof. Geico denies that a class action should be maintained in this action. Any remaining allegations are denied.

5.      Admitted.

6.      Without admitting or denying the jurisdictional allegations in Paragraph 6, Geico does not contest this Court's jurisdiction. Geico denies that it has committed any tortious act in Tennessee, and Geico denies that a class action should be maintained in this action.

## IV.

### FACTUAL ALLEGATIONS

A.      **Summary of Alleged Class Allegations**

7.      Geico admits that it provides auto insurance in Tennessee. The remaining allegations in Paragraph 7 of the Complaint set forth Plaintiff's legal contentions and do not state factual allegations to which any response is required. To the extent a response is required, Geico

2

states that the laws of the state of Tennessee with respect to uninsured motorist coverage speak for themselves.

8.    Geico lacks sufficient knowledge and/or information to respond to the allegations in Paragraph 8 related to state rankings for uninsured motorist.  Any remaining allegations in Paragraph 8 of the Complaint are denied.

9.    Geico admits that it has policies and procedures designed to comply with applicable law.  Geico denies that its practices violate Tennessee Code Annotated § 56-7-1201(c).

10.    Geico admits that it has policies and procedures designed to comply with applicable law.  Geico denies that its practices violate Tennessee Code Annotated § 56-7-1201(c).

11.    Geico admits that it has policies and procedures designed to comply with applicable law.  Geico denies that its practices violate Tennessee Code Annotated § 56-7-1201(c).

**B.    Geico Denies that it Wrongfully Imposes an Unlawful $200 Deductible Upon its Policyholders.**

12.    Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself. Geico denies the applicability of § 56-7-1201(c) to this action and denies any wrongdoing under § 56-7-1201(c).

13.    Geico states that it has adopted policies and procedures related to the handling of Tennessee automobile accident claims and that these policies and procedures speak for themselves.  In further response, Geico states that its handling of each individual Tennessee automobile accident claim requires unique and fact-specific investigation and analysis and, accordingly, Geico denies Plaintiff's over-simplified allegations in Paragraph 13.

14.      Geico states that it has adopted policies and procedures related to the handling of Tennessee automobile accident claims and that these policies and procedures speak for themselves.  In further response, Geico states that its handling of each individual Tennessee automobile accident claim requires unique and fact-specific investigation and analysis and, accordingly, Geico denies Plaintiff's over-simplified allegations in Paragraph 14.

15.      Defendant admits that it inspects the insured's vehicle and determines the amount of coverage which is appropriate.  To the extent the allegations in Paragraph 15 of the Complaint are inconsistent with the foregoing, those allegations are denied.

16.      Geico states that it has adopted policies and procedures related to the handling of Tennessee automobile accident claims and that these policies and procedures speak for themselves.  In further response, Geico states that its handling of each individual Tennessee automobile accident claim requires unique and fact-specific investigation and analysis and, accordingly, Geico denies Plaintiff's over-simplified allegations in Paragraph 16.

17.      Denied.  Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.

18.      Admitted.

19.      Geico admits that it sends collection letters to uninsured motorists.   The remaining allegations in Paragraph 19 of the Complaint are ambiguous and appear to state a hypothetical and, therefore, do not require a response from Geico.

20.      Geico states that it has adopted policies and procedures related to the handling of Tennessee automobile accident claims and that these policies and procedures speak for themselves.  In further response, Geico states that its handling of each individual Tennessee

automobile accident claim requires unique and fact-specific investigation and analysis and, accordingly, Geico denies Plaintiff's over-simplified allegations in Paragraph 20.

  21. Geico states that Tennessee Code Annotated § 24-5-115 speaks for itself.  Geico admits that attached to this Complaint is a Collective Exhibit A but denies that this Collective Exhibit, or any similar or related documents or affidavits, constitute an admission on the part of Geico.  Geico states that any affidavit filed by Geico in a court of law speaks for itself. In further response, Geico states that it has adopted policies and procedures related to the handling of Tennessee automobile accident claims and that these policies and procedures speak for themselves.  In further response, Geico states that its handling of each individual Tennessee automobile accident claim requires unique and fact-specific investigation and analysis and, accordingly, Geico denies Plaintiff's over-simplified allegations in Paragraph 21.

  22. Denied.

  23. Denied.

  24. Denied.

**C.** **Geico Denies that it Investigates and Approves Plaintiff's Uninsured Motorist Claims but Unlawfully Imposes a $200 Deductible.**

  25. Geico admits that on January 12, 2108, Plaintiff's 2012 Toyota Scion was insured by Geico for uninsured property damage and bodily injury damage. As to the remaining allegations, Geico has no direct knowledge of the facts of Plaintiff's accident and has no basis to dispute Plaintiff's allegations with respect to the accident.

  26. Geico admits that Plaintiff has attached an Exhibit B to the Complaint.  Plaintiff's Insurance Identification Card and the Declaration Page applicable to Plaintiff's vehicle speak for themselves.  Geico admits that Plaintiff has attached an Exhibit C to the Complaint.  Geico's Tennessee Family Automobile Policy speaks for itself.

5

27.    Admitted.

28.    Admitted.

29.    Geico admits that as a result of the accident, Plaintiff took his car to an auto repair shop and the Plaintiff's car was determined to be a total loss.  The remaining allegations in this Paragraph of the Complaint are denied.

30.    Geico admits that after completing its investigation of Plaintiff's claim, Geico determined that Mr. Marcus Parker was uninsured and solely at fault.  The remaining allegations in this Paragraph of the Complaint are denied.

31.    Geico admits that it sent letters to Marcus Parker regarding Geico's right to recover against Mr. Parker.  The letters sent to Mr. Parker speaks for themselves.  The remaining allegations in this Paragraph of the Complaint are denied for the purpose of demanding strict proof.

32.    Geico admits that it sent communications to Plaintiff regarding his claim.  These communications speak for themselves.   The remaining allegations in this Paragraph of the Complaint are denied for the purpose of demanding strict proof.

33.    Denied.

34.    Geico admits that all "A30-TN (08-07)" Tennessee Automobile Insurance Policies issued by Geico, such as the one issued to Plaintiff, contain the language cited in Paragraph 34 of the Complaint.

35.    Denied.

36.    Denied.

**D.**      **The Alleged Class Period and Alleged Damages to Class.**

37.      To the extent Paragraph 37 sets forth legal contention, this Paragraph requires not response from Geico.  As to the remaining allegations, Geico denies that a class action should be maintained in this action.

38.      Denied. Geico denies that a class action should be maintained in this action.

39.      Denied. Geico denies that a class action should be maintained in this action.

40.      Denied.

41.      Denied.

42.      Denied.

43.      Denied.

44.      Denied.

45.      Denied.

**V.**

**CLASS ACTION ALLEGATIONS**

46.      Paragraph 46 requires no response from Geico.  To the extent a response is required, Geico denies Paragraph 46 and denies that a class action should be maintained in this action.

47.      Denied. Geico denies that a class action should be maintained in this action.

48.      Denied as to Paragraph 48 and all subparts.  Geico denies that a class action should be maintained in this action.

49.      Denied. Geico denies that a class action should be maintained in this action.

50.      Denied. Geico denies that a class action should be maintained in this action.

7

51.     Geico lacks sufficient knowledge and/or information to respond to the allegations in Paragraph 51 and, therefore, denies the same and demands strict proof thereof.  Geico denies that a class action should be maintained in this action.

52.     Geico lacks sufficient knowledge and/or information to respond to the allegations in Paragraph 52 and, therefore, denies the same and demands strict proof thereof.  Geico denies that a class action should be maintained in this action.

53.     Denied. Geico denies that a class action should be maintained in this action.

## VI.

## CAUSES OF ACTION

### COUNT 1- TENNESSEE CODE ANNOTATED § 56-7-1201(c)

54.     Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.

55.     Geico states that Tennessee Code Annotated § 56-7-1201 *et seq.*; the legislative history of Tennessee Code Annotated § 56-7-1201 *et seq.*; *Estate of Kirk v. Love*, 70 S.W.3d 777 (Tenn. Ct. App. 2001); *Clark v. Shoaf*, 302 S.W.3d 849 (Tenn. Ct. App. 2008); and *Brewer v. Richardson*, 893 S.W.2d 935 (Tenn. 1995) speak for themselves.

56.     Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself. The remaining allegations in this Paragraph are denied.

57.     Denied.

58.     Denied.

59.     Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.  To the extent Plaintiff attempts to interpret Tennessee Code Annotated § 56-7-1201(c), these legal contentions require no response from Geico.   Any remaining allegations are denied.

8

60.    Denied.  Geico further denies that Plaintiff is entitled to any relief whatsoever, including monetary relief.

**COUNT 2- TENNESSEE CODE ANNOTATED § 56-7-105**

61.    Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.

62.    Geico states that Tennessee Code Annotated § 56-7-105 speaks for itself.

63.    Denied

64.    Denied.

65.    Denied.

**COUNT 3- BREACH OF INSURANCE AGREEMENT**

66.    Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.  Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.  The remaining allegations in this Paragraph are denied.

67.    Denied.

68.    Denied.

69.    Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.  To the extent Plaintiff attempts to interpret Tennessee Code Annotated § 56-7-1201(c), these legal contentions require no response from Geico.   Any remaining allegations are denied.

70.    Denied.

71.    Denied.  Geico further denies that Plaintiff is entitled to any relief whatsoever, including monetary relief.

**COUNT 4- BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING UNDER THE INSURANCE AGREEMENT**

72.     Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.

73.     Paragraph 73 sets forth Plaintiff's legal contentions and does not state a factual allegation to which any response is required.

74.     Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.  The remaining allegations in this Paragraph are denied.

75.     Denied.

76.     Denied.

77.     Geico states that Tennessee Code Annotated § 56-7-1201(c) speaks for itself.  To the extent Plaintiff attempts to interpret Tennessee Code Annotated § 56-7-1201(c), these legal contentions require no response from Geico.  Any remaining allegations are denied.

78.     Denied.

79.     Denied.  Geico further denies that Plaintiff is entitled to any relief whatsoever, including monetary relief.

**COUNT 5- CONVERSION**

80.     Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.

81.     Denied.  Geico further denies that Plaintiff is entitled to any relief whatsoever, including monetary relief.

**COUNT 6- DECLARATORY JUDGMENT PURSUANT TO TENNESSEE CODE ANNOTATED § 29-14-103 and 104.**

82.     Geico incorporates by reference all statements or denials contained hereinabove as if same were set forth in full herein.

83.     Geico admits that Tennessee Code Annotated § 56-7-1201(c) may be applicable to Tennessee automobile insurance contracts.  The remaining allegations in this Paragraph are denied.  Geico further denies that Plaintiff is entitled to any relief whatsoever, including, but not limited to, declaratory judgment pursuant to Tennessee Code Annotated §§ 29-14-103 and/or 29-14-104.

84.     Denied.  Geico denies that Plaintiff is entitled to any relief whatsoever, including, but not limited to, declaratory judgment pursuant to Tennessee Code Annotated §§ 29-14-103 and/or 29-14-104.

## VII.

### PRAYER FOR RELIEF.

1.     Geico denies all allegations which are or may be set forth in the Complaint's Prayer for Relief, including each and every one of its subparagraphs lettered (1) through (8). Geico denies that this action may be maintained as a class action and denies that Plaintiff and/or any member of any putative class he may represent are entitled to any relief of any kind whatsoever from Geico.

2.     Geico demands a trial by jury for all issues so triable.

3.     Any and all allegations of the Complaint which were not heretofore admitted or denied are now denied, as if such denials were set forth in full herein.

4.     Now, having answered the allegations of the Complaint, Geico further states as follows in response to the Complaint:

11

## VIII.

## <u>AFFIRMATIVE DEFENSES</u>

### FIRST DEFENSE

Geico relies upon all the terms, conditions, limitations, and defenses set forth in its contract of insurance with Plaintiff, and with any putative class member, as a full and complete defense.

### SECOND DEFENSE

If proven by investigation and discovery, certain allegations in Plaintiff's Complaint may be barred by the applicable statute of limitations, and, if so, should be dismissed in their entirety with prejudice in favor of Geico.

### THIRD DEFENSE

Geico asserts and relies upon all defenses available to it pursuant to the Tennessee Code, including without limitation, Tennessee Code Annotated § 56-7-1201, *et seq.*

### FOURTH DEFENSE

The extent to which any or all of Plaintiff's Complaint may be barred by any remaining affirmative defenses, including those contemplated in Rule 8.03 of the Tennessee Rules of Civil Procedure, cannot be determined at this time without the benefit of further investigation and discovery. Thus, as a separate and alternative defense to Plaintiff's Complaint, Defendant specifically reserves the right to amend its Answer and to assert all such affirmative defenses and other defenses as appropriate.

WHEREFORE, PREMISES CONSIDERED, Defendant Geico Advantage Insurance

Company prays that Plaintiff's Class Action complaint be dismissed with prejudice and that

Geico be awarded such other and further relief that this Court deems proper.


Respectfully submitted,


George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage*
*Insurance Company*

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Thursday, August 02, 2018 to the following:

Frank L. Watson (TN # 15073)                Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                          Futhey Law Firm, PLC
253 Adams Ave.                              1440 Poplar Ave.
Memphis, TN 38104                           Memphis, TN 38104
Phone: (901) 529-7996                       Phone: (901) 725-7585
*Attorney for Plaintiff*                     *Attorney for Plaintiff*

Mitchell S. Ashkenaz

14

ELECTRONICALLY FILED
2018 Aug 13 3:48 PM
CLERK OF COURT

# IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | | |
|---|---|---|
| JONATHAN M. WEIMAR, on behalf of himself and all similarly situated persons and entities | ) ) ) ) | |
| PLAINTIFFS, | ) ) | No. CH-18-0976 Part III |
| vs. | ) ) | JURY DEMANDED |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) ) ) | |
| DEFENDANT. | ) ) | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF

Pursuant to Rules 26, 33, and 34 of the Tennessee Rules of Civil Procedure, Geico Advantage Insurance Company ("Geico") submits the following Interrogatories and Requests from Production to Plaintiff Jonathan Weimar ("Plaintiff") to be responded to separately and fully under oath:

### INSTRUCTIONS

1.     You must respond to each interrogatory and request fully based on information in your possession, custody or control, or in the possession, custody or control of your representatives, agents or attorneys.

2.     You must respond to these interrogatories and requests up to the date on which your answers are served on Geico's counsel.

3.     If all of the information furnished in answer to all or part of an interrogatory or request for production is not within your personal knowledge, identify each person to whom all

1

or part of the information furnished is a matter of personal knowledge, and each person who communicated to you any part of the information furnished.

4.      If you believe that any of these interrogatories or requests call for information or documents subject to a claim of privilege, answer or produce so much as is not objected to, state that part of each discovery request as to which you raise objection, and set forth the basis for your claim of privilege with respect to such information as you refuse to give, including a statement identifying the nature of the information withheld; for each document as to which you claim privilege, state the date and subject matter of the document, the name(s) of the person(s) who prepared the document, and the name(s) of the person(s) for whom the document was intended.

5.      If you object to any interrogatory or request, in whole or in part, on the ground that it requests privileged information within the work-product doctrine, identify the document, the date and subject matter of the document, the name of the addressee, and all parties who have seen the document.  If your objection refers to an oral communication, identify who made the communication, and all parties who heard it, the date the communication was made, and the subject matter of it.

6.      If you withhold any information or documents under claim of privilege, identify for each item withheld, the person or persons who have personal knowledge of the information, the parties to any communication withheld, the author or authors and recipient or recipients of any communications or statement withheld, the date or dates associated with the information, the subject matter of the information, the nature of the privilege claimed, and the basis for the claim.

7.      These interrogatories and requests are continuing in nature.  If you receive or otherwise become aware of information responsive to any interrogatory or request for production

after you have served your answers and responses, you must promptly supplement your answers and responses to provide such information.

8.      Any and all responses that refer to previously stated responses or answers ("*supra*") shall explicitly designate the number and, if applicable, the subsection of each and every previous response or answer upon which you rely.

## DEFINITIONS

1.      "Concern," "concerning," "relate to," "relates to," "relating to," and "relation to" means consist of, refer to, reflect, or be in any way legally, logically, or factually connected with the matter discussed.

2.      "Communications" means any oral or written statement, dialogue, colloquialism, discussion, conversation, or agreement, and includes all correspondence, transmittal slips, memoranda, email, internet postings, or notes.

3.      "Defendant" means Geico Advantage Insurance Company, as well as all of its successors and assigns.

4.      "Document" has the broadest meaning accorded to it, and includes, without limitation, all written, typed, printed, reproduced, filmed, electronically or computer-stored, or recorded material or information of any kind, in the possession, custody, or control of you or any of your past or present agents, employees, consultants, attorneys or other persons acting on your behalf, including, but not limited to, any of the following: correspondence; letters; memoranda; interoffice memoranda; writings; notes; notebooks; maps; sketches; charts; films and microfilm; studies; plans; analyses; work papers; statistical records; bills and other billing records; receipts; books; press releases; reports; contracts and agreements; records; summaries; memorializations; minutes; agendas or notes of meetings; conferences; telephone calls or other conversations;

3

calendars and diaries; appointment books and message pads; photographs; tape recordings or other audio or video records; handwritten notes or notations in any form; computer tapes, disks, and other data compilations from which information can be obtained, and any printouts thereof, including internet postings and email; attachments and enclosures; drafts of any of the foregoing; and all non-identical copies or duplicates of any of the foregoing.  For purposes of the foregoing, the term "draft" means any earlier, preliminary, preparatory, or tentative version of all or part of a "document," whether or not such draft was superseded by a later draft, and whether or not the terms of the draft are the same as, or different from, the terms of the final document.  The term shall also include any computers or their hard drives that contain or contained any "documents."

5.      "Identify," when used with reference to any entity other than a natural person, means:  State the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized, and the date of such organization.  Identify each of the entities' officers, directors, shareholders, or other principals. State whatever other information you may have concerning the existence or identity of the entity.

6.      "Identify," when used with reference to document or communication, means state:  Its nature (e.g., letter, telegram, memorandum, chart, report, study), date, author, date and place of preparation, and the name and address of each addressee, if there is an addressee; The identity of each signer to the document or communication; The title or heading of the document or communication; Its substance; Its present (or, if the present is not known, the last known) location and custodian; The identity of each person to whom a copy was sent, and each date of its receipt, and each date of its transmittal or other disposition by you and any other person (naming such other person), who at the time either received, transmitted, or otherwise disposed

of such document or communication, and each copy thereof; and The circumstances of each such receipt, and each transmittal or other disposition, including identification of the person from whom received, and the person to whom transmitted.

7.    "Identify," when used to refer to an individual or a person, means state the individual or person's name, address, and telephone number.

8.    "Individual" means a natural person.

9.    "Lawsuit" means the action initiated by the filing of the complaint in the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis, Case No. CH-18-0976 Part III, and all counterclaims, defenses and claims asserted therein by any party.

10.    "Person" and "Persons" refer to and includes a corporation, partnership, joint venture, proprietorship, firm, company, unincorporated association, individual, association of individuals, or any other such entity.

11.    "Specificity" shall mean precisely or particularly with respect to the qualities, characteristics, or effects of a particular person, place, thing, or event, including the who, what, where, when, why, and how of the particular person, place, thing, or event.

12.    "Statement" means any oral statement, dialogue, colloquy, discussion, conversation, and any transfer of thoughts or ideas between persons by means of documents, including any transfer of data from one location to another by electronic (including, but not limited to communications contained in email, instant messages, texting, blogs, Facebook, LinkedIn, Twitter, MySpace or any other methods of message delivery) or similar means.

13.    "You" (including "Your" and "Yours") and "Plaintiff" shall refer to the above named Plaintiff, Jonathan M. Weimar in all of his capacities, as well as his attorneys, insurers, agents, and representatives.

## RULES OF CONSTRUCTION

1.     Whenever the conjunction "and" is used, it is also to be interpreted disjunctively, and conversely, when the disjunctive "or" is used it is also to be interpreted conjunctively.

2.     The present tense of a verb includes past tense and vice versa, use of the singular includes the plural and vice versa, and use of the masculine gender includes the feminine and neutral genders and vice versa.

3.     Wherever appropriate in these requests, the singular form of a word shall be interpreted as plural.

4.     Wherever appropriate in these requests, the masculine form of a word shall be interpreted as feminine.

5.      "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests any information which might otherwise be construed to be outside their scope.

## INTERROGATORIES

**INTERROGATORY NO. 1:**     Identify   the   individual(s)   answering   these interrogatories, and each and every person who was consulted or relied upon, or otherwise constituted a source of information, in connection with the preparation of the answers to these interrogatories, identifying the specific answers on which assistance was given.

**ANSWER:**

**INTERROGATORY NO. 2:**     Identify each person you expect to call as an expert witness, or provide expert testimony on your behalf, and for each such person, state the subject matter on which he or she is expected to testify, the substance of the facts and opinions to which he or she is expected to testify, and a summary of the grounds for each opinion.

6

**ANSWER:**

**INTERROGATORY NO. 3:**        List all of your residence addresses for the past five (5) years and the length of time at each residence.

**ANSWER:**

**INTERROGATORY NO. 4:**        Please describe your educational background in reasonable detail, including the name and locale of all schools and trade or professional institutions attended, the dates of attendance at each, and any degrees, certificates, or licenses awarded.

**ANSWER:**

**INTERROGATORY NO. 5:**        For each of your employers for the last five (5) years, please provide the name and address of the employer, the nature of employment, and the length of employment.

**ANSWER:**

**INTERROGATORY NO. 6:**        List all automobile insurance policies, of any type, which have been issued to you by any insurer, including, but not limited to Defendant, in the past five (5) years. Include in your answer (a) the policy number; (b) the name of the insurer; (c) the type of policy; and (d) the name and address of the agent involved, if any, in the sale of the policy to you.

**ANSWER:**

**INTERROGATORY NO. 7:**        Please state whether you have been a party to a lawsuit, including a petition for bankruptcy, prior to or since the filing of your Complaint. If so, please identify the nature of each lawsuit and claims alleged by you or against you, the case styling and number, the court the lawsuit was brought in, and the result of each lawsuit.

7

**ANSWER:**

**INTERROGATORY NO. 8:**        Please state whether you have ever been arrested and/or charged with a misdemeanor or felony.  If so, please state the offense, the court in which the arrest(s) or charge(s) were filed, the case number, and the result of the proceeding.

**ANSWER:**

**INTERROGATORY NO. 9:**        If you have ever testified as a witness in any legal proceeding, including any civil, criminal, or administrative proceeding of any kind at the local, state, or federal level, with respect to each legal proceeding please state the style of the case, the case number, and the court in which the case was pending.

**ANSWER:**

**INTERROGATORY NO. 10:**        Identify and describe in specific detail each email, letter, and other item of correspondence between you and Defendant that reflect(s), refer(s), or relate(s) to any of the facts that support or form the basis of the Complaint.

**ANSWER:**

**INTERROGATORY NO. 11:**        Identify and describe in specific detail each telephone, in-person, or other oral conversation between you and Defendant that reflect(s), refer(s), or relate(s) to any of the facts that support or form the basis of the Complaint.

**ANSWER:**

**INTERROGATORY NO. 12:**        If you contend that any statement made by or on behalf of Defendant constitutes an admission or you intend to rely upon any such statement in support of your allegations in this case, fully describe the statement by: (a) identifying the individual who made the statement; (b) stating the date on which the statement was made; (c)

describing the substance of the statement in detail; (d) stating whether it was oral or in writing; and (e) identifying all persons who were present when the statement was made.

**ANSWER:**

**INTERROGATORY NO. 13:**        Identify  every  person  with  whom  you  have communicated about the subject matter of this case other than your attorney by identifying the person's name, describing the substance of the communication, stating when and where the communication took place, and identifying all documents that relate to it.

**ANSWER:**

**INTERROGATORY NO. 14:**        Identify  each  document  that  contains  information relevant to this case.

**ANSWER:**

**INTERROGATORY NO. 15:**        Please  identify  and  describe  with  specificity  all damages you claim are recoverable, whether under the common law or under a statute, including without limitation, pre-judgment interest and attorneys' fees, that you allege you have suffered as a result of any action or inaction on the part of Defendant.

**ANSWER:**

**INTERROGATORY NO. 16:**        Please  state  the  factual  basis  for  your  allegations contained in the following paragraphs of your Complaint: (9; 10; 11; 13; 14; 16; 17; 19; 20; 21; 23; 24; 31; 32; 33; 36; 57; 68).

**ANSWER:**

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**   Produce all documents that relate in any way to all allegations you raise within the Complaint, whether they form the factual basis for your allegations or not.

**RESPONSE:**

**REQUEST NO. 2:**   Produce all documents or other evidence supporting or relating to your claim that Geico violated Tennessee Code Annotated § 56-7-1201(c).

**RESPONSE:**

**REQUEST NO. 3:**   Produce all documents relating to any facts forming the basis of Plaintiff's alleged entitlement to damages or other relief of any kind that Plaintiff seeks through this lawsuit including, but not limited to, any damages calculations and the bases therefore.

**RESPONSE:**

**REQUEST NO. 4:**   Produce all documents relating to any facts forming the basis of Plaintiff's allegations that this Lawsuit is appropriately brought as a class action.

**RESPONSE:**

**REQUEST NO. 5:**   Produce all documents relating to or supporting any actual damages suffered by Plaintiff as a result of Geico's alleged violation of the Tennessee Code Annotated § 56-7-1201(c).

**RESPONSE:**

**REQUEST NO. 6:**   Produce all documents relating to or supporting Plaintiff's claim(s) against Geico for statutory damages for Geico's alleged violation of the Tennessee Code Annotated § 56-7-105.

**RESPONSE:**

**REQUEST NO. 7:**   Produce all documents related to any admission against interest you claim was made by or on behalf of Geico.

**RESPONSE:**

**REQUEST NO. 8:**   Produce all documents obtained by Plaintiff, or by any attorney or representative on Plaintiff's behalf, that relate to the allegations in the Complaint.

**RESPONSE:**

**REQUEST NO. 9:**   Produce all documents that relate in any way to each conversation or communication between you (or anyone acting on your behalf) and any current or former officer, director, employee, agent, or representative of Geico relating to the claims in the Complaint.

**RESPONSE:**

**REQUEST NO. 10:**   Produce all documents that relate in any way to communications you have had with Geico or any third party regarding the claim in your Complaint, including, but not limited to, communications regarding the formation and/or termination of any Insurance Agreement and any other communications regarding your relationship with Geico.

**RESPONSE:**

**REQUEST NO. 11:**   If you have ever testified in any legal proceeding, including any civil, criminal, or administrative proceeding of any kind at the local, state, or federal level, please provide any testimony of any kind provided by you, including but not limited to, deposition testimony, affidavits, or other sworn statements, that are not in the public domain.

**RESPONSE:**

**REQUEST NO. 12:**   Produce all correspondence exchanged between you and Geico, including, but not limited to, written communications and email exchanges.

**RESPONSE:**

**<u>REQUEST NO. 13</u>:**  Produce all documents related to any verbal communication between you and Geico.

**RESPONSE:**

**<u>REQUEST NO. 14</u>:**  Produce all non-privileged communications exchanged between you and any person or entity that reference or relate to the claims in this lawsuit.

**RESPONSE:**

**<u>REQUEST NO. 15</u>:**  Produce all statements, reports, tape recordings or memorandum obtained from any person that in any way pertains to any matters involving the allegations or defenses in this lawsuit.

**RESPONSE:**

**<u>REQUEST NO. 16</u>:**  Produce all non-privileged documents or tangible evidence which relate to the claims in your Complaint which you have received from any third party, including, but not limited to, past or present customers of Geico.

**RESPONSE:**

**<u>REQUEST NO. 17</u>:**  Produce each document that you or your attorney(s) may introduce into evidence or refer to at the trial of this matter, or that you or your attorney(s) may show to the court or the jury during voir dire, opening statement, closing argument, or at any other time during trial of this matter including, but not limited to, demonstrative aids, blow ups, charts and other tangible evidence.

**RESPONSE:**

**REQUEST NO. 18:**  Produce each document that may be relied upon by any witness called by Plaintiff or Plaintiff's attorney(s) to testify, or otherwise providing testimony, in this case.

**RESPONSE:**

**REQUEST NO. 19**:  Produce any and all materials or documents of any kind provided to and/or received from any expert witness Plaintiff intends to call as a witness at trial, including but not limited to documents, reports, curriculum vitae, tangible items, etc.

**RESPONSE:**

**REQUEST NO. 20**:  Produce a copy of any written reports, correspondence, charts, diagrams, photographs, videotapes, or other documents prepared by any expert witness whom Plaintiff intends to call to testify at trial.

**RESPONSE:**

**REQUEST NO. 21:**  Produce all correspondence, in any format, if any, exchanged between you and Marcus Parker.

**RESPONSE:**

**REQUEST NO. 22:**  Produce all documents or material supporting or relating to the allegation in paragraph 13 of your Complaint that "Geico has adopted a detailed policy and procedure for investigating and validating or rejecting claims."

**RESPONSE:**

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage
Insurance Company*


# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Monday, August 13, 2018 to the following:


Frank L. Watson (TN # 15073)
Watson Burns, PLLC
253 Adams Ave.
Memphis, TN 38104
Phone: (901) 529-7996
*Attorney for Plaintiff*

Malcom B. Futhey, III (TN # 24432)
Futhey Law Firm, PLC
1440 Poplar Ave.
Memphis, TN 38104
Phone: (901) 725-7585
*Attorney for Plaintiff*


Mitchell S. Ashkenaz

14

ELECTRONICALLY FILED
2018 Sep 18 10:18 AM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities<br><br>PLAINTIFFS,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation<br><br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)  No. CH-18-0976 Part III<br>)<br>)  JURY DEMANDED<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S FIRST REQUESTS FOR ADMISSIONS

Pursuant to Rules 26 and 36 of the Tennessee Rules of Civil Procedure, GEICO Advantage Insurance Company ("GEICO" or "Defendant") requests that the Jonathan H. Weimar, ("Plaintiff") admit or deny the truth of the following relevant matters of fact and that answers be served on Defendant within thirty (30) days:

### INSTRUCTIONS

These Requests for Admissions are made pursuant to Rules 26 and 36 of the Tennessee Rules of Civil Procedure, and each of the matters for which an admission is requested shall be deemed admitted unless, within 30 days after service hereof, Plaintiff delivers or causes to be delivered to Defendant, or the undersigned attorney of record for Defendant, a sworn statement either denying specifically each matter of which an admission is requested or stating in detail the reasons why the Plaintiff cannot truthfully admit or deny such matter.

## REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:**   Admit that, contrary to the allegations plead in Paragraph 9 of Plaintiff's Complaint, GEICO does not have a policy or practice providing that: when a GEICO policyholder with uninsured motorist coverage submits an uninsured motorist claim to GEICO, GEICO conducts an investigation in order to verify the uninsured motorist claim, which includes obtaining the accident report, any applicable statements from witnesses, identification of the other driver involved in the collision and verification of his status as an uninsured driver, upon completion of which and, after determining that an identifiable, uninsured driver caused its policyholder damages, GEICO imposes a $200 deductible on its insured when paying out its uninsured motorist benefits.

**RESPONSE:**

**REQUEST NO. 2:**   Admit that, contrary to the allegations plead in Paragraph 10 of Plaintiff's Complaint, GEICO does not have a policy or practice providing that: when a GEICO policyholder with uninsured motorist coverage submits an uninsured motorist claim to GEICO, GEICO conducts an investigation, upon completion of which and, after determining that an identifiable, uninsured driver caused its policyholder damages, GEICO imposes a $200 deductible on its insured when paying out its uninsured motorist benefits and then informs each policyholder making a valid uninsured motorist claim that it will pursue collection against the uninsured driver for the $200 deductible that the policyholder has incurred (as well as the amount of the uninsured motorist benefits paid out by GEICO) and that if GEICO ever collects these funds from the uninsured motorist, GEICO will reimburse the $200 deductible to its policyholder at that time.

**RESPONSE:**

**REQUEST NO. 3:**   Admit that, contrary to the allegations plead in Paragraph 11 of Plaintiff's Complaint, GEICO does not have a policy or practice providing that: when a GEICO policyholder with uninsured motorist coverage submits an uninsured motorist claim to GEICO, GEICO conducts an investigation, upon completion of which and, after determining that an identifiable, uninsured driver caused its policyholder damages, GEICO imposes a $200 deductible on its insured when paying out its uninsured motorist benefits and then pursues collection against the uninsured driver for the $200 deductible that the policyholder has incurred (as well as the amount of the uninsured motorist benefits paid out by GEICO) and, when collection is successful, reimburses the $200 deductible to its policyholder but never compensates the policyholder for lost interest or for wrongfully applying a deductible.

**RESPONSE:**

**REQUEST NO. 4:**   Admit that, contrary to the allegations plead in Paragraph 17 of Plaintiff's Complaint, with respect to each auto accident claim that it receives from its Tennessee auto policyholders, GEICO has not adopted a detailed policy and procedure for investigating and validating or rejecting each claim whereby: GEICO makes a Determination and, at the time that it makes the Determination and pays out uninsured motorist benefits, GEICO applies a $200 deductible at the outset of the uninsured motorist coverage payment.

**RESPONSE:**

**REQUEST NO. 5:**   Admit that, contrary to the allegations plead in Paragraph 19 of Plaintiff's Complaint, GEICO does not have a pattern and practice of sending collection letters (as the subrogee of its uninsured motorist claimants) informing the uninsured motorists that they are at fault for the full amount of the damages paid out by GEICO (including the deductible imposed upon the GEICO policyholders) and demanding payment for same.

3

**RESPONSE:**

**REQUEST NO. 6:**   Admit that, contrary to the allegations plead in Paragraph 20 of Plaintiff's Complaint, GEICO, when acting as subrogee, does not engage in the policy and practice of filing suits against the at-fault uninsured motorists, seeking to collect the full amount of the damages paid out by GEICO (including the deductible imposed upon the GEICO policyholders) and demanding payment for same.

**RESPONSE:**

**REQUEST NO. 7:**   Admit that, contrary to the allegations plead in Paragraph 21 of Plaintiff's Complaint, GEICO does not consistently file in each General Session lawsuit an Affidavit which is duly executed by an agent of GEICO, and which recites that GEICO has paid certain amounts out in connection with an uninsured motorist claim of GEICO's policyholder and that the defendant uninsured motorist is obligated for the full amount paid by GEICO (including the deductible incurred by GEICO's insured).

**RESPONSE:**

**REQUEST NO. 8:**   Admit that, contrary to the allegations plead in Paragraph 23 of Plaintiff's Complaint, it is false that: a vast majority of the time GEICO's policyholders who have made valid uninsured motorist claims have never been reimbursed the deductible imposed by GEICO.

**RESPONSE:**

**REQUEST NO. 9:**   Admit that, contrary to the allegations plead in Paragraph 24 of Plaintiff's Complaint, it is false that: few GEICO policyholders who have made valid uninsured motorist claims are reimbursed all or a portion of their deductible.

**RESPONSE:**

4

**REQUEST NO. 10:**  Admit that, contrary to the allegations plead in Paragraph 31 of Plaintiff's Complaint, it is false that: many Tennessee GEICO policyholders, who have made claims for uninsured motorist benefits, are informed that the other driver was uninsured and that GEICO would tender its subrogation amount and the policyholder's deductible to a collection agency and/or attorney for collections of these amounts from the uninsured driver and, only if sufficient funds were ever collected from the uninsured driver, would the policyholder be reimbursed for this deductible.

**RESPONSE:**

**REQUEST NO. 11:**  Admit that, contrary to the allegations plead in Paragraph 36 of Plaintiff's Complaint, it is false that: thousands of Tennessee policyholders have made timely and valid uninsured motorist claims to GEICO, and GEICO has unlawfully imposed a $200 deductible.

**RESPONSE:**

**REQUEST NO. 12:**  Admit that since April 2014, Plaintiff's counsel has had a page on its website inviting consumers who have been involved in an accident with an uninsured motorist and were "charged a deductible" to contact the firm.

**RESPONSE:**

**REQUEST NO. 13:**  Admit that even though the online invitation referenced in Request No. 15 has been on Plaintiff's counsel's website for over four years, this cause of action represents the only claim ever made against GEICO by Plaintiff's counsel relating to uninsured motorist deductibles.

**RESPONSE:**

**REQUEST NO. 14:**  Admit that the allegations in the complaint claiming that GEICO has a policy and/or practice of violating the law with respect to its handling of uninsured motorist deductibles have no evidentiary support.

**RESPONSE:**

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant GEICO Advantage
Insurance Company*

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Monday, September 17, 2018 to the following:

Frank L. Watson (TN # 15073)          Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                    Futhey Law Firm, PLC
253 Adams Ave.                        1440 Poplar Ave.
Memphis, TN 38104                     Memphis, TN 38104
Phone: (901) 529-7996                 Phone: (901) 725-7585
*Attorney for Plaintiff*              *Attorney for Plaintiff*

_____
Mitchell S. Ashkenaz

7

ELECTRONICALLY FILED
2018 Sep 18 10:18 AM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities<br><br>PLAINTIFFS,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation<br><br><br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)  No. CH-18-0976-3<br>)<br>)  JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

Defendant Geico Advantage insurance Company ("Geico" or "Defendant"), pursuant to Rules 26 and 34 of the Tennessee Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Requests for Production of Documents to Defendant as follows:

## PRELIMINARY STATEMENT

To the extent that any Request requires Geico to review document(s) or gather information in order to provide a response, Geico has attempted to collect and review such documents and gather such information from those document(s) and materials that are reasonably available to Geico in the ordinary course of business. Geico further objects to the production of any information or documents from third parties.

Geico objects to any duties or obligations purportedly imposed by these Requests that are not required by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

1

Geico objects to the Definitions and Instructions of Plaintiff's First Set of Requests for Production of Documents upon the grounds that said definitions and instructions seek to place a burden upon Geico that exceeds the scope of discovery allowed under the Tennessee Rules of Civil Procedure. Geico will respond to said Requests for Production within its obligations as set forth by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

By submitting these responses, Geico does not in any way adopt Plaintiff's purported definition of words and phrases contained in Plaintiff's discovery. To the extent Plaintiff ascribed special meanings or definitions to words used in its discovery requests, Geico declines to accept those specialized meanings and definitions and interprets all words contained in the discovery requests in accordance with their ordinary and customary meanings. Geico objects to those definitions to the extent that they are inconsistent with either (a) the definitions set forth in Geico's responses, or (b) the ordinary and customary meanings of such words and phrases. Likewise, Geico objects to Plaintiff's purported definitions to the extent that they purport to impose upon Geico any obligation broader than, or inconsistent with, applicable discovery rules or common law.

Geico's responses are made specifically subject to any specific objections contained within an individual response. According to the information reasonably available to Geico in the ordinary course of business at this time, these responses are complete and correct to the best of its knowledge, information, and belief. As discovery is ongoing in this matter, Geico specifically reserves the right to supplement and/or amend the responses provided herein. Geico reserves the right to object to future discovery on the same or related matters, and does not waive any objection or defense by providing the information or documents reflected in these responses.

2

Geico further reserves the right to object to the admissibility of any of these responses or related matters, in whole or in part, at the trial of this action, on any grounds, including, but not limited to materiality, relevance, and privilege.

## GENERAL OBJECTIONS

The following general objections apply to each of the Requests and are incorporated by reference in each of Geico specific responses thereto:

1.      Geico objects to every Request that purports to impose obligations on Geico beyond the requirements of Tenn. R. Civ. P. 26 and 34, which will govern Geico's responses.

2.      Geico objects to the Requests to the extent they seek materials prepared in anticipation of litigation, or which contain or reflect or call for the disclosure of the mental impressions, conclusions, opinions or legal theories of any attorney for Geico, or any other information protected by the Tennessee Rules of Civil Procedure.

3.      Geico objects to the Requests to the extent they seek information protected from discovery under the attorney-client privilege, the work product doctrine, the accountant-client privilege, or any other privilege recognized under the law.  Geico will not produce such information.

4.      Geico objects to the Requests to the extent they seek trade secrets or other confidential or proprietary research, development, commercial, or business information.  Geico will produce such information, if requested and not otherwise objectionable, only after entry of a suitable protective order.

5.      Geico objects to the Requests to the extent they call for identification or production of information that is a matter of public record and is equally available to the requesting party.

6.     In responding, Geico does not concede that any Requests to which Geico responds is relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.  Geico reserves both the right to object to further discovery into the subject matter of these Requests and the right to object to introduction into evidence of responses to these Requests.  Geico also reserves the right to question the authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information provided and the documents identified and/or produced in response to these Requests, which may arise in any subsequent proceeding in, or the trial of, this or any other action.

7.     Geico reserves the right to amend, supplement, or revise its responses as necessary up to and including the time of trial.

8.     Geico objects to the instructions provided with the Requests to the extent that they purport to be directed not only to Geico, but also to other individuals and entities that are separate and distinct from Geico.

9.     Geico objects to the definitions of the terms "you," "your," "Defendant," and "Geico" contained in the Requests to the extent that the definitions incorporate individuals and entities that are separate and distinct from Geico Advantage Insurance Company.

10.    In responding to the Requests, Geico states that it has conducted a diligent search, reasonable in scope, of those files and records in Geico's possession or control believed to be the most likely to contain information responsive to the Requests and has solicited relevant information from those individuals employed or otherwise affiliated with Geico believed to be the most likely to have information responsive to the Requests.  Geico has not, however, undertaken to search or review all of the files and records in Geico's possession, custody or control, nor has Geico solicited documents from every individual employed by or otherwise

4

affiliated with Geico, because to do so would be unduly burdensome and expensive.   In the event, therefore, that further information, documents, records, or files responsive to any of the Requests are identified or brought to Geico's attention, Geico reserves the right to amend or supplement these responses.

Subject to and without waiving the foregoing, Geico responds to Plaintiff's Requests for Production as follows:

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:   Please produce all documents (including emails, audio and/or visual recordings and statements) concerning, referring or relating to the Plaintiff.**

**RESPONSE:** Geico objects to this Request to the extent it seeks information and/or documents protected by the attorney-client privilege and/or the work product doctrine.   Subject to and without waiving the foregoing objections, Geico will produce all non-confidential documents responsive to this Request and will produce any remaining documents upon entry of an agreed upon Protective Order.

**REQUEST NO. 2:   For the relevant time period, please produce any and all Claim Examiner guidelines, policy manuals, training manuals, bulletins and other documents which set forth the steps that GEICO Claim Examiners must follow when investigating and/or adjusting First Party Claims that fall or may fall within Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Geico objects to this Request because it is not limited to the state of Tennessee.   Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.   Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

5

**REQUEST NO. 3:**   For the relevant time period, please produce any and all Liability Examiner guidelines, policy manuals, training manuals, bulletins and other documents which set forth the steps that GEICO Liability Examiners must follow when investigating and/or adjusting First Party Claims that fall or may fall within Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Geico objects to this Request because it is not limited to the state of Tennessee.   Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.   Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 4:**   For the relevant time period, please produce any and all Payment Recovery Examiner guidelines, policy manuals, training manuals, bulletins and other documents that set forth the steps that GEICO Payment Recovery Examiners must follow when seeking recovery of payments (and Deductibles) made under Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Geico objects to this Request because it is not limited to the state of Tennessee.   Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.   Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 5:**   For the relevant time period, please produce any and all guidelines, policy manuals, training manuals and bulletins concerning, referring or relating to "How GEICO Investigates Your Insurance Claim" as found on GEICO's website at https://www.geico.claims/claimsprocess/claim-investigation/.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Geico objects to this Request because it is not limited to the state of Tennessee.   Geico also objects to this Request to

6

the extent it seeks confidential and proprietary information and/or information protected as trade secret.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 6:**  **For the relevant time period, please produce any and all guidelines, policy manuals, training manuals and bulletins concerning, referring or relating to "Find Out About Payment Recovery for Car Accidents" as found on GEICO's website at https://www.geico.claims/claimsprocess/payment-recovery/.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Geico objects to this Request because it is not limited to the state of Tennessee.  Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 7:**  **For the relevant time period, please produce any and all collection letters and other documents sent or furnished to any Uninsured Person in connection with GEICO's Payment Recovery efforts for payments made and/or Deductibles incurred under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:**  Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage.  Geico also objects to this Request as seeking documents and information in the possession of third parties.  This request is further objectionable to the extent it is not limited to the state of Tennessee.  Subject to

7

and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 8:**   **For the relevant time period, please produce any and all Subrogation lawsuits filed by you in connection with GEICO's Payment Recovery efforts for payments made, and/or Deductibles, incurred under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:**   At the outset, Geico objects to this request as ambiguous and vague because Geico cannot produce a "Subrogation lawsuit."  To the extent this Request seeks court filings related to lawsuits, Geico objects to this Request as seeking publicly available documents that are equally available from third parties.  Geico also objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage.  This request is further objectionable to the extent it is not limited to the state of Tennessee.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 9:**   **For the relevant time period, please produce any and all affidavits, declarations and/or sworn statements given or signed by you in connection with GEICO's Payment Recovery efforts for payments made, and/or Deductibles incurred, under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given

8

that Plaintiff is the only alleged representative class member at this point in time.  Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage.  This request is further objectionable to the extent it is not limited to the state of Tennessee.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 10:** **For the relevant time period, please produce any and all nonprivileged documents concerning, referring or relating to TENNESSEE CODE ANNOTATED § 56-7-1201(c).**

**RESPONSE**: Geico objects to this Request because it seeks to encroach upon the attorney work product doctrine.  Even though the Request seeks "nonprivileged documents," any document interpreting or advising upon application of Tennessee statutory law and drafted by Geico's counsel are protected by the attorney work product doctrine.  Subject to and without waiving the foregoing objections, to the extent this Request seeks policies, guidelines, or other corporate documents, Geico refers Plaintiff to Geico's Responses to Request No. 2.

Geico further objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Subject to and without waiving the foregoing objections, to the extent this Request seeks documents related to insured claims files, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 11**: For the relevant time period, please produce any and all documents related to First Party Claims made under an Insured's Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 12**: For the relevant time period, please produce any and all documents related to the application of any Deductible by you to any First Party Claims made under an Insured's Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without

waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 14 [*sic*]:** **For the relevant time period, please produce the CLUE Report for each Insured to whom any Deductible was applied by you with respect to First Party Claims made under the Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage Insurance Company*

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Monday, September 17, 2018 to the following:

Frank L. Watson (TN # 15073)          Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                    Futhey Law Firm, PLC
253 Adams Ave.                        1440 Poplar Ave.
Memphis, TN 38104                     Memphis, TN 38104
Phone: (901) 529-7996                 Phone: (901) 725-7585
*Attorney for Plaintiff*              *Attorney for Plaintiff*

Mitchell S. Ashkenaz

ELECTRONICALLY FILED
2018 Sep 18 10:18 AM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities | ) ) ) ) |
| PLAINTIFFS, | ) ) |
| v. | ) No. CH-18-0976-3 ) ) JURY DEMANDED |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) ) ) |
| DEFENDANT. | ) ) ) |

### DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Geico Advantage insurance Company ("Geico" or "Defendant"), pursuant to Rules 26 and 33 of the Tennessee Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### PRELIMINARY STATEMENT

To the extent that any interrogatory requires Geico to review document(s) or gather information in order to provide a response, Geico has attempted to collect and review such documents and gather such information from those document(s) and materials that are reasonably available to Geico in the ordinary course of business. Geico further objects to the production of any information or documents from third parties.

Geico objects to any duties or obligations purportedly imposed by these interrogatories that are not required by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District. Geico objects to the

1

Definitions and Instructions of Plaintiff's First Set of Interrogatories upon the grounds that said definitions and instructions seek to place a burden upon Geico that exceeds the scope of discovery allowed under the Tennessee Rules of Civil Procedure. Geico will respond to said Interrogatories within its obligations as set forth by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

By submitting these responses, Geico does not in any way adopt Plaintiff's purported definition of words and phrases contained in Plaintiff's discovery. To the extent Plaintiff ascribed special meanings or definitions to words used in its discovery requests, Geico declines to accept those specialized meaning and definitions and interprets all words contained in the discovery requests in accordance with their ordinary and customary meanings. Geico objects to those definitions to the extent that they are inconsistent with either (a) the definitions set forth in Geico's responses, or (b) the ordinary and customary meanings of such words and phrases. Likewise, Geico objects to Plaintiff's purported definitions to the extent that they purport to impose upon Geico any obligation broader than, or inconsistent with, applicable discovery rules or common law.

Geico responses are made specifically subject to any specific objections contained within an individual response. Where appropriate, in response to certain Interrogatories pursuant to Rule 33.03 of the Tennessee Rules of Civil Procedure, Geico will produce responsive documents to the extent such documents exist and can be located after a reasonable search.

According to the information reasonably available to Geico in the ordinary course of business at this time, these responses are complete and correct to the best of its knowledge, information, and belief. As discovery is ongoing in this matter, Geico specifically reserves the right to supplement and/or amend the responses provided herein. Geico reserves the right to

object to future discovery on the same or related matters, and does not waive any objection or defense by providing the information or documents reflected in these responses.  Geico further reserves the right to object to the admissibility of any of these responses or related matters, in whole or in part, at the trial of this action, on any grounds, including, but not limited to materiality, relevance, and privilege.

## GENERAL OBJECTIONS

The following general objections apply to each of the Interrogatories and are incorporated by reference in each of Geico specific responses thereto:

1.      Geico objects to every Interrogatory that purports to impose obligations on Geico beyond the requirements of Tenn. R. Civ. P. 26 and 33, which will govern Geico's responses.

2.      Geico objects to the Interrogatories to the extent they seek materials prepared in anticipation of litigation, or which contain or reflect or call for the disclosure of the mental impressions, conclusions, opinions or legal theories of any attorney for Geico, or any other information protected by the Tennessee Rules of Civil Procedure.

3.      Geico objects to the Interrogatories to the extent they seek information protected from discovery under the attorney-client privilege, the work product doctrine, the accountant-client privilege, or any other privilege recognized under the law.  Geico will not produce such information.

4.      Geico objects to the Interrogatories to the extent they seek trade secrets or other confidential or proprietary research, development, commercial, or business information.  Geico will produce such information, if requested and not otherwise objectionable, only after entry of a suitable protective order.

5.      Geico objects to the Interrogatories to the extent they call for identification or

3

production of information that is a matter of public record and is equally available to the requesting party.

6.      In responding, Geico does not concede that any Interrogatory to which Geico responds is relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.  Geico reserves both the right to object to further discovery into the subject matter of these Interrogatories and the right to object to introduction into evidence of responses to these Interrogatories.  Geico also reserves the right to question the authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information provided and the documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or the trial of, this or any other action.

7.      Geico reserves the right to amend, supplement, or revise its responses as necessary up to and including the time of trial.

8.      Geico objects to the instructions provided with the Interrogatories to the extent that they purport to be directed not only to Geico, but also to other individuals and entities that are separate and distinct from Geico.

9.      Geico objects to the definitions of the terms "you," "your," "Defendant," and "Geico" contained in the Interrogatories to the extent that the definitions incorporate individuals and entities that are separate and distinct from Geico Advantage Insurance Company.

10.      In responding to the Interrogatories, Geico states that it has conducted a diligent search, reasonable in scope, of those files and records in Geico's possession or control believed to be the most likely to contain information responsive to the Interrogatories and has solicited relevant information from those individuals employed or otherwise affiliated with Geico

4

believed to be the most likely to have information responsive to the Interrogatories. Geico has

not, however, undertaken to search or review all of the files and records in Geico's possession,

custody or control, nor has Geico solicited documents from every individual employed by or

otherwise affiliated with Geico, because to do so would be unduly burdensome and expensive.

In the event, therefore, that further information, documents, records, or files responsive to any of

the Interrogatories are identified or brought to Geico's attention, Geico reserves the right to

amend or supplement these responses.

Subject to and without waiving the foregoing, Geico responds to Plaintiff's First Set of

Interrogatories as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1: Identify the name, address, position and/or title of each
and every person that searched for, gathered and/or assisted in searching for and/or
gathering any and all information provided in response to these Interrogatories and
documents produced in response to Plaintiff's First Requests for Production of Documents.**

**ANSWER:** Geico objects to this Interrogatory as overbroad and unduly burdensome.

Defendant states that undersigned counsel, lawyers in the home office legal department for Geico

Advantage Insurance Company, and Jessica Nichols, Claims Training Manager with Geico, and

David Antonacci, Technical Supervisor III with Geico, were involved in the preparation of these

Responses. These individuals may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 2: Identify each and every person whom GEICO
contends has any knowledge of any facts relative to any aspect of the claims made in this
litigation and/or any potential defense(s) asserted thereto, specifically describing the
potential knowledge each person(s) possesses.**

**RESPONSE:** Geico objects to this Interrogatory as overbroad, unduly burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence because documents and

information not related to Plaintiff's individual claims are premature and not discoverable given

5

that Plaintiff is the only alleged representative class member at this point in time.  Geico objects

to any discovery relating to any policyholder other than Plaintiff.  Geico also objects to this

Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or

the attorney work production doctrine.  Subject to and without waiving the foregoing objections,

Geico responds that the following individuals may have knowledge relative to Plaintiff's claim:

- Meridythe Benjamin, Claims Service Representative
- Kristian Adams, Claims Service Representative
- Cole Phelps, Resident Adjuster II
- Alexis Coleman, Claims Service Representative
- Yentl Simmons, Salvage Representative II
- Suzanna Saldivar, Salvage Representative II
- Amy Dixon, Coverage Underwriter
- Peyton Pickett, Salvage Adjuster
- Shelby Keating, Claims Service Representative
- Lesha Slaughter, Salvage Representative II
- Suellen SparksSalvage Representative II
- Shameika Ross, Salvage Representative II
- Megan Livingston, Claims Service Representative
- Elizabeth Curry, Salvage Representative I
- William Sherman, Claims Service Representative
- Sylvia Beale, Uninsured Motorist Payment Recovery
- Kina Waters, Salvage Representative I
- Alyssa Meeks, Salvage Representative I
- Beverly Gavin, Coverage Underwriter
- Kia Glover, Salvage Representative II
- Yvonne Anderson, Uninsured Motorist Payment Recovery

Geico employees or agents may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 3: Identify and describe (by year) the total number of Uninsured Motorist Coverage insurance policies issued or delivered by GEICO in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence because documents and

information not related to Plaintiff's individual claims are premature and not discoverable given

that Plaintiff is the only alleged representative class member at this point in time.  Geico objects

6

to any discovery relating to any policyholder other than Plaintiff. Geico objects to this Interrogatory to the extent that it seeks information about individuals and entities that are separate and distinct from Geico Advantage Insurance Company. Geico also objects to this Interrogatory because it seeks confidential and proprietary information. Geico further objects to this Interrogatory because Geico does not issue stand-alone uninsured motorist coverage insurance policies; rather, Geico provides uninsured motorist coverage as part of an insured's automobile insurance policy. Subject to and without waiving the foregoing objections, Geico will provide an Answer to this Interrogatory upon entry of an agreed Protective Order.

**INTERROGATORY NO. 4: Identify and describe (by year) the total number of claims that were made by GEICO Insured(s) that involved accidents with Uninsured Persons in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 5: Of the claims identified in response to Interrogatory No. 4 above, identify and describe (by year) how many and which of these accidents were determined by GEICO's Liability Investigation to be the fault of the Uninsured Person and not the Insured.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents

7

or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 6: Of the claims identified in response to Interrogatory No. 4 above, identify and describe all Uninsured Persons that GEICO sought to collect money (whether by letter, telephone call, collection agency or litigation) from during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 7: Identify and describe all those Uninsured Persons from whom GEICO sought to collect money (whether by letter, telephone call, collection agency, or litigation) during the relevant time period regardless of how GEICO internally classified the claim (meaning, regardless of whether GEICO classified the claim as one failing within collision coverage, comprehensive coverage or Uninsured Motorist Coverage).**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents

8

or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 8: Identify by case style, docket number and the judicial district all lawsuits filed in the State of Tennessee during the relevant time period against Uninsured Persons seeking to collect or recovery any money paid out and/or a Deductible incurred) related to any claim falling under Uninsured Motorist Coverage).**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.   Geico also objects to this Interrogatory as seeking publicly available information that is equally available from third parties.

**INTERROGATORY NO. 9: Identify each and every Insured to whom a Deductible was applied by GEICO related to a claim with an Uninsured Person, and please state the amount, if any, of any Deductible applied by you and the date you applied said Deductible.**

**RESPONSE**: Although it is Geico's policy and practice to comply with the handling of deductibles as set out in any insurance policy or as required under state law, Geico objects to this

Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 10:** For each Insured identified in Interrogatory No. 9 above, please identify and state whether you ever reimbursed any Deductible back to each Insured(s) and the date that you did so.

**RESPONSE**: Although it is Geico's policy and practice to comply with the handling of deductibles as set out in any insurance policy or as required under state law, Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 11:** For the relevant time period, identify each and every **Uninsured Person from whom GEICO sought Subrogation in connection with any**

payments made and/or Deductibles incurred under an Insured's Uninsured Motorist Coverage.

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 12:** For the each Uninsured Person identified in Interrogatory No. 11 above, please state the total amount, if any, that GEICO collected from each Uninsured Person and the date or dates each amount was collected.

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 13:** Identify each and every Claim Examiner, Liability Examiner and Payment Recovery Examiner that in any way dealt with or were related to Plaintiff's claims made under his Uninsured Motorist Coverage.

11

**RESPONSE:** Geico responds that the following individuals may have dealt with Plaintiff's claims made under his Uninsured Motorist Coverage:

- Meridythe Benjamin, Claims Service Representative
- Kristian Adams, Claims Service Representative
- Cole Phelps, Resident Adjuster II
- Alexis Coleman, Claims Service Representative
- Yentl Simmons, Salvage Representative II
- Suzanna Saldivar, Salvage Representative II
- Amy Dixon, Coverage Underwriter
- Peyton Pickett, Salvage Adjuster
- Shelby Keating, Claims Service Representative
- Lesha Slaughter, Salvage Representative II
- Suellen SparksSalvage Representative II
- Shameika Ross, Salvage Representative II
- Megan Livingston, Claims Service Representative
- Elizabeth Curry, Salvage Representative I
- William Sherman, Claims Service Representative
- Sylvia Beale, Uninsured Motorist Payment Recovery
- Kina Waters, Salvage Representative I
- Alyssa Meeks, Salvage Representative I
- Beverly Gavin, Coverage Underwriter
- Kia Glover, Salvage Representative II
- Yvonne Anderson, Uninsured Motorist Payment Recovery

Geico employees or agents may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 14: Identify all Claim Examiners, Liability Examiners who dealt with or were related to any claims made under any Insured's Uninsured Motorist Coverage in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because Geico operates a nationwide business and

12

is structured such that an examiner in any part of the country may service a call from a Tennessee insured.

## VERIFICATION OF INTERROGATORY RESPONSES

Jessica Nichols, as the authorized representative of Geico Advantage Insurance Company verifies that the statements in the foregoing are made based on her personal knowledge along with the assistance and advice of counsel and the assistance of employees and representatives of Geico Advantage Insurance Company; that/she has relied upon information provided by these third parties which she has reason to believe is true and correct; that the answers set forth herein are subject to inadvertent or undiscovered errors; that consequently Geico Advantage Insurance Company reserves the right to make any changes in the answers if it appears that at any time omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said answers are true to the best of her knowledge, information, and belief.

_____
Jessica Nichols, Claims Training Manager

SWORN AND SUBSCRIBED before me this _18_ day of _September_, 2018.



Holly Huffman Coghill
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #266781
My Commission Expires
January 31, 2021

_____
NOTARY PUBLIC

My commission expires: _1-31-2021_____

14

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage*
*Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Tuesday, September 18, 2018 to the following:

| | |
|---|---|
| Frank L. Watson (TN # 15073) | Malcom B. Futhey, III (TN # 24432) |
| Watson Burns, PLLC | Futhey Law Firm, PLC |
| 253 Adams Ave. | 1440 Poplar Ave. |
| Memphis, TN 38104 | Memphis, TN 38104 |
| Phone: (901) 529-7996 | Phone: (901) 725-7585 |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |

Mitchell S. Ashkenaz

15

ELECTRONICALLY FILED
2018 Sep 20 5:40 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| PLAINTIFFS, | |
| v. | |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | |
| DEFENDANTS. | |

**Case No. CH-18-0976 Part III**

**(Hon. Chancellor JoeDae Jenkins)**

---

### PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO WRITTEN DISCOVERY OF DEFENDANT GEICO ADVANTAGE INSURANCE COMPANY

Comes now Plaintiff Jonathan H. Weimar, on behalf of himself and all similarly situated persons and entities ("Plaintiff"), by and through his undersigned counsel of record, and hereby moves this Court for an extension of time for Plaintiff to respond to the written discovery of Defendant GEICO Advantage Insurance Company ("GEICO"). In support of this Motion, Plaintiff further states as follows:

1.    On June 29, 2018, Plaintiff initiated this action by filing his Class Action Complaint asserting claims against GEICO for violations of TENN. CODE ANN. § 56-7-105 and Tennessee Common Law and seeking a Declaratory Judgment pursuant to TENN. CODE ANN. § 29-14-103 and 104.

2.    Plaintiff, on behalf of himself and the putative class, seeks recovery from GEICO in order to remedy GEICO's unlawful actions in causing Tennessee insured persons and entities to pay or incur an unlawful deductible in connection with GEICO's payment of uninsured motorist benefits.  (Complaint ¶ 1).

3.    On July 18, 2018, Plaintiff served his First Requests for Production of Documents and Interrogatories to GEICO.

4.    Thereafter, Plaintiff provided GEICO with the courtesy of a thirty-day extension to respond to the Requests and Interrogatories.

5.    On August 13, 2018, GEICO served its First Set of Interrogatories and Requests for Production on Plaintiff.

6.    Thereafter, on September 17, 2018, GEICO served its First Requests for Admissions on Plaintiff.

7.    Plaintiff respectfully requests an extension of thirty days from the date of this filing, up to, through, and including, Monday, October 22, 2018, to respond to GEICO's First Set of Interrogatories and Requests for Production and to GEICO's First Requests for Admissions.

8.    Plaintiff submits that good cause exists here for the requested extension. Professional and personal scheduling conflicts for both counsel and Plaintiff Jonathan H. Weimar prevent Plaintiff from adequately responding to GEICO's First Set of Interrogatories

and Requests for Production and to GEICO's First Requests for Admissions prior to Monday, October 22, 2018.

      9.     GEICO, through counsel, does not consent to the requested extension.

      WHEREFORE, PREMISES CONSIDERED, Plaintiff Jonathan H. Weimar, on behalf of himself and all similarly situated persons and entities, respectfully requests that this Court grant this Motion in its entirety and extend the time for Plaintiff to respond to GEICO's First Set of Interrogatories and Requests for Production and to GEICO's First Requests for Admissions up to, through, and including Monday, October 22, 2018.

      Respectfully submitted,

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwatson@watsonburns.com
Email: bburns@watsonburns.com

Malcolm B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com

*Counsel for Plaintiff Jonathan H. Weimar, and the absent Class Members*

## CERTIFICATE OF CONSULTATION

I hereby certify that counsel for Plaintiff, Frank L. Watson, III and William E. Routt, consulted with counsel for Defendant, George T. Lewis and Mitchell S. Ashkenaz, on September 20, 2018.  Defendant opposes the relief requested herein.

William E. Routt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email and/or U.S. Mail, postage prepaid, this 20th day of September 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
Mitchell S. Ashkenaz (Tenn. Bar No. 34129)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage
Insurance Company*

William E. Routt

ELECTRONICALLY FILED
2018 Sep 20 5:38 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) ) **Case No. CH-18-0976 Part III** **(Hon. Chancellor JoeDae Jenkins)** |
| PLAINTIFFS, | ) ) ) ) ) |
| v. | ) ) ) ) ) ) ) |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) ) |

## NOTICE OF APPEARANCE OF WILLIAM E. ROUTT AS COUNSEL ON BEHALF OF PLAINTIFF JONATHAN H. WEIMAR, ON BEHALF OF HIMSELF AND ALL SIMILARLY SITUATED PERSONS AND ENTITIES

COMES NOW William E. Routt of the law firm of Watson Burns, PLLC and hereby files this Notice of Appearance as Counsel in this action on behalf of Plaintiff Jonathan H. Weimar, on behalf of himself and all similarly situated persons and entities.

Respectfully submitted,

_____
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Malcolm B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com


*Counsel for Plaintiff Jonathan H. Weimar, and the
absent Class Members*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email and/or U.S. Mail, postage prepaid, this 20th day of September 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
Mitchell S. Ashkenaz (Tenn. Bar No. 34129)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage
Insurance Company*

William E. Routt

3

ELECTRONICALLY FILED
2018 Sep 25 4:20 PM
CLERK OF COURT

# EXHIBIT B

ELECTRONICALLY FILED
2018 Sep 18 10:18 AM
CLERK OF COURT

**IN THE CHANCERY COURT OF TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities<br><br>PLAINTIFFS,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation<br><br><br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>) No. CH-18-0976-3<br>)<br>) JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Geico Advantage insurance Company ("Geico" or "Defendant"), pursuant to Rules 26 and 33 of the Tennessee Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

To the extent that any interrogatory requires Geico to review document(s) or gather information in order to provide a response, Geico has attempted to collect and review such documents and gather such information from those document(s) and materials that are reasonably available to Geico in the ordinary course of business. Geico further objects to the production of any information or documents from third parties.

Geico objects to any duties or obligations purportedly imposed by these interrogatories that are not required by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District. Geico objects to the

1

Definitions and Instructions of Plaintiff's First Set of Interrogatories upon the grounds that said definitions and instructions seek to place a burden upon Geico that exceeds the scope of discovery allowed under the Tennessee Rules of Civil Procedure. Geico will respond to said Interrogatories within its obligations as set forth by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

By submitting these responses, Geico does not in any way adopt Plaintiff's purported definition of words and phrases contained in Plaintiff's discovery. To the extent Plaintiff ascribed special meanings or definitions to words used in its discovery requests, Geico declines to accept those specialized meaning and definitions and interprets all words contained in the discovery requests in accordance with their ordinary and customary meanings. Geico objects to those definitions to the extent that they are inconsistent with either (a) the definitions set forth in Geico's responses, or (b) the ordinary and customary meanings of such words and phrases. Likewise, Geico objects to Plaintiff's purported definitions to the extent that they purport to impose upon Geico any obligation broader than, or inconsistent with, applicable discovery rules or common law.

Geico responses are made specifically subject to any specific objections contained within an individual response. Where appropriate, in response to certain Interrogatories pursuant to Rule 33.03 of the Tennessee Rules of Civil Procedure, Geico will produce responsive documents to the extent such documents exist and can be located after a reasonable search.

According to the information reasonably available to Geico in the ordinary course of business at this time, these responses are complete and correct to the best of its knowledge, information, and belief. As discovery is ongoing in this matter, Geico specifically reserves the right to supplement and/or amend the responses provided herein. Geico reserves the right to

object to future discovery on the same or related matters, and does not waive any objection or defense by providing the information or documents reflected in these responses. Geico further reserves the right to object to the admissibility of any of these responses or related matters, in whole or in part, at the trial of this action, on any grounds, including, but not limited to materiality, relevance, and privilege.

## GENERAL OBJECTIONS

The following general objections apply to each of the Interrogatories and are incorporated by reference in each of Geico specific responses thereto:

1.      Geico objects to every Interrogatory that purports to impose obligations on Geico beyond the requirements of Tenn. R. Civ. P. 26 and 33, which will govern Geico's responses.

2.      Geico objects to the Interrogatories to the extent they seek materials prepared in anticipation of litigation, or which contain or reflect or call for the disclosure of the mental impressions, conclusions, opinions or legal theories of any attorney for Geico, or any other information protected by the Tennessee Rules of Civil Procedure.

3.      Geico objects to the Interrogatories to the extent they seek information protected from discovery under the attorney-client privilege, the work product doctrine, the accountant-client privilege, or any other privilege recognized under the law. Geico will not produce such information.

4.      Geico objects to the Interrogatories to the extent they seek trade secrets or other confidential or proprietary research, development, commercial, or business information. Geico will produce such information, if requested and not otherwise objectionable, only after entry of a suitable protective order.

5.      Geico objects to the Interrogatories to the extent they call for identification or

3

production of information that is a matter of public record and is equally available to the requesting party.

6.      In responding, Geico does not concede that any Interrogatory to which Geico responds is relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.  Geico reserves both the right to object to further discovery into the subject matter of these Interrogatories and the right to object to introduction into evidence of responses to these Interrogatories.  Geico also reserves the right to question the authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information provided and the documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or the trial of, this or any other action.

7.      Geico reserves the right to amend, supplement, or revise its responses as necessary up to and including the time of trial.

8.      Geico objects to the instructions provided with the Interrogatories to the extent that they purport to be directed not only to Geico, but also to other individuals and entities that are separate and distinct from Geico.

9.      Geico objects to the definitions of the terms "you," "your," "Defendant," and "Geico" contained in the Interrogatories to the extent that the definitions incorporate individuals and entities that are separate and distinct from Geico Advantage Insurance Company.

10.      In responding to the Interrogatories, Geico states that it has conducted a diligent search, reasonable in scope, of those files and records in Geico's possession or control believed to be the most likely to contain information responsive to the Interrogatories and has solicited relevant information from those individuals employed or otherwise affiliated with Geico

4

believed to be the most likely to have information responsive to the Interrogatories. Geico has

not, however, undertaken to search or review all of the files and records in Geico's possession,

custody or control, nor has Geico solicited documents from every individual employed by or

otherwise affiliated with Geico, because to do so would be unduly burdensome and expensive.

In the event, therefore, that further information, documents, records, or files responsive to any of

the Interrogatories are identified or brought to Geico's attention, Geico reserves the right to

amend or supplement these responses.

Subject to and without waiving the foregoing, Geico responds to Plaintiff's First Set of

Interrogatories as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1: Identify the name, address, position and/or title of each and every person that searched for, gathered and/or assisted in searching for and/or gathering any and all information provided in response to these Interrogatories and documents produced in response to Plaintiff's First Requests for Production of Documents.**

**ANSWER:** Geico objects to this Interrogatory as overbroad and unduly burdensome.

Defendant states that undersigned counsel, lawyers in the home office legal department for Geico

Advantage Insurance Company, and Jessica Nichols, Claims Training Manager with Geico, and

David Antonacci, Technical Supervisor III with Geico, were involved in the preparation of these

Responses. These individuals may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 2: Identify each and every person whom GEICO contends has any knowledge of any facts relative to any aspect of the claims made in this litigation and/or any potential defense(s) asserted thereto, specifically describing the potential knowledge each person(s) possesses.**

**RESPONSE:** Geico objects to this Interrogatory as overbroad, unduly burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence because documents and

information not related to Plaintiff's individual claims are premature and not discoverable given

that Plaintiff is the only alleged representative class member at this point in time. Geico objects

to any discovery relating to any policyholder other than Plaintiff. Geico also objects to this

Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or

the attorney work production doctrine. Subject to and without waiving the foregoing objections,

Geico responds that the following individuals may have knowledge relative to Plaintiff's claim:

- Meridythe Benjamin, Claims Service Representative
- Kristian Adams, Claims Service Representative
- Cole Phelps, Resident Adjuster II
- Alexis Coleman, Claims Service Representative
- Yentl Simmons, Salvage Representative II
- Suzanna Saldivar, Salvage Representative II
- Amy Dixon, Coverage Underwriter
- Peyton Pickett, Salvage Adjuster
- Shelby Keating, Claims Service Representative
- Lesha Slaughter, Salvage Representative II
- Suellen SparksSalvage Representative II
- Shameika Ross, Salvage Representative II
- Megan Livingston, Claims Service Representative
- Elizabeth Curry, Salvage Representative I
- William Sherman, Claims Service Representative
- Sylvia Beale, Uninsured Motorist Payment Recovery
- Kina Waters, Salvage Representative I
- Alyssa Meeks, Salvage Representative I
- Beverly Gavin, Coverage Underwriter
- Kia Glover, Salvage Representative II
- Yvonne Anderson, Uninsured Motorist Payment Recovery

Geico employees or agents may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 3: Identify and describe (by year) the total number of Uninsured Motorist Coverage insurance policies issued or delivered by GEICO in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence because documents and

information not related to Plaintiff's individual claims are premature and not discoverable given

that Plaintiff is the only alleged representative class member at this point in time. Geico objects

to any discovery relating to any policyholder other than Plaintiff.   Geico objects to this Interrogatory to the extent that it seeks information about individuals and entities that are separate and distinct from Geico Advantage Insurance Company.   Geico also objects to this Interrogatory because it seeks confidential and proprietary information.   Geico further objects to this Interrogatory because Geico does not issue stand-alone uninsured motorist coverage insurance policies; rather, Geico provides uninsured motorist coverage as part of an insured's automobile insurance policy.   Subject to and without waiving the foregoing objections, Geico will provide an Answer to this Interrogatory upon entry of an agreed Protective Order.

**INTERROGATORY NO. 4: Identify and describe (by year) the total number of claims that were made by GEICO Insured(s) that involved accidents with Uninsured Persons in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.   Geico objects to any discovery relating to any policyholder other than Plaintiff.   Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 5: Of the claims identified in response to Interrogatory No. 4 above, identify and describe (by year) how many and which of these accidents were determined by GEICO's Liability Investigation to be the fault of the Uninsured Person and not the Insured.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents

or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 6: Of the claims identified in response to Interrogatory No. 4 above, identify and describe all Uninsured Persons that GEICO sought to collect money (whether by letter, telephone call, collection agency or litigation) from during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 7: Identify and describe all those Uninsured Persons from whom GEICO sought to collect money (whether by letter, telephone call, collection agency, or litigation) during the relevant time period regardless of how GEICO internally classified the claim (meaning, regardless of whether GEICO classified the claim as one failing within collision coverage, comprehensive coverage or Uninsured Motorist Coverage).**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents

or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 8: Identify by case style, docket number and the judicial district all lawsuits filed in the State of Tennessee during the relevant time period against Uninsured Persons seeking to collect or recovery any money paid out and/or a Deductible incurred) related to any claim falling under Uninsured Motorist Coverage).**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.   Geico also objects to this Interrogatory as seeking publicly available information that is equally available from third parties.

**INTERROGATORY NO. 9: Identify each and every Insured to whom a Deductible was applied by GEICO related to a claim with an Uninsured Person, and please state the amount, if any, of any Deductible applied by you and the date you applied said Deductible.**

**RESPONSE**: Although it is Geico's policy and practice to comply with the handling of deductibles as set out in any insurance policy or as required under state law, Geico objects to this

Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 10: For each Insured identified in Interrogatory No. 9 above, please identify and state whether you ever reimbursed any Deductible back to each Insured(s) and the date that you did so.**

**RESPONSE**: Although it is Geico's policy and practice to comply with the handling of deductibles as set out in any insurance policy or as required under state law, Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

**INTERROGATORY NO. 11: For the relevant time period, identify each and every Uninsured Person from whom GEICO sought Subrogation in connection with any**

10

**payments made and/or Deductibles incurred under an Insured's Uninsured Motorist Coverage.**

    **RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

    **INTERROGATORY NO. 12: For the each Uninsured Person identified in Interrogatory No. 11 above, please state the total amount, if any, that GEICO collected from each Uninsured Person and the date or dates each amount was collected.**

    **RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico objects to any discovery relating to any policyholder other than Plaintiff.  Geico further objects to this Interrogatory as especially burdensome because, as Geico's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds; accordingly, responding to this Interrogatory would require manual, piece-meal review of each individual insured's claim file.

    **INTERROGATORY NO. 13: Identify each and every Claim Examiner, Liability Examiner and Payment Recovery Examiner that in any way dealt with or were related to Plaintiff's claims made under his Uninsured Motorist Coverage.**

**RESPONSE:** Geico responds that the following individuals may have dealt with Plaintiff's claims made under his Uninsured Motorist Coverage:

- Meridythe Benjamin, Claims Service Representative
- Kristian Adams, Claims Service Representative
- Cole Phelps, Resident Adjuster II
- Alexis Coleman, Claims Service Representative
- Yentl Simmons, Salvage Representative II
- Suzanna Saldivar, Salvage Representative II
- Amy Dixon, Coverage Underwriter
- Peyton Pickett, Salvage Adjuster
- Shelby Keating, Claims Service Representative
- Lesha Slaughter, Salvage Representative II
- Suellen SparksSalvage Representative II
- Shameika Ross, Salvage Representative II
- Megan Livingston, Claims Service Representative
- Elizabeth Curry, Salvage Representative I
- William Sherman, Claims Service Representative
- Sylvia Beale, Uninsured Motorist Payment Recovery
- Kina Waters, Salvage Representative I
- Alyssa Meeks, Salvage Representative I
- Beverly Gavin, Coverage Underwriter
- Kia Glover, Salvage Representative II
- Yvonne Anderson, Uninsured Motorist Payment Recovery

Geico employees or agents may be contacted only through counsel for Defendant.

**INTERROGATORY NO. 14: Identify all Claim Examiners, Liability Examiners who dealt with or were related to any claims made under any Insured's Uninsured Motorist Coverage in the State of Tennessee during the relevant time period.**

**RESPONSE**: Geico objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico objects to any discovery relating to any policyholder other than Plaintiff. Geico further objects to this Interrogatory as especially burdensome because Geico operates a nationwide business and

12

is structured such that an examiner in any part of the country may service a call from a Tennessee insured.

## VERIFICATION OF INTERROGATORY RESPONSES

Jessica Nichols, as the authorized representative of Geico Advantage Insurance Company

verifies that the statements in the foregoing are made based on her personal knowledge along

with the assistance and advice of counsel and the assistance of employees and representatives of

Geico Advantage Insurance Company; that/she has relied upon information provided by these

third parties which she has reason to believe is true and correct; that the answers set forth herein

are subject to inadvertent or undiscovered errors; that consequently Geico Advantage Insurance

Company reserves the right to make any changes in the answers if it appears that at any time

omissions or errors have been made therein or that more accurate information is available; and

that subject to the limitations set forth herein, the said answers are true to the best of her

knowledge, information, and belief.

_____
Jessica Nichols, Claims Training Manager

SWORN AND SUBSCRIBED before me this _18_ day of _September_ 2018.



Holly Huffman Coghill
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #266781
My Commission Expires
January 31, 2021

_____
NOTARY PUBLIC

My commission expires: _1-31-2021_____

14

4837-9430-0016 v1
2815012-000007 09/17/2018

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage*
*Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Tuesday, September 18, 2018 to the following:

Frank L. Watson (TN # 15073)          Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                    Futhey Law Firm, PLC
253 Adams Ave.                        1440 Poplar Ave.
Memphis, TN 38104                     Memphis, TN 38104
Phone: (901) 529-7996                 Phone: (901) 725-7585
*Attorney for Plaintiff*               *Attorney for Plaintiff*

Mitchell S. Ashkenaz

15

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities <br><br> PLAINTIFFS, <br><br> v. <br><br> GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation <br><br><br><br> DEFENDANT. | ) ) ) ) ) ) No. CH-18-0976-3 ) ) JURY DEMANDED ) ) ) ) ) ) |

### DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

Defendant Geico Advantage insurance Company ("Geico" or "Defendant"), pursuant to Rules 26 and 34 of the Tennessee Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Requests for Production of Documents to Defendant as follows:

### PRELIMINARY STATEMENT

To the extent that any Request requires Geico to review document(s) or gather information in order to provide a response, Geico has attempted to collect and review such documents and gather such information from those document(s) and materials that are reasonably available to Geico in the ordinary course of business. Geico further objects to the production of any information or documents from third parties.

Geico objects to any duties or obligations purportedly imposed by these Requests that are not required by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

1

Geico objects to the Definitions and Instructions of Plaintiff's First Set of Requests for Production of Documents upon the grounds that said definitions and instructions seek to place a burden upon Geico that exceeds the scope of discovery allowed under the Tennessee Rules of Civil Procedure. Geico will respond to said Requests for Production within its obligations as set forth by the Tennessee Rules of Civil Procedure and the Local Rules of the Chancery Court of Shelby County, Tennessee, Thirtieth Judicial District.

By submitting these responses, Geico does not in any way adopt Plaintiff's purported definition of words and phrases contained in Plaintiff's discovery. To the extent Plaintiff ascribed special meanings or definitions to words used in its discovery requests, Geico declines to accept those specialized meanings and definitions and interprets all words contained in the discovery requests in accordance with their ordinary and customary meanings. Geico objects to those definitions to the extent that they are inconsistent with either (a) the definitions set forth in Geico's responses, or (b) the ordinary and customary meanings of such words and phrases. Likewise, Geico objects to Plaintiff's purported definitions to the extent that they purport to impose upon Geico any obligation broader than, or inconsistent with, applicable discovery rules or common law.

Geico's responses are made specifically subject to any specific objections contained within an individual response. According to the information reasonably available to Geico in the ordinary course of business at this time, these responses are complete and correct to the best of its knowledge, information, and belief. As discovery is ongoing in this matter, Geico specifically reserves the right to supplement and/or amend the responses provided herein. Geico reserves the right to object to future discovery on the same or related matters, and does not waive any objection or defense by providing the information or documents reflected in these responses.

Geico further reserves the right to object to the admissibility of any of these responses or related matters, in whole or in part, at the trial of this action, on any grounds, including, but not limited to materiality, relevance, and privilege.

## GENERAL OBJECTIONS

The following general objections apply to each of the Requests and are incorporated by reference in each of Geico specific responses thereto:

1.     Geico objects to every Request that purports to impose obligations on Geico beyond the requirements of Tenn. R. Civ. P. 26 and 34, which will govern Geico's responses.

2.     Geico objects to the Requests to the extent they seek materials prepared in anticipation of litigation, or which contain or reflect or call for the disclosure of the mental impressions, conclusions, opinions or legal theories of any attorney for Geico, or any other information protected by the Tennessee Rules of Civil Procedure.

3.     Geico objects to the Requests to the extent they seek information protected from discovery under the attorney-client privilege, the work product doctrine, the accountant-client privilege, or any other privilege recognized under the law.  Geico will not produce such information.

4.     Geico objects to the Requests to the extent they seek trade secrets or other confidential or proprietary research, development, commercial, or business information.  Geico will produce such information, if requested and not otherwise objectionable, only after entry of a suitable protective order.

5.     Geico objects to the Requests to the extent they call for identification or production of information that is a matter of public record and is equally available to the requesting party.

6.      In responding, Geico does not concede that any Requests to which Geico responds is relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.  Geico reserves both the right to object to further discovery into the subject matter of these Requests and the right to object to introduction into evidence of responses to these Requests.  Geico also reserves the right to question the authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information provided and the documents identified and/or produced in response to these Requests, which may arise in any subsequent proceeding in, or the trial of, this or any other action.

7.      Geico reserves the right to amend, supplement, or revise its responses as necessary up to and including the time of trial.

8.      Geico objects to the instructions provided with the Requests to the extent that they purport to be directed not only to Geico, but also to other individuals and entities that are separate and distinct from Geico.

9.      Geico objects to the definitions of the terms "you," "your," "Defendant," and "Geico" contained in the Requests to the extent that the definitions incorporate individuals and entities that are separate and distinct from Geico Advantage Insurance Company.

10.     In responding to the Requests, Geico states that it has conducted a diligent search, reasonable in scope, of those files and records in Geico's possession or control believed to be the most likely to contain information responsive to the Requests and has solicited relevant information from those individuals employed or otherwise affiliated with Geico believed to be the most likely to have information responsive to the Requests.  Geico has not, however, undertaken to search or review all of the files and records in Geico's possession, custody or control, nor has Geico solicited documents from every individual employed by or otherwise

4

affiliated with Geico, because to do so would be unduly burdensome and expensive.   In the event, therefore, that further information, documents, records, or files responsive to any of the Requests are identified or brought to Geico's attention, Geico reserves the right to amend or supplement these responses.

Subject to and without waiving the foregoing, Geico responds to Plaintiff's Requests for Production as follows:

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**    **Please produce all documents (including emails, audio and/or visual recordings and statements) concerning, referring or relating to the Plaintiff.**

**RESPONSE:** Geico objects to this Request to the extent it seeks information and/or documents protected by the attorney-client privilege and/or the work product doctrine.   Subject to and without waiving the foregoing objections, Geico will produce all non-confidential documents responsive to this Request and will produce any remaining documents upon entry of an agreed upon Protective Order.

**REQUEST NO. 2:**    **For the relevant time period, please produce any and all Claim Examiner guidelines, policy manuals, training manuals, bulletins and other documents which set forth the steps that GEICO Claim Examiners must follow when investigating and/or adjusting First Party Claims that fall or may fall within Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Geico objects to this Request because it is not limited to the state of Tennessee.   Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.   Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

5

**REQUEST NO. 3:**   For the relevant time period, please produce any and all Liability Examiner guidelines, policy manuals, training manuals, bulletins and other documents which set forth the steps that GEICO Liability Examiners must follow when investigating and/or adjusting First Party Claims that fall or may fall within Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Geico objects to this Request because it is not limited to the state of Tennessee.  Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 4:**   For the relevant time period, please produce any and all Payment Recovery Examiner guidelines, policy manuals, training manuals, bulletins and other documents that set forth the steps that GEICO Payment Recovery Examiners must follow when seeking recovery of payments (and Deductibles) made under Uninsured Motorist Coverage.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Geico objects to this Request because it is not limited to the state of Tennessee.  Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 5:**   For the relevant time period, please produce any and all guidelines, policy manuals, training manuals and bulletins concerning, referring or relating to "How GEICO Investigates Your Insurance Claim" as found on GEICO's website at https://www.geico.claims/claimsprocess/claim-investigation/.

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Geico objects to this Request because it is not limited to the state of Tennessee.  Geico also objects to this Request to

6

the extent it seeks confidential and proprietary information and/or information protected as trade secret. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 6:** **For the relevant time period, please produce any and all guidelines, policy manuals, training manuals and bulletins concerning, referring or relating to "Find Out About Payment Recovery for Car Accidents" as found on GEICO's website at https://www.geico.claims/claimsprocess/payment-recovery/.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Geico objects to this Request because it is not limited to the state of Tennessee. Geico also objects to this Request to the extent it seeks confidential and proprietary information and/or information protected as trade secret. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request upon entry of an agreed upon Protective Order.

**REQUEST NO. 7:** **For the relevant time period, please produce any and all collection letters and other documents sent or furnished to any Uninsured Person in connection with GEICO's Payment Recovery efforts for payments made and/or Deductibles incurred under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. Geico also objects to this Request as seeking documents and information in the possession of third parties. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to

7

and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 8:** **For the relevant time period, please produce any and all Subrogation lawsuits filed by you in connection with GEICO's Payment Recovery efforts for payments made, and/or Deductibles, incurred under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** At the outset, Geico objects to this request as ambiguous and vague because Geico cannot produce a "Subrogation lawsuit." To the extent this Request seeks court filings related to lawsuits, Geico objects to this Request as seeking publicly available documents that are equally available from third parties. Geico also objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 9:** **For the relevant time period, please produce any and all affidavits, declarations and/or sworn statements given or signed by you in connection with GEICO's Payment Recovery efforts for payments made, and/or Deductibles incurred, under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given

8

that Plaintiff is the only alleged representative class member at this point in time.  Geico further

objects to this Request as overbroad and unduly burdensome, even if class discovery becomes

relevant at some point in this litigation, because the Request is not limited to uninsured motorist

coverage which includes uninsured motorist property damage coverage.  This request is further

objectionable to the extent it is not limited to the state of Tennessee.  Subject to and without

waiving the foregoing objections, Geico will produce documents responsive to this Request, but

only those related to Plaintiff.

**REQUEST NO. 10: For the relevant time period, please produce any and all
nonprivileged documents concerning, referring or relating to TENNESSEE CODE
ANNOTATED § 56-7-1201(c).**

**RESPONSE**: Geico objects to this Request because it seeks to encroach upon the

attorney work product doctrine.  Even though the Request seeks "nonprivileged documents," any

document interpreting or advising upon application of Tennessee statutory law and drafted by

Geico's counsel are protected by the attorney work product doctrine.  Subject to and without

waiving the foregoing objections, to the extent this Request seeks policies, guidelines, or other

corporate documents, Geico refers Plaintiff to Geico's Responses to Request No. 2.

Geico further objects to this Request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence because any documents or

information not related to Plaintiff's individual claims are premature and not discoverable given

that Plaintiff is the only alleged representative class member at this point in time.  Subject to and

without waiving the foregoing objections, to the extent this Request seeks documents related to

insured claims files, Geico will produce documents responsive to this Request, but only those

related to Plaintiff.

9

**REQUEST NO. 11**: **For the relevant time period, please produce any and all documents related to First Party Claims made under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 12**: **For the relevant time period, please produce any and all documents related to the application of any Deductible by you to any First Party Claims made under an Insured's Uninsured Motorist Coverage.**

**RESPONSE:** Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time. Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage. This request is further objectionable to the extent it is not limited to the state of Tennessee. Subject to and without

waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

**REQUEST NO. 14 [*sic*]:**    **For the relevant time period, please produce the CLUE Report for each Insured to whom any Deductible was applied by you with respect to First Party Claims made under the Insured's Uninsured Motorist Coverage.**

**RESPONSE:**  Geico objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.  Geico further objects to this Request as overbroad and unduly burdensome, even if class discovery becomes relevant at some point in this litigation, because the Request is not limited to uninsured motorist coverage which includes uninsured motorist property damage coverage.  This request is further objectionable to the extent it is not limited to the state of Tennessee.  Subject to and without waiving the foregoing objections, Geico will produce documents responsive to this Request, but only those related to Plaintiff.

George T. Lewis III (TN #7018)
Mitchell S. Ashkenaz (TN #34129)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone: 901.526.2000
Facsimile: 901.577.0818
blewis@bakerdonelson.com
mashkenaz@bakerdonelson.com

*Counsel for Defendant Geico Advantage*
*Insurance Company*

11

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via email and/or U.S. First Class Mail, postage prepaid, on this day of Monday, September 17, 2018 to the following:

Frank L. Watson (TN # 15073)       Malcom B. Futhey, III (TN # 24432)
Watson Burns, PLLC                 Futhey Law Firm, PLC
253 Adams Ave.                     1440 Poplar Ave.
Memphis, TN 38104                  Memphis, TN 38104
Phone: (901) 529-7996              Phone: (901) 725-7585
*Attorney for Plaintiff*           *Attorney for Plaintiff*

                                   Mitchell S. Ashkenaz

ELECTRONICALLY FILED
2018 Sep 25 4:20 PM
CLERK OF COURT

# EXHIBIT A

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JOHNATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) ) ) | **Case No. CH-18-0976 Part III**<br><br>**(Hon. Chancellor JoeDae Jenkins)** |

JOHNATHAN H. WEIMAR, on behalf of
himself and all similarly situated persons
and entities,                                )   **Case No. CH-18-0976 Part III**
                                             )
                                             )   **(Hon. Chancellor JoeDae Jenkins)**
                                             )
                                             )
        PLAINTIFFS,                          )   **CLASS ACTION COMPLAINT FOR**
                                             )   **VIOLATIONS OF TENNESSEE CODE**
v.                                           )   **ANNOTATED § 56-7-1201(c), TENNESSEE**
                                             )   **CODE ANNOTATED § 56-7-105,**
                                             )   **TENNESSEE COMMON LAW, and**
                                             )   **DECLATORY JUDGMENT PURSUANT**
                                             )   **TO TENNESSEE CODE ANNOTATED § 29-14-**
                                             )   **103 and 104**
                                             )
GEICO ADVANTAGE INSURANCE                    )
COMPANY, a foreign corporation               )   **JURY TRIAL DEMANDED**
                                             )   **PURSUANT TO TENN. R. CIV. PRO. 38.01**
                                             )   **& 38.02**
                                             )
                                             )
                                             )
                                             )
                                             )
        DEFENDANTS.                          )

---

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF
## DOCUMENTS AND INTERROGATORIES PROPOUNDED TO DEFENDANT
## GEICO ADVANTAGE INSURANCE COMPANY

Comes now Plaintiff Johnathan H. Weimar, on behalf of himself and all similarly situated persons and entities, by and through their undersigned counsel of record, pursuant to Rules 26.01, 33.01 and 34.01 of the Tennessee Rules of Civil Procedure and submits his **First Requests for Production of Documents and Interrogatories to Defendant GEICO Advantage Insurance Company** (hereinafter referred to as the "Requests")

Responses to these Requests should be produced according to the Tennessee Rules of Civil Procedure at the offices of WATSON BURNS PLLC, 253 Adams, Memphis, Tennessee 38103 for inspection and photocopying.  Documents produced should include everything in the possession, custody or control of Defendant and all those in privity with it, relating to the following Requests.

These Requests shall be deemed continuing so as to require supplemental responses pursuant to Tennessee Rule of Civil Procedure 26.05 if the Defendant, or anyone in privity with it, obtains further or different information between the time the responses are served and the time of trial.  The Requests shall be produced in accordance with the Definitions and Instructions set forth below.

## I.  **DEFINITIONS AND INSTRUCTIONS**

1.      The term "**Claim Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#ClaimExaminer.

2.      The term "**Class Member(s)**" shall have the same meaning as contained in paragraph 28 of Plaintiff's Class Action Complaint filed in this proceeding.

3.      The term "**CLUE Report**" " shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#CLUEReport.

4.      As used herein, the terms "**concerning**," "**referring**," "**relating**," "**in connection with**" and/or "**incident to**" in reference to a given subject matter means any information, document or communication which constitutes, contains, embodies, comprises, reflects, identifies, states or refers to, deals with, comments on, responds to, describes, analyzes, or is in

any way pertinent to the subject matter including, without limitation, any documents which mention said person or subject by name or any variant thereof.

     5.      The terms "**Defendant**" and "**GEICO**" shall mean the entity GEICO Advantage Insurance Company, and its officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

     6.      The term "**Deductible**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Deductible.

     7.      The term "**document(s)**" means, without limitation, the following items, whether printed or recorded or maintained in any electronic format, or written or produced by hand: e-mails, portable document format files, tagged image file format files, electronically stored data and information, agreements, communications, reports, correspondence, telegrams, telexes, memoranda, summaries of records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants or experts, drafts, letters, any marginal comments appearing on any documents, and all other writings.

     8.      The term "**First Party Claims**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#FirstPartyClaims.

9.      The term "**Insured**" shall mean any person or entity to whom GEICO provided **Uninsured Motorist Coverage** (as defined below in No. 20), the policy of which was issued and/or delivered in the State of Tennessee.

10.     The term "**Liability Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#LiabilityAdjuster.

11.     The term "**Liability Investigation**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#LiabilityInvestigation.

13.     The term "**Payment Recovery**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#PaymentRecovery.

14.     The term "**Payment Recovery Examiner**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#PaymentRecoveryExaminer.

15.     The term "**Plaintiff**" shall refer to Johnathan H. Weimar.

16.     The term "**person(s)**" means any human being, firm, association, partnership, corporation, joint venture, government entity or other form of legal or business entity, public or private.

17.     Unless otherwise indicated, the term "**relevant time period**" used throughout these Requests shall mean and refer to the period of time from June 29, 2012 to the present.  All

information and documents which refer to this period should include all information whether prepared or collected before, during or afterward the period if responsive to any given question.

18.    The term "**representative**" shall mean any and all agents, owners, members, employees, servants, officers, directors, associates or other persons acting or purporting to act on your behalf.

19.    The term "**Subrogation**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Subrogation.

20.    The term "**Uninsured Motorist Coverage**" shall have the same meaning as found in GEICO's "Glossary of Insurance Terms" located on GEICO's website at https://www.geico.com/information/insurance-terms/#Uninsured.

21.    The term "**Uninsured Person**" means any human being, firm, association, partnership, corporation, joint venture, government entity or other form of legal or business entity, public or private whom GEICO has determined to have no automobile insurance coverage.

21.    The terms "**you**," and "**your**" shall each refer to GEICO Advantage Insurance Company, and its officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

22.    These Document Requests are intended to cover all documents and electronically stored information in the possession, custody or control of GEICO and any of its agents or representatives, or to which any of them may have the right of possession, custody or control.

23.     If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not answering any question, or any part thereof, please provide each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim of privilege is valid, shall be set forth in complete detail.  With respect to a document to which a privilege is being claimed, the following information at the very minimum should be provided:

    (a)     date;

    (b)     author;

    (c)     names and addresses of any persons who received copies, if any;

    (d)     title;

    (e)     type of tangible thing, letter, memorandum, telegram, report, etc.; and

    (f)     general description of the subject matter (without revealing privileged information).

24.     These Document Requests shall be deemed to continuing and any information or documents relating in any way to these Interrogatories which you acquire, which become known to you up to and including the time of trial, shall be furnished by you to Plaintiff within a reasonable time after such information is acquired or becomes known.

25.     If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details of the circumstances leading to the loss or destruction of the document.

## II.        REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  Please produce all **documents** (including emails, audio and/or visual recordings and statements) **concerning, referring or relating** to the **Plaintiff**.


**RESPONSE:**


**REQUEST NO. 2:**  For the **relevant time period**, please produce any and all **Claim Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** which set forth the steps that **GEICO Claim Examiners** must follow when investigating and/or adjusting **First Party Claims** that fall or may fall within **Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 3:**  For the relevant time period, please produce any and all **Liability Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** which set forth the steps that **GEICO Liability Examiners** must follow when investigating and/or adjusting **First Party Claims** that fall or may fall within **Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 4:**   For the **relevant time period**, please produce any and all **Payment Recovery Examiner** guidelines, policy manuals, training manuals, bulletins and other **documents** that set forth the steps that **GEICO Payment Recovery Examiners** must follow

when seeking recovery of payments (and **Deductibles**) made under **Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 5:**   For the **relevant time period**, please produce any and all guidelines, policy manuals, training manuals and bulletins **concerning, referring or relating** to "How GEICO Investigates Your Insurance Claim" as found on **GEICO**'s website at https://www.geico.claims/claimsprocess/claim-investigation/.

**RESPONSE:**

**REQUEST NO. 6:**   For the **relevant time period**, please produce any and all guidelines, policy manuals, training manuals and bulletins **concerning, referring or relating** to "Find Out About Payment Recovery for Car Accidents" as found on **GEICO**'s website at https://www.geico.claims/claimsprocess/payment-recovery/.

**RESPONSE:**

**REQUEST NO. 7:**   For the **relevant time period**, please produce any and all collection letters and other **documents** sent or furnished to any **Uninsured Person in connection with GEICO's Payment Recovery** efforts for payments made and/or **Deductibles** incurred under an **Insured's Uninsured Motorist Coverage**.

8

**RESPONSE:**


**REQUEST NO. 8:**   For the **relevant time period**, please produce any and all **Subrogation** lawsuits filed by **you in connection with GEICO's Payment Recovery** efforts for payments made, and/or **Deductibles,** incurred under an **Insured's Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 9:**   For the **relevant time period**, please produce any and all affidavits, declarations and/or sworn statements given or signed by **you in connection with GEICO's Payment Recovery** efforts for payments made, and/or **Deductibles** incurred, under an **Insured's Uninsured Motorist Coverage**.


**RESPONSE:**


**REQUEST NO. 10:**   For the **relevant time period**, please produce any and all non-privileged documents **concerning, referring or relating** to TENNESSEE CODE ANNOTATED § 56-7-1201(c).


**RESPONSE:**


9

**REQUEST NO. 11:**   For the **relevant time period**, please produce any and all **documents related to First Party Claims** made under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 12:**   For the **relevant time period**, please produce any and all **documents related to** the application of any **Deductible** by **you** to any **First Party Claims** made under an **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

**REQUEST NO. 14:**   For the **relevant time period**, please produce the **CLUE Report** for each **Insured** to whom any **Deductible** was applied by **you** with respect to **First Party Claims** made under the **Insured's Uninsured Motorist Coverage**.

**RESPONSE:**

10

## III.   **INTERROGATORIES**

**INTERROGATORY NO. 1:   Identify** the name, address, position and/or title of each and every person that searched for, gathered and/or assisted in searching for and/or gathering any and all information provided in response to these Interrogatories and documents produced in response to Plaintiff's First Requests for Production of Documents.

**RESPONSE:**

**INTERROGATORY NO. 2:   Identify** each and every person whom **GEICO** contends has any knowledge of any facts relative to any aspect of the claims made in this litigation and/or any potential defense(s) asserted thereto, specifically describing the potential knowledge each person(s) possesses.

**Please note that this Interrogatory does not seek the disclosure of attorney work-product or mental impressions pertaining to those individuals that <u>will be</u> called to testify at the trial of this matter.   This interrogatory only seeks the identity of those individuals having knowledge of relevant information in any way pertaining to any allegation of the Class Action Complaint or to any potential defense thereto.   Please note that the Plaintiff will object to the introduction of any trial testimony from any individual and/or entity not identified in your response to this Interrogatory.**

**RESPONSE:**

11

**INTERROGATORY NO. 3:** **Identify** and describe (by year) the total number of **Uninsured Motorist Coverage** insurance policies issued or delivered by **GEICO** in the State of Tennessee during the **relevant time period**.

**RESPONSE:**

**INTERROGATORY NO. 4:** **Identify** and describe (by year) the total number of claims that were made by GEICO **Insured(s)** that involved accidents with **Uninsured Persons** in the State of Tennessee during the **relevant time period.**

**RESPONSE:**

**INTERROGATORY NO. 5:** Of the claims indentified in response to Interrogatory No. 4 above,. **identify** and describe (by year) how many and which of these accidents were determined by **GEICO's Liability Investigation** to be the fault of the **Uninsured Person** and not the **Insured**.

**RESPONSE:**

**INTERROGATORY NO. 6:** Of the claims identified in response to Interrogatory No. 4 above, **identify** and describe all **Uninsured Persons** that **GEICO** sought to collect money (whether by letter, telephone call, collection agency or litigation) from during the **relevant time period**.

**RESPONSE:**


**INTERROGATORY NO. 7:** **Identify** and describe all those **Uninsured Persons** from whom **GEICO** sought to collect money (whether by letter, telephone call, collection agency, or litigation) during **the relevant time period** regardless of how **GEICO** internally classified the claim (meaning, regardless of whether GEICO classified the claim as one failing within collision coverage, comprehensive coverage or **Uninsured Motorist Coverage**).


**RESPONSE:**


**INTERROGATORY NO. 8:** **Identify** by case style, docket number and the judicial district all lawsuits filed in the State of Tennessee during the relevant time period against **Uninsured Persons** seeking to collect or recovery any money paid out and/or a Deductible incurred) related to any claim falling under **Uninsured Motorist Coverage**).


**RESPONSE:**

**INTERROGATORY NO. 9**:  **Identify** each and every **Insured** to whom a **Deductible** was applied by **GEICO related to** a claim with an **Uninsured Person**, and please state the amount, if any, of any **Deductible** applied by **you** and the date you applied said **Deductible**.

**RESPONSE:**

**INTERROGATORY NO. 10**:  For each **Insured** identified in Interrogatory No. 9 above, please **identify** and state whether you ever reimbursed any **Deductible** back to each **Insured(s)** and the date that you did so.

**RESPONSE:**

**INTERROGATORY NO. 11**:  For the **relevant time period**, **identify** each and every **Uninsured Person** from whom GEICO sought **Subrogation** in connection with any payments made and/or **Deductibles** incurred under an **Insured's Uninsured Motorist Coverage.**

**RESPONSE:**

**INTERROGATORY NO. 12**:  For the each **Uninsured Person** identified in Interrogatory No. 11 above, please state the total amount, if any, that **GEICO** collected from each **Uninsured Person** and the date or dates each amount was collected.

**RESPONSE:**

14

**INTERROGATORY NO. 13**:  **Identify** each and every **Claim Examiner**, **Liability Examiner** and **Payment Recovery Examiner** that in any way dealt with or were related to **Plaintiff's** claims made under his **Uninsured Motorist Coverage**.


**RESPONSE:**


**INTERROGATORY NO. 14**:  **Identify** all **Claim Examiners**, **Liability Examiners** who dealt with or were related to any claims made under an **Insured's Uninsured Motorist Coverage** in the State of Tennessee during **the relevant time period**.


**RESPONSE:**

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Malcom B. Futhey III (Tenn. Bar No. 24432) (by permission Frank L. Watson)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com


*Counsel for Plaintiff Johnathan H. Weimar, and the absent Class Members*

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email and U.S. Mail, postage prepaid, this 18th day of July 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage*
*Insurance Company*

Frank L. Watson, III

ELECTRONICALLY FILED
2018 Sep 25 4:20 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | )<br>)<br>)<br>) **Case No. CH-18-0976 Part III**<br>)<br>) **(Hon. Chancellor JoeDae Jenkins)**<br>)<br>) |
| PLAINTIFFS, | ) **CLASS ACTION COMPLAINT FOR**<br>) **VIOLATIONS OF** TENNESSEE CODE |
| v. | ) ANNOTATED **§ 56-7-1201(c),** TENNESSEE<br>) CODE ANNOTATED **§ 56-7-105,**<br>) **TENNESSEE COMMON LAW, and**<br>) **DECLATORY JUDGMENT PURSUANT**<br>) **TO** TENNESSEE CODE ANNOTATED **§ 29-14-**<br>) **103 and 104**<br>) |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) **JURY TRIAL DEMANDED**<br>) **PURSUANT TO** TENN. R. CIV. PRO. 38.01<br>) **& 38.02**<br>)<br>)<br>)<br>)<br>)<br>) |
| DEFENDANTS. | ) |

## PLAINTIFF'S MOTION TO COMPEL COMPLETE WRITTEN RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES, THE PRODUCTION OF ALL DOCUMENTS REQUESTED THEREIN, AND FOR REASONABLE EXPENSES, INCLUDING ATTORNEYS' FEES

Comes now Plaintiff Jonathan H. Weimar, on behalf of himself and all similarly situated

persons and entities ("Plaintiff"), by and through his undersigned counsel of record, pursuant to

Rules 26.01, 33.01, 34.01, and 37.01 of the Tennessee Rules of Civil Procedure and Rule 10(f)

of the Rules of the Chancery Court of Shelby County, and hereby moves this Court to compel

Defendant GEICO Advantage Insurance Company to provide complete, written responses to Plaintiff's First Requests for Production of Documents and Interrogatories and to produce all responsive documents requested therein within the next fifteen days.  In connection therewith, Plaintiff requests that the Court award him his reasonable expenses incurred in obtaining the requested Order, including attorneys' fees.  In support of this Motion, Plaintiff further states as follows:

1.    On June 29, 2018, Plaintiff initiated this action by filing his Class Action Complaint asserting claims against Defendant GEICO Advantage Insurance Company ("GEICO") for violations of TENN. CODE ANN. § 56-7-105 and Tennessee Common Law and seeking a Declaratory Judgment pursuant to TENN. CODE ANN. § 29-14-103 and 104.

2.    Plaintiff, on behalf of himself and the putative class, seeks recovery from GEICO in order to remedy GEICO's unlawful actions in causing Tennessee insured persons and entities to pay or incur an unlawful deductible in connection with GEICO's payment of uninsured motorist ("UM") benefits.  (Complaint ¶ 1).  Tennessee law expressly prohibits GEICO (and all other insurers) from applying any deductible claim to an insured's UM claim when the accident is solely the fault of an uninsured driver who has been positively identified.  *See* TENN. CODE ANN. § 56-7-105.

3.    On July 18, 2018, Plaintiff served his First Requests for Production of Documents ("Requests") and Interrogatories ("Interrogatories") to GEICO.  A true and correct copy of the Requests and Interrogatories is attached hereto as **Exhibit A**.  In the Requests and Interrogatories, Plaintiff seeks, among other things, documents and information that are relevant to Plaintiff's class action allegations set forth in the Complaint.

4.      Thereafter, Plaintiff provided GEICO with the courtesy of a thirty-day extension to respond to the Requests and Interrogatories.

5.      On September 18, 2018, GEICO filed and served its responses to the Interrogatories and to the Requests ("Responses").  A true and correct copy of the Responses is attached hereto as **Exhibit B**.  GEICO's Responses are grossly deficient.

6.      Setting aside GEICO's standard recitation of boilerplate objections, GEICO principally refused to provide sufficient responses to the Requests and Interrogatories on the erroneous grounds that:

(i)      Plaintiff is the only named plaintiff representing the asserted class,

(ii)     GEICO's business records are difficult to review; and

(iii)    in any event, Plaintiff is allegedly not entitled to <u>any discovery</u> with respect to his class action allegations at this stage of the litigation.

7.      Specifically, GEICO has refused to answer Plaintiffs discovery on the ground that "**any documents or information not related to Plaintiff's individual claims are premature and not discoverable given that Plaintiff is the only alleged representative class member at this point in time.**"  (**Exhibit B**, Responses to Request Nos. 7-14 and Interrogatory Nos. 2-12, 14).  In a similar vein, GEICO objects in a number of instances "**to any discovery relating to any policyholder other than Plaintiff.**"  (**Exhibit B**, Responses to Interrogatory Nos. 2-12, 14).

8.      GEICO further objects in many instances on the purported ground that the Requests and Interrogatories are burdensome because "**as GEICO's claim management system is currently designed, there is no method allowing searches across claims files for multiple insureds**" and therefore responding would require GEICO to conduct a "**manual, piece-meal**

**review of each individual insured's claim file**." (**Exhibit B**, Responses to Interrogatory Nos. 4-12).

9.      Each of these claimed objections is meritless.

10.      With respect to each UM claim that it processes, GEICO admits that it determines whether the UM driver is solely at fault and identified. (*See* GEICO's Answer at ¶ 18). GEICO, however, denies that it charged Plaintiff any deductible. (*Id.* at ¶ 30). GEICO also denies that any of the putative class members were charged with an unlawful deductible and further denies that this action should be maintained as a class action. (*Id.* at ¶¶ 9-11, 43, 47-53).

11.      Apparently based on these denials, GEICO contends that it need not answer any of Plaintiff's Interrogatories and Document Requests that seek to determine the existence of a class. As Plaintiff's counsel learned in its pre-Motion to Compel discussions with GEICO's counsel (as required by Chancery Court Rule 10(f)), GEICO contends that unless Plaintiff can "prove" that other absent class members were treated the same, Plaintiff cannot obtain class discovery to demonstrate this very fact. This is not logical, nor is it the law.

12.      First, Plaintiff is entitled to documents and information pertaining to his class action allegations at this time. The Tennessee Supreme Court has recognized the importance of pre-certification class discovery to allow a class plaintiff to develop – and the courts to adequately assess – the factual basis upon which the question of certification can be decided. *Am. Heritage Apts., Inc. v. Hamilton County Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 50-52 (Tenn. 2016) (vacating ruling on class certification to allow trial court to order discovery and conduct a hearing to establish basis for certification decision); *see also Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 542 (Tenn. Ct. App. 2017) (lack of a

developed factual record as to the prerequisites under Rule 23.01 may be sufficient cause to overturn order certifying class).

13.    Here, Plaintiff's Requests and Interrogatories are expressly tailored to determine the existence and scope of the alleged class.[1]   GEICO is accordingly obligated under Tennessee law to respond not only to Plaintiff's Requests and Interrogatories that pertain to Plaintiff individually but also to Plaintiff's Requests and Interrogatories pertaining to his class action allegations.   This conclusion is consistent with the practices adopted in numerous state and federal courts throughout the nation.

14.    As is widely recognized in the federal courts, "pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim…" *Burton v. District of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011) (granting plaintiffs' request for pre-certification discovery).[2]   Indeed, as the Western District of Tennessee has observed:

> Numerous courts have recognized that allowing class-wide discovery on certification issues and postponing class-wide discovery on the merits is appropriate "to make early class determination practicable and to best serve the ends of fairness and efficiency." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992) (citing Stewart, 669 F.2d at 331); *see also* MANUAL FOR COMPLEX LITIGATION, supra, § 11.213 (recognizing that courts "should ascertain what discovery on class questions is needed for a certification ruling and how to conduct it efficiently and economically"). Indeed, this court has granted bifurcation of discovery in other class actions. *See, e.g., Isabel v. Velsicol Chem. Co.*, No. 04-2297-DV (W.D. Tenn. June 7,

---

[1] Notably, GEICO's Answer denies that any such class as defined by Plaintiff exists. (*See, e.g.* Answer at ¶ 47). Presumably, in order to make this denial, GEICO has searched its records. However, in the parties' Rule 10(f) conference, GEICO's counsel informed Plaintiff's counsel that a comprehensive search of its records would be difficult and time consuming and, thus, it has not done such a search to verify if, like Plaintiff, other insureds were charged an unlawful deductible in connection with a UM claim.

[2] The Supreme Court of Tennessee has found that federal authority is persuasive when considering issues related to class actions and discovery. *Meighan v. U.S. Sprint Communs. Co.*, 924 S.W.2d 632, 637 n.2 (Tenn. 1996) ("We have previously held that because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive."); *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557 (Tenn. 1990) ("Tenn. Rs. Civ. P. 23 and 54.02 are identical in all respects to Fed Rs. Civ. P. 23 and 54(b).  Therefore, the opinions of federal courts are persuasive authority in this area."); *see also In re Pacer Int'l Inc.*, No. M2015-00356-COA-R3-CV, 2017 Tenn. App. LEXIS 442 at *16 (Tenn. Ct. App. 2015) ("When Tennessee and federal procedural rules are identical, we view case law construing the analogous federal rule as persuasive authority").

2004) (Vescovo, M.J.) (limiting first phase of discovery to class certification issues), aff'd, 2004 U.S. Dist. LEXIS 18057 (W.D. Tenn. Aug. 12, 2004) (Donald, J.) (denying plaintiff's appeal of order bifurcating discovery and finding "substantial authority allows for pre-class certification discovery"); *Bostick v. St. Jude Med., Inc.*, No. 03-2636-BV (W.D. Tenn. Nov. 14, 2003) (Vescovo, M.J.) (limiting initial discovery to issues relevant to class certification). The primary considerations to determine whether bifurcation of class certification discovery from discovery on the merits is fair and efficient are whether merits discovery is intermingled with class discovery and whether the litigation is likely to continue absent class certification. *In re Plastics Additive Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23989, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004). *See generally* MANUAL FOR COMPLEX LITIGATION, supra, § 21.14.

*In re Copper Tubing Litig.,* No. 04-2771 DV, 2006 U.S. Dist. LEXIS 102875, at *19-20 (W.D. Tenn. Oct. 3, 2006).

15.    "Failing to allow precertification discovery where it is necessary to determine the existence of a class is an abuse of discretion."  *Salgado v. Land O' Lakes, Inc.*, No. 1:13-cv-0798-LJO-sms, 2014 U.S. Dist. LEXIS 175158, at *18 (E.D. Cal. Dec. 18, 2014).  As the Fourth Circuit has stated:

> In resolving the issue of class certification, the court may not confine itself to the allegations of the complaint.  An intelligent decision on class certification requires "at least a preliminary exploration of the merits" of the plaintiff's claim.  Based on that exploration, the court must make specific findings establishing that the case satisfies the several requirements for certification...*To aid in making such findings discovery is to be encouraged*.

*Shelton v. Pargo*, 582 F.2d 1298, 1312-13 (4th Cir. 1978) (emphasis added).

16.    Courts have consistently ruled that precertification discovery is appropriate to determine the existence of a class.  *See Taylor v. Universal Auto Grp. I, Inc.*, No. 1:14-mc-50, 2015 U.S. Dist. LEXIS 66083, at *16-17 (S.D. Ohio May 20, 2015) (overruling objections to magistrate judge's order compelling the production of information at the pre-certification stage); *Kane v. Nat'l Action Fin. Servs.*, No. 11-11505, 2012 U.S. Dist. LEXIS 66219, at *16-17 (E.D. Mich. 2012) (permitting precertification discovery to "allow plaintiff to flesh out both his class claims and his individual claims" and finding discovery "on a company-wide basis is

6

appropriate, even if a later motion for certification fails, requires multiple subclasses, or outright succeeds"); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (ordering defendant to produce information requested by plaintiff where such information "is necessary to determine whether plaintiff's claims are typical of the class, and ultimately whether the action may be maintained as a class action"); *Gutierrez v. Johnson & Johnson*, No. Civ. A. 01-5302, 2002 U.S. Dist. LEXIS 15418, at *1 (D.N.J. Aug. 15, 2002) (overruling defendant's objection and granting plaintiff's motion to compel company-wide pre-class certification of discrimination claims brought by employees of African and Hispanic descent, despite the fact that company had 32 operating companies in 11 different states); *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956, at *22-24 (D. Or. May 9, 2011) ("Fed. R. Civ. P. 26(b)(1) allows the discovery of matters relevant to pre-class certification;" district court compelled identities and contact information of putative class members because it related to pre-certification discovery); *Wiegele v. Fedex Ground Package System*, No. 06-CV-01330-JM(POR), 2007 U.S. Dist. LEXIS 9444, at *4-7 (S.D. Cal. Feb. 8, 2007) (in denying objections to a discovery order which directed "Fedex to provide the 'names, last known home addresses and home telephone numbers, and email addresses of formerly and currently-employed' similarly situated individuals[,]" and limited "disclosure of the discovery to Plaintiff's counsel, their investigators and experts, and not to any individual plaintiff[,]" the district court noted that "the Magistrate Judge determined that putative class members possess relevant discoverable information concerning issues dealing with Plaintiff's wage and hour claims, as well as class certification issues"); *Sloan v. C. C. Collings & Co.*, No. 85-3315, 1986 U.S. Dist. LEXIS 22525, *6-8 (E.D. Pa. Jul 22, 1986) (court permitted pre-class certification discovery, compelling the names, prices and dates of purchase concerning municipal bonds); *Stebbins v. S&P Oyster Co.*, No.

3:16CV00992 (AWT), 2017 U.S. Dist. LEXIS 50633 at *8 (D. Conn. Apr. 3, 2017) (court ordered precertification discovery of employees names, contact information and job duties, noting that "[p]re-certification discovery of potential class lists is favored by most cases considering the question, within the contexts of Rule 23, FLSA, or both").

17.    Here, Plaintiff is entitled to precertification discovery in order to determine the existence of the putative class.  Defendant GEICO's suggestion that Plaintiff must first "prove" that a class truly exists (*i.e.*, that numerous other persons were subjected to the same illegal practice) before Plaintiff may obtain class discovery sets up an impossible task and conveniently shuts the courthouse doors to a myriad of meritorious class action cases.

18.    Moreover, it is wholly irrelevant that Plaintiff is the "only alleged representative class member at this point in time."  The prosecution of a class action requires nothing more.  To the contrary, the Tennessee Court of Appeals has clearly recognized that a single plaintiff is sufficient to initiate and certify a class action lawsuit.  *Wofford*, 528 S.W.3d at 542 ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim…") (emphasis added).   GEICO should not be relieved of its discovery obligations because a single plaintiff represents the putative class in this instance.

19.    Second, GEICO is not entitled to shirk its discovery obligations simply because it does not maintain records that "allow searches across claims" or because complying with its discovery obligations requires manual review of its records.  "[T]he fact that a party maintains its documents in a manner that makes access difficult is not an excuse for refusing to produce relevant documents."  *First Tenn. Bank Nat'l Ass'n v. Republic Mortg. Ins. Co.*, No. 2:10-cv-02513-JPM-cgc, 2011 U.S. Dist. LEXIS 141167, at *6 (W.D. Tenn. Dec. 8, 2011) (Magistrate

Judge Charmiane G. Claxton.[3] "Otherwise stated, to 'allow a [party] whose business generates massive records to frustrate discovery by creating an inadequate filing system,' including a 'indexing scheme over which [the opposing party] has not control,' and them 'claiming undue burden, would defeat the purposes of the discovery rules.'" *Id.* (citing *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)). "[C]ourts have clearly and routinely held that a company cannot refuse to respond to otherwise relevant discovery on the grounds that its records are not kept in a manner that streamlines responding." *Id.* at 8-9 (compelling First Tennessee to respond to requests for production finding that the expenditure of considerable time and expense posed to First Tennessee, which was uncontroverted, could not warrant excusing it from production).

20.    The Sixth Circuit has applied the identical principle in affirming certification of a class over an insurance company's objection that the class was not administratively feasible because it would require review of a great number of policies to individually determine who, among the insureds, are class members. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). In affirming the district court's certification of the class where the sole Plaintiff alleged the insurer had charged illegal insurance premiums in Kentucky, the Sixth Circuit stated, among other things:

> Equally—if not more—persuasive is the district court's practical rationale: ***"[T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained."*** We find this reasoning compelling. It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action

---

[3] As counsel of record in *First Tenn. Bank Nat'l Ass'n*, Mr. Lewis, counsel to GEICO in this action, is surely well aware that the manner in which GEICO maintains its records does not excuse GEICO from its discovery obligations.

> remedies. We reject Defendants' attacks on administrative feasibility based on the number of insurance policies at issue.

*Id*. (emphasis added); *see also*, *Gist v. Pilot Travel Ctrs., LLC*, No. 5:08-293-KKC, 2013 U.S. Dist. LEXIS 113185, at *12-13 (E.D. Ky. Aug. 12, 2013) ("The need to conduct substantial review of a large number of files to identify members is not a reason to deny class certification"); *Faber v. Ciox Health, LLC*, No. 2:16-cv-02337-STA-cgc, 2018 U.S. Dist. LEXIS 113939, at *4 (W.D. Tenn. Jul. 10, 2018) (same) (Chief U.S. District Judge S. Thomas Anderson); *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses."); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 303-3080 (S.D.N.Y. 2012) (granting motion to compel defendant to extract and produce voluminous data "in order to give the plaintiffs a fair opportunity to demonstrate their entitlement to certification of a class").

21.    Clearly, if a defendant's alleged difficulty and burdensomeness of reviewing thousands of documents presents no defense to class certification, then GEICO's same claim cannot be a basis to deny precertification discovery in order to establish the elements under Rule 23.  As demonstrated above, GEICO's objections to the Requests and Interrogatories that are premised on the inefficient manner in which it maintains business records and the necessity of manual review of such records do not serve to relieve GEICO of its discovery obligations.  It must comply, and this Motion should be granted in its entirety.

22.    Pursuant to Rule 37.01(4) of the Tennessee Rules of Civil Procedure, if a motion to compel discovery responses is granted, "the court <u>shall</u>, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the

order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." *See also Estate of Elrod v. Petty*, No. M2015-00568-COA-R3-CV, 2016 Tenn. App. LEXIS 424, at *16-20 (Tenn. Ct. App. June 23, 2016) (award of reasonable expenses and attorney's fees affirmed where objections and opposition to motion to compel were not substantially justified).

23.     Plaintiff accordingly requests an award of his reasonable expenses incurred in obtaining an Order granting this Motion, including attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jonathan H. Weimar, on behalf of himself and all similarly situated persons and entities, respectfully requests the entry of an Order compelling GEICO to provide complete, written responses to Plaintiff's First Requests for Production of Documents and Interrogatories and to produce all responsive documents requested therein within the next fifteen days and awarding Plaintiff his reasonable expenses incurred in obtaining the requested Order, including attorneys' fees.

Respectfully submitted,

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwatson@watsonburns.com
Email: bburns@watsonburns.com

Malcolm B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525

11

Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com


*Counsel for Plaintiff Jonathan H. Weimar, and the absent Class Members*

## CERTIFICATE OF CONSULTATION

Pursuant to Rule 10(f) of the Rules of the Chancery Court of Shelby County, I hereby certify that counsel for Plaintiff, Frank L. Watson, III and William E. Routt, consulted with counsel for Defendant, George T. Lewis and Mitchell S. Ashkenaz, on September 20, 2018. Defendant opposes the relief requested herein.

William E. Routt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email and/or U.S. Mail, postage prepaid, this 25th day of September 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
Mitchell S. Ashkenaz (Tenn. Bar No. 34129)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage*
*Insurance Company*

William E. Routt

14

ELECTRONICALLY FILED
2018 Oct 05 12:30 PM
CLERK OF COURT

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| JONATHAN H. WEIMAR, on behalf of himself and all similarly situated persons and entities, | ) ) ) ) |
| | **Case No. CH-18-0976 Part III** |
| | **(Hon. Chancellor JoeDae Jenkins)** |
| PLAINTIFFS, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF TENNESSEE CODE ANNOTATED § 56-7-1201(c), TENNESSEE CODE ANNOTATED § 56-7-105, TENNESSEE COMMON LAW, and DECLATORY JUDGMENT PURSUANT TO TENNESSEE CODE ANNOTATED § 29-14-103 and 104** |
| v. | |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | **JURY TRIAL DEMANDED PURSUANT TO TENN. R. CIV. PRO. 38.01 & 38.02** |
| DEFENDANTS. | |

## NOTICE OF HEARING ON PLAINTIFF'S MOTION TO COMPEL COMPLETE WRITTEN RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES, THE PRODUCTION OF ALL DOCUMENTS REQUESTED THEREIN, AND FOR REASONABLE EXPENSES, INCLUDING ATTORNEYS' FEES

Please take notice that the above named Plaintiff will cause Plaintiff's Motion to Compel Complete Written Responses to Plaintiff's First Requests for Production of Documents and Interrogatories, the Production of all Documents requested therein, and for Reasonable Expenses, including Attorneys' Fees to be heard at 9:00 a.m. on Friday, October 12, 2018 before the Shelby

County Chancery Court, Part 3, at the Shelby County Courthouse, 140 Adams Avenue, Memphis, Tennessee 38103.

Respectfully submitted,

_____
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

Malcolm B. Futhey III (Tenn. Bar No. 24432)
FUTHEY LAW FIRM, PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
Phone: (901) 725-7525
Fax: (901) 726-3506
Email: malcolm@futheylawfirm.com


*Counsel for Plaintiff Jonathan H. Weimar, and the absent Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email and/or U.S. Mail, postage prepaid, this 5th day of October 2018, upon the following:

George T. Lewis, III (Tenn. Bar No. 7018)
Mitchell S. Ashkenaz (Tenn. Bar No. 34129)
BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ, PC.
165 Madison Ave
Suite 2000
Memphis, Tennessee 38103

*Counsel for Defendant GEICO Advantage
Insurance Company*

William E. Routt

ELECTRONICALLY FILED
2018 Oct 08 10:33 AM
CLERK OF COURT

**IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

| | |
|---|---|
| JONATHAN M. WEIMAR, on behalf of himself and all similarly situated persons and entities | ) <br> ) <br> ) <br> ) |
| PLAINTIFFS, | ) |
| | ) No. CH-18-0976 Part III |
| vs. | ) |
| | ) JURY DEMANDED |
| GEICO ADVANTAGE INSURANCE COMPANY, a foreign corporation | ) <br> ) <br> ) |
| | ) |
| DEFENDANT. | ) <br> ) |

---

**DEFENDANT GEICO ADVANTAGE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO WRITTEN DISCOVERY**

Defendant Geico Advantage Insurance Company ("GEICO" or "Defendant") has no objection to Plaintiff's Motion for Extension of Time to Respond to Written Discovery of Defendant Geico Advantage Insurance Company ("Motion to Extend"), as long as GEICO has a full and fair opportunity to review Plaintiff's discovery responses before this Court hears Plaintiff's Motion to Compel Complete Written Responses to Plaintiff's First Request for Production of Documents and Interrogatories ("Motion to Compel"). If, however, Plaintiff insists on setting a hearing on his Motion to Compel before he intends to respond to GEICO's discovery, GEICO would request that this Motion for Extension be denied.

**I.    Introduction**

In this putative class action, filed on June 29, 2018, Plaintiff claims, without any apparent factual basis, that GEICO had a practice of improperly applying a $200 deductible to its insureds' uninsured motorists property damage claims. On August 13, 2018, GEICO

1

propounded Interrogatories and Requests for Production on Plaintiff and, on September 18, 2018, GEICO propounded Requests for Admission on Plaintiff.  As of the filing of this Response, Plaintiff's responses to GEICO's Interrogatories and Requests for Production are some 21 days overdue.

Plaintiff's current motion requests an extension of time to respond to GEICO's discovery. GEICO's discovery is designed, *inter alia*, to force Plaintiff to disclose whether there is any factual basis for key allegations in Plaintiff's Complaint which purport to describe GEICO's intentional and systematic policy and practice of applying a deductible to uninsured motorist property claims in violation of Tennessee Code Annotated § 56-7-1201(c). These allegations go to the heart of whether this action is appropriate for class certification.  Accordingly, GEICO has no objection to an extension of time through this Motion to Extend, so long as Plaintiff agrees to refrain from setting for hearing its Motion to Compel, filed on September 25, 2018, until Plaintiff has responded to GEICO's written discovery.

## II.   GEICO is Entitled to Know Whether Plaintiff has any Factual Basis for Key Allegations in his Complaint.

Plaintiff's allegations that GEICO employs an intentional and systematic policy and practice of applying a deductible to uninsured motorist property claims, in violation of Tennessee Code Annotated § 56-7-1201(c), are without any reasonable basis.  Specifically, in paragraphs 13 - 24, Plaintiff makes the following allegations:

13.    With respect to each auto accident claims that it receives from its Tennessee auto policyholders. Defendants GEICO have adopted a detailed policy and procedure for investigating and validating or rejecting each claim.

14.    First, Defendant GEICO obtains the accident report of the collision and examines it. From the accident report, GEICO determines the identity of the driver of the other automobile who is not insured by GEICO and denotes whether this driver received a traffic citation in connection with the accident. GEICO also determines whether this driver is uninsured. GEICO also interviews

2

the driver of the insured's automobile and takes a recorded statement from its insured; it also seeks out and interviews other witnesses when deemed necessary by GEICO.

15.     Defendant GEICO also examines (or has an agent examine) the insured's vehicle and quantifies the repair cost if the automobile is not a total loss and where the car is  a total loss, GEICO quantifies fair market value of the insured's vehicle.

16.     From this extensive investigation process, Defendant GEICO makes an internal determination as to whether the operator of the other vehicle has been positively identified, uninsured and solely at fault. Defendant GEICO makes this determination at the time that it decides to pay uninsured motorist benefits (i.e. to pay for property damages,  bodily injury damage and/or medical bills) to insured or on behalf of its insured.

17.     Unfortunately at the time that it makes the determination and pays out uninsured motorist benefits, Defendant GEICO has engaged in the unlawful practice of applying a $200 deductible at the outset of the uninsured motorist coverage payment. This practice violates TENNESSEE CODE ANNOTATED § 56-7-1201(c), which expressly prohibits the charge or  application of any deductible in those circumstances where the vehicle's driver has been  positively identified, uninsured and solely at fault.

18.     Defendant GEICO cannot contest the fact that, with respect to thousands of insured motorists claims submitted by Tennessee policy holders, it has determined the  vehicle's driver has been positively identified, uninsured and solely at fault.

19.     For example, in addition to making this internal decision (and thus paying out uninsured motorist benefits as a result of this decision). Defendant GEICO has a pattern and practice of sending collection letters (as the subrogee of its uninsured motorist claimants) informing the uninsured motorists that they are at fault for the full amount of the damages paid out by GEICO (including the deductible imposed upon the GEICO policyholders) and  demanding payment for same.

20.     Furthermore, acting as the subrogee to its policyholders, Defendant GEICO  engages in the policy and practice of filing suits (primarily in the General Sessions Civil  Courts of Tennessee) against the at-fault uninsured motorists, seeking to collect the full  amount of the damages paid out by GEICO (including the deductible imposed upon the  GEICO policyholders) and demanding payment for same.

21.     As authorized by TENN. CODE ANN. § 24-5-115, Defendant GEICO consistently files in each General Session lawsuit an Affidavit (sometimes

3

denominated as an "Affidavit for Purposes of Subrogation") which is duly executed by an agent of GEICO. Each Affidavit recites that GEICO has paid certain amounts out in connection with an uninsured motorist claim of GEICO's policyholder and that the defendant uninsured motorist is obligated for the full amount paid by GEICO (including the deductible incurred by GEICO's insured). These Affidavits constitute a judicial admission that, as GEICO has previously determined in its investigation, the uninsured motorist is solely at fault. (True and correct copies of GEICO's lawsuits against uninsured motorists and its Affidavits comprising the judicial admission that the uninsured motorists are solely at fault are attached . . . .).

22.     Despite its massive collection efforts and prosecution of collection lawsuits against uninsured motorists who have damaged GEICO's insureds, Defendant GEICO rarely collects any funds from these uninsured motorists because they are often collection proof, file bankruptcies and/or have no steady wages that can be garnished.

23.     As a result, a vast majority of the time GEICO's policyholders who have made valid uninsured motorist claims have never been reimbursed the deductible imposed by GEICO (nor any pre-judgment interest owed on this deductible).

24.     For the few policyholders who have finally received a portion or all of their deductible back, Defendant GEICO has failed to reimburse them pre-judgment interest as required by law.

GEICO filed its Answer on August 2, 2018, within 30 days of service of the Complaint, without seeking any extension. With respect to the discovery propounded to GEICO, however, GEICO needed additional time in order to carefully explore whether or not there was any factual basis for the allegations quoted above. GEICO has found none.

## III.    GEICO has Attempted to Cooperate on Discovery Matters.

On Sunday, September 16, 2018, GEICO's counsel inquired as to when GEICO could expect to receive responses to the written discovery propounded to Plaintiff. Bill Burns, a named partner at Watson & Burns, speaking on behalf of the Plaintiff, indicated that Plaintiff would file his responses three days after Plaintiff received GEICO's responses. (*See* Email Corr. Btwn B. Lewis and B. Burns, dated 8/10/18) (attached as Exhibit A).

4

In GEICO's discovery responses, filed with this Court on September 18, 2018, GEICO agreed to produce information, within its possession, regarding the named Plaintiff and regarding GEICO's policy and training material related to uninsured motorist claims, subject to protective order.   GEICO rightfully objected, however, to producing any information in response to Plaintiff's requests for class based discovery, which would involve the review of thousands of insurance claim files with no relevance to class certification.   Notably, Plaintiff's own Complaint estimates that there would be over 9,000 claim files potentially relevant to this suit. *See* Complaint ¶ 43.

By email dated September 18, 2018 (the same day that GEICO filed its responses), Plaintiff's counsel, Mr. Frank Watson, immediately took issue with GEICO's responses to Plaintiff's discovery and indicated that Plaintiff was going to file a motion to compel GEICO to produce immediate broad scope class discovery of all uninsured motorist files. (*See* Email Corr. Btwn B. Lewis and F. Watson, dated 9/18/18) (attached as <u>Exhibit B</u>).   In this same email, Mr. Watson, speaking on behalf of the Plaintiff, unilaterally withdrew the parties' agreement and indicated that the Plaintiff would not file his discovery responses as agreed upon by Mr. Burns. (*See id.*).   In follow up phone correspondence between counsel for Plaintiff and GEICO on September 20, 2018, GEICO's counsel specifically requested that hearing on any motion to compel be delayed until Plaintiff had responded to GEICO's discovery.    That same day, Plaintiff's filed this Motion.

Wholly disregarding GEICO's position, on September, 25, 2018, Plaintiff filed his Motion to Compel, and on October 3, 2018, set the motion for an October 12, 2018 hearing. (*See* Email Corr. Btwn W. Routt and B. Lewis, dated 10/3/18) (attached as <u>Exhibit C</u>).   Plaintiff agreed to stay the October 12 hearing due to scheduling issues but maintained that GEICO was

not entitled to Plaintiffs' (overdue) discovery responses before Plaintiff's Motion to Compel was heard. (*See* Email Corr. Btwn F. Watson and B. Lewis, 10/4/18) (attached as <u>Exhibit D</u>).

It is important for the Court to note that the GEICO has **never** objected to a thirty day extension for Plaintiff to respond to GEICO's Interrogatories, Request for Production, or Request for Admissions. GEICO, however, has consistently objected to being called upon to respond to any motion to compel filed by the Plaintiff until GEICO has had a fair opportunity to review Plaintiff's written discovery responses and objections.  Mr. Watson has steadfastly refused to afford Defendant that opportunity.

## IV.    <u>GEICO Is Entitled to Review Plaintiff's Discovery Responses Before Responding to Plaintiff's Motion to Compel.</u>

GEICO's position is entirely fair and reasonable for at least two reasons. First, GEICO has filed its own Motion to Compel the Outstanding Discovery Responses of Plaintiff.  And, if GEICO deems Plaintiff's responses inadequate, Defendant may need to file an additional motion to compel.  It would be much more efficient for this Court and the parties to take up all motions to compel together in one hearing. *See, e.g.*, *Kirk v. Kirk*, 447 S.W.3d 861, 875 (Tenn. Ct. App. 2013) ("[I]n Tennessee, trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts.") (citing *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003)).   Second, and most importantly, if Plaintiff has no evidentiary support, as GEICO believes, for its key allegations that GEICO systematically and improperly applied a deductible to the uninsured motorists property damage claims of the proposed class, this would further weaken the Plaintiff's already unfair argument that costly, burdensome, and broad class based discovery is appropriate at this initial stage in the litigation. *See Am. Heritage Apartments, Inc. v. Hamilton Cty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 50–51 (Tenn. 2016)